# EXHIBIT 2

AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC, ) | NO. 13 195 Y 00155810 |
| ) | |
| Claimant, ) | |
| ) | |
| v. ) | |
| ) | |
| NOVA GROUP, INC., ) | |
| ) | |
| Respondent. ) | NOVEMBER 30, 2010 |

### DECLARATION OF JACK E. ROBINSON

JACK E. ROBINSON, being duly sworn, declares as follows:

1. I am an authorized representative of respondent Nova Group, Inc. ("Nova"), am over the age of eighteen, and believe in the obligation of an oath.

2. I submit this declaration on my personal knowledge and in response to the Order dated November 24, 2010.

3. Nova is the Sponsor, Named Fiduciary, Named Trustee, and Administrator of the Charter Oak Trust Welfare Benefit Plan (the "Plan").

4. I am familiar with the Plan's operations, assets, liabilities and financial condition, and state that the Plan has the current ability to satisfy a judgment of $30 million.

5. However, I am also familiar with facts and documents which show that there is no need for the representation contained in Paragraph 4 above because claimant Universitas Education, LLC ("Universitas") is not entitled to **any** benefits under the Plan.

6. In further support of the representation contained in Paragraph 5 above, I am familiar with and have personal knowledge of the following:

(a) the purpose, development, design and commencement of the Plan in October 2006;

(b) the involvement of Grist Mill Capital, LLC ("GMC") with respect to funding premiums paid by the Plan;

(c) the participation in the Plan by Mr. Sash A. Spencer ("Spencer") and his selection of a $20 million Death Benefit instead of a $50 million Death Benefit on the Plan Adoption Agreement that he signed on March 19, 2007;

(d) Mr. Spencer's agreements with GMC regarding the funding of certain policies on his life for his participation in the Plan;

(e) the erroneous and unauthorized distribution by insurance brokers of an early draft of a plan document in December 2006 and the completion of the official Plan document in January 2007;

(f) Mr. Spencer's designation of Universitas first as his *revocable* and then later as his *irrevocable* beneficiary under the Plan;

(g) Mr. Spencer's misrepresentations to the Plan and Lincoln National Life Insurance Company ("Lincoln") with respect to his intentions to use the Plan to engage in a prohibited life settlement transaction, the true nature of Universitas, and the use to which Universitas was to put any benefits received from the Plan;

(h) Mr. Spencer's unexpected death in June 2008;

(i) the numerous communications and discussions (including threats of litigation), from literally a few days after Mr. Spencer's death in June 2008 until the commencement of this arbitration by Universitas two years later in June 2010, between and among Nova, the Plan, Mr. Spencer's widow, Universitas, Mr. Spencer's employer

Holding Capital Group, Inc. ("Holding Capital"), insurance broker Bruce Mactas ("Mactas"), and their respective legal and financial advisors;

(j)     the facts that notwithstanding all of the aforementioned communications and discussions, that Universitas was represented by counsel at all relevant times, and that Universitas had a copy of the Plan document in its possession at all relevant times, Universitas did not file a claim for benefits under the Plan until **several months after** the claims deadline had expired, and only after it had been instructed several times to do so by Nova;

(k)     the draft July 2008 agreement whereby Universitas expressed its intention to disclaim **all** Plan benefits in return for a $5 million charitable contribution by Mr. Spencer's widow;

(l)     the illicit and unlawful November 2008 settlement agreement whereby Holding Capital and Mactas were to receive illegal distributions of Plan benefits;

(m)    the back-dated September 2009 "Termination Agreement" whereby the illegal distributions described in Paragraph 6(l) above were allegedly rescinded;

(n)     Nova's denial of Universitas' claim for benefits under the Plan;

(o)     the facts that Universitas filed an appeal of the denial of its claim for Plan benefits with the wrong person at the wrong address and, as a result, the appeal was not received by Nova until **two weeks after** the deadline for filing an appeal had expired;

(p)     Universitas' multiple threats of litigation against the Plan in violation of the Plan's provisions – both before and during this arbitration;

(q)     Nova's denial of Universitas' appeal of the denial of its claim for Plan benefits;

3

(r) Nova's discovery after the arbitration had commenced that Holding Capital had changed its structure and, notwithstanding the Termination Agreement, retains an expectancy to receive illegal distributions of Plan benefits; and

(s) the facts that had Mr. Spencer not died unexpectedly but had lived to consummate his oral agreement with GMC later in 2008, Universitas would have received a total payment of $1.8 million and GMC would have received ownership of the Lincoln insurance policies on Mr. Spencer's life.

7. Unbeknownst to Nova at the time, in December 2006, Mr. Spencer and Mactas planned to engage in a prohibited life settlement transaction by using the Plan to obtain **$50 million** in life insurance on Mr. Spencer's life and, after the two-year contestability period expired on the life insurance policies in December 2008, terminate Mr. Spencer's participation in the Plan, acquire ownership of the policies, and then sell the policies in the secondary market for a total profit to Mr. Spencer and Mactas of between $10 million and $14 million (see Exhibit 1).

8. Although Mactas caused Mr. Spencer to execute various Plan documents in December 2006, the final Plan documents executed by Mr. Spencer on March 19, 2007 automatically superseded and replaced all prior Plan documents (not only because they were executed later in time but because the Plan Documents executed in December 2006 were drafts). This is evidenced by the new Adoption Agreement executed by Mr. Spencer on March 19, 2007 whereby Mr. Spencer, **in his own handwriting**, crossed out the initial $50 million Death Benefit that he and Mactas had envisioned in December 2006 and, instead, selected a **$20 million Death Benefit** (see Exhibit 2).

4

9. Further evidence of Mr. Spencer selecting a $20 million Death Benefit instead of a $50 million (or $30 million) Death Benefit is found in Exhibit 3, where Mr. Spencer **again in his own handwriting** crossed out the $50 million Death Benefit and instead wrote "$20 MILION[sic]."

10. Thus, the maximum potential Death Benefit in this case is not $30 million as claimed by Universitas but rather $20 million as chosen by Mr. Spencer, **in his own handwriting**, on two separate occasions.

11. Although the total Death Benefit is $20 million, the Plan obtained insurance coverage on Mr. Spencer's life in the amount of $30 million by virtue of an earlier $10 million policy taken out by the Plan in December 2006. It is not unusual for the Plan to "overfund" its contingent liability if, as and when it has the opportunity to do so in order to provide more funding to the Plan, and especially when there is no up-front "cost" to the insured to acquire the insurance coverage.

12. Since GMC provided **all** of the money to obtain the insurance coverage on Mr. Spencer's life (a fact which Universitas concedes), Mr. Spencer, Mactas and Mr. Daniel E. Carpenter (on behalf of GMC) executed a Disclosure, Acknowledgement & Certification Agreement dated March 19, 2007 describing how the net Death Benefit would be calculated (see Exhibit 4). The calculation according to that agreement, **using the draft version of the Plan document that does *NOT* include the 80% pay-out provision in Plan § 6.01**, is as follows:

5

| | | | |
|---|---|---|---|
| Total Death Benefit | | | $ 20,000,000.00 |

**Less:**

(i) repayment of all payments, contributions and related costs funded by GMC on the $30 million in policies (§10(a))

| | | | |
|---|---|---|---|
| | premiums | $ 2,322,305.79 | |
| | funding costs | $    835,394.83 | |
| | Total amount funded | | $ 3,157,700.62 |

(ii) Origination Fee of 20% of the total amount funded (§10(b))        $    631,540.12

(iii) Placement Fee of 2% of the total face amount of the $30 million in policies (§10(c))        $    600,000.00

Total Deductions                                                                    $ 4,389,240.74

**Equals:**

**Net Death Benefit**                                                                **$ 15,610,759.26**

13.   Thus, far from $30 million or even $20 million, the **maximum** benefit to which Universitas could be entitled under its own "best case" scenario (*i.e.*, the draft version of the Plan document that does not include the 80% pay-out provision in Plan § 6.01) is roughly $15 million.

14.   However, the official version of the Plan does include the 80% pay-out provision in Plan § 6.01. Under the official version of the Plan, the **maximum** benefit to which Universitas could be entitled is calculated as follows:

|      |                                                                                               |                  |
|------|-----------------------------------------------------------------------------------------------|------------------|
|      | Total Death Benefit                                                                           | $ 20,000,000.00  |
| (i)  | 80% of the amount in the Adoption Agreement (Plan § 6.01)                                     | $ 16,000,000.00  |

**Less:**

| | | |
|---|---|---|
| (ii) | repayment of all payments, contributions and related costs funded by GMC on the $30 million in policies (§10(a)) | |
| | premiums    $ 2,322,305.79 | |
| | funding costs $   835,394.83 | |
| | Total amount funded | $ 3,157,700.62 |
| (iii) | Origination Fee of 20% of the total amount funded (§10(b)) | $   631,540.12 |
| (iv) | Placement Fee of 2% of the total face amount of the $30 million in policies (§10(c)) | $   600,000.00 |
| | Total Deductions | $ 4,389,240.74 |

**Equals:**

| | |
|---|---|
| **Net Death Benefit** | **$ 11,610,759.26** |

15. Thus, far from $30 million, $20 million, or even $15 million, the **maximum** benefit to which Universitas could be entitled under the official version of the Plan is roughly $ 11 million.

16. Also included in Exhibit 4 is a representation and warranty by Mr. Spencer and Mactas that:

> The Policy is not being purchased with the intent of selling it in a settlement or viatical sale, and there have been no offers to sell or buy the Policy. Neither Agent [Mactas], nor Funder [GMC], nor the Trust have recommended such a sale.

(See Exhibit 4, ¶ 4). Mr. Spencer made the same representation and warranty to Lincoln in another document that he executed on March 19, 2007:

> I have not been involved in any discussion about the possible sale or assignment of this policy as an inducement to purchase the life insurance policy for sale at a later date.

(see Exhibit 5).

17. Clearly, Exhibit 1 shows that both Mr. Spencer and Mactas made material misrepresentations to the Plan and Lincoln with respect to their intention to defraud the Plan and Lincoln by engaging in a prohibited life settlement transaction. Due to these material misrepresentations (along with the other reasons made clear in Nova's denial of the Universitas claim and appeal), Universitas is entitled to nothing under the Plan.

18. However, even assuming Universitas were entitled to something, Universitas itself expressed its intention in July 2008 to disclaim all benefits under the Plan in return for a $5 million charitable contribution from Mr. Spencer's widow (see Exhibit 6). Thus, rather than $30 million, $20 million, $15 million, or $11 million, Universitas is entitled to no more than $5 million – assuming it is entitled to anything at all.

19. However, in May 2008, around the same time that he changed his designation of Universitas from being a revocable to an *irrevocable* beneficiary (see Exhibit 7), Mr. Spencer entered into an oral agreement with GMC whereby GMC would acquire the Lincoln policies from the Plan for six percent (6%) of their face value (6% of $30 million = $1.8 million), Mr. Spencer would terminate his participation in the Plan, and GMC would pay Universitas the $1.8 million. This oral agreement was consummated in April-May 2008, and the change in the beneficiary designation was a result of that agreement.

20. In June 2008, one month after the oral agreement with GMC had been consummated and before it could be reduced to writing, Mr. Spencer unfortunately passed away.

8

21.     Thus, rather than $30 million, $20 million, $15 million, $11 million, or even $5 million, had Mr. Spencer not died in June 2008, the maximum that Universitas would have received is $1.8 million – assuming it is entitled to anything at all.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct. Executed on the 30th day of November, 2010.

*/s/ Jack Robinson*
_____
JACK E. ROBINSON