UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
UNIVERSITAS EDUCATION, LLC,

                     Judgment Creditor,          :

                     -against-             :    Case Nos. 11-1590-LTS and
                                              11-8726-LTS

NOVA GROUP, INC., as trustee, sponsor and    :
fiduciary of THE CHARTER OAK TRUST
WELFARE BENEFIT PLAN,           :

                     Judgment Debtor.
-----------------------------------------------------------------X

**UNIVERSITAS EDUCATION, LLC'S MEMORANDUM OF LAW IN**

**<u>OPPOSITION TO JANUARY 25 MOTION TO QUASH SUBPOENAS</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................ii

I.    PRELIMINARY STATEMENT .......................................................................... 1

II    STATEMENT OF FACTS ................................................................................... 3

   a.   Universitas ....................................................................................................... 3

   b.   Overview of Movants' role in the Charter Oak Trust ...................................... 5

   c.   Identity and roles of the Movants ................................................................... 5

   d.   The funding of Charter Oak Trust policies ..................................................... 7

   e.   Movants seize assets from the Charter Oak Trust during the Universitas arbitration.......... 7

   f.   Universitas subpoenas the Movants ................................................................ 8

III.   LEGAL STANDARD .......................................................................................... 9

IV.    ARGUMENT ...................................................................................................... 12

   a.   Universitas' subpoenas seek information that is highly relevant and necessary, and Movants will not be unduly burdened by compliance....................................... 12

      i.    Universitas' deposition subpoenas ........................................................ 12

      ii.   Universitas' document subpoenas ......................................................... 14

V.   CONCLUSION.................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Costomar Shipping Co. v. Kim-Sail, Ltd.,
  Case No. 95-3349-KTD, 1995 WL 736907 (S.D.N.Y. Dec. 12, 1995) ................................. 11

Dove v. Atlantic Capital Corp.,
  963 F.2d 15 (2d Cir. 1992) ........................................................................................... 10

EM Ltd. v. Republic of Argentina,
  695 F.3d 201 (2d Cir. 2012) ..................................................................................... 10, 11

F.T.C. v. Trudeau,
  Case No. 12-022, 2012 WL 6100472 (S.D. Ohio Dec. 7, 2012) ........................................ 12

Gibbons v. Smith,
  No. 01 Civ. 1224, 2010 U.S. Dist. LEXIS 13938 (S.D.N.Y. Feb. 9, 2010) .......................... 10

GMA Accessories, Inc. v. Electric Wonderland, Inc.,
  Case No. 07-3219-PKC, 2012 WL 1933558 (S.D.N.Y. May 22, 2012) ................................ 11

In re Grand Jury Subpoenas Issued to Thirteen Corps.,
  775 F.2d 43 (2d Cir. 1985) ........................................................................................... 18

Lewis v. United Joint Venture,
  Case No. 10-61, 2010 WL 5230866 (N.D. Ohio Dec. 16, 2010) ..................................... 11-12

Magnaleasing, Inc. v. Staten Island Mall,
  76 F.R.D. 559 (S.D.N.Y. 1977) ...................................................................................... 11

Syposs v. U.S.,
  181 F.R.D. 224 (W.D.N.Y. 1998) ................................................................................... 10

Universitas Educ., LLC v. Nova Group, Inc.,
  11 Civ. 1590-LTS-HBP, 2013 WL 57892 (S.D.N.Y. Jan. 4, 2013) ...................................... 10

Vazquez v. Ranieri Cheese Corp.,
  Case No. 07-464-ENV-VVP, 2013 U.S. Dist. LEXIS 2989 (E.D.N.Y. Jan. 8, 2013) ............ 10

OTHER AUTHORITIES

Fed. R. Civ. P. 45(c)(3)(A) ................................................................................................. 9

Fed. R. Civ. P. 69(a)(2) ................................................................................................... 10

WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND
    PROCEDURE §3014 (2d ed. 2012) ........................................................................... 11

Universitas Education, LLC ("Universitas"), through its counsel Loeb & Loeb LLP, submits the following memorandum of law in opposition to the Motion to Quash filed on January 25, 2013 (dkt. no. 212) by Movants Caldwell Life Strategies Corporation, Caldwell Funding Corporation, Caldwell Life Holdings LLC and Caldwell Life Strategies LLC ("Caldwell"); Ridgewood Finance II LLC and Ridgewood Finance Inc. ("Ridgewood"); Plainfield Asset Management LLC ("Plainfield"); and Max Holmes, Steven Segaloff, Adam Balinsky and Veronica Cranny.[1]

## I.   PRELIMINARY STATEMENT

This litigation is well into the post-judgment discovery phase, with Universitas having obtained a June 2012 judgment of about $30 million against Nova Group, Inc. ("Nova") as Trustee of the Charter Oak Trust Welfare Benefit Plan ("Charter Oak Trust"), and Nova (and its principals) having refused to pay that judgment or even disclose the location of the assets that should be used to satisfy the judgment.

In November 2012, in the course of attempting to locate these assets, Universitas subpoenaed the Movants, seven interrelated entities and four individuals associated with those entities, because they indisputably loaned more than $30 million to the Charter Oak Trust and its affiliates, and they indisputably have extensive knowledge about the assets of the Charter Oak Trust, of which Universitas is a beneficiary and Nova, the Judgment Debtor, is the Trustee. After Universitas afforded Movants several months to comply with the subpoenas, Movants filed this Motion on January 25, 2013.  Movants do not contest that they were all properly served; and

---

[1] By Order dated February 20, 2013 (dkt. no. 217), the Court approved Universitas' request to set March 4 as the deadline by which to submit this Opposition.

not one of the four subpoenaed individuals has submitted an affidavit disclaiming knowledge about the Charter Oak Trust (nor could they).

The thrust of the Motion is that Movants have satisfied their obligations by producing about 600 pages of documents and offering Universitas the opportunity to conduct an informal, unrecorded interview of one of the four subpoenaed individuals. But, as detailed below, Movants' document production is inadequate, and they have placed unacceptable conditions regarding their offer of an informal interview – namely, that Universitas withdraw its deposition subpoenas for all four individuals prior to this informal interview of a single person taking place. Universitas, meanwhile, has afforded Movants extra time to comply with the subpoenas; for instance, by giving the seven subpoenaed entities more than three months to make a full document production, by accepting a single document production on behalf of all seven entities (so long as the production is complete), and by agreeing to depose one of the four subpoenaed individuals while holding the other three depositions in abeyance.

Movants are not interested in fully complying with the subpoenas, and perhaps for good reason. As discussed below, Ridgewood and Caldwell have transferred assets out of the Charter Oak Trust, and their parent company, Plainfield, was raided by federal law enforcement authorities in connection with their dealings with the Charter Oak Trust. But the fact that Movants may have something to hide is not a valid excuse for their failure to comply with Universitas' subpoenas.

For the reasons set forth below, as supported by the accompanying March 4, 2013 Declaration of Michael Barnett ("3/4/13 Barnett Decl.") and Exhibits thereto, Universitas respectfully requests that the Court issue an Order denying the Motion to Quash and directing

each subpoena recipient to fully comply with the subpoena issued to it, her or him within twenty-eight (28) days of the Court's Order.

## II.   STATEMENT OF FACTS

### a.   *Universitas*

Universitas is the beneficiary of the Charter Oak Trust in relation to two life insurance policies placed into the Trust by the late Sash A. Spencer, formerly CEO of Holding Capital Group, Inc.  6/5/12 Court Order at 1-2 (dkt. no. 40 in Case No. 11-1590-LTS).[2]  Mr. Spencer named Universitas the sole, irrevocable beneficiary of a Charter Oak Trust death benefit comprising the proceeds payable under two Lincoln National Life Insurance Company ("Lincoln Life") policies totaling $30 million less certain fees and expenses agreed to by Mr. Spencer and Grist Mill Capital, LLC ("Grist Mill Capital"), which, on behalf of the Charter Oak Trust, made the premium payments on Mr. Spencer's policies.  Id.; 3/15/11 Universitas Petition to Confirm at ¶6 (dkt. no. 6).  Both Nova, the Trustee of the Charter Oak Trust, and Grist Mill Capital have business addresses at 100 Grist Mill Road in Simsbury, Connecticut, and both are controlled by Daniel E. Carpenter.  See 11/28/12 Memorandum of Law in Support of Universitas' Motion for Contempt (dkt. no. 182).

Mr. Spencer died in June 2008.  3/15/11 Universitas Petition to Confirm at ¶7.  In May 2009, Lincoln Life paid more than $30 million (including interest on the policy proceeds) to the Charter Oak Trust.  6/5/12 Court Order at 2.  After Lincoln Life's payment to the Trust in May 2009, Nova refused to pay the death benefit to Universitas.  6/5/12 Court Order at 2.  Nova formally rejected Universitas' claim to the death benefit twice, initially in October 2009, and on internal appeal in February 2010.   3/15/11 Universitas Petition to Confirm at ¶7.  The

---

[2] Unless otherwise noted, all docket references are to entries in Case No. 11-1590-LTS.

Declaration of Trust for the Charter Oak Trust, which Nova and its principals unilaterally drafted, provided that the only avenue of relief from an adverse benefits determination by Nova was final, binding and non-appealable arbitration in New York, New York before a single arbitrator under the auspices of the American Arbitration Association.  Id. at ¶8.

Universitas filed its demand for arbitration in June 2010, and sought injunctive relief against Nova, owing to its principals' refusal to identify the location of Universitas' $30 million and to place the $30 million into escrow during the pendency of the arbitration.  3/4/13 Barnett Decl., Ex. E.  On October 1, 2010, Universitas formally moved the Arbitrator for injunctive relief.  Id.  Arbitrator Peter L. Altieri, Esq. denied Universitas' request for a preliminary injunction on November 3, 2010.  Id. at ¶14.   The parties proceeded to hearing in December 2010.  3/15/11 Universitas Petition to Confirm at ¶¶13, 14.

By Arbitration Award dated January 24, 2011, Arbitrator Altieri held Nova liable to Universitas for a total of $26,525,535.88.  Universitas Petition to Confirm at ¶16, Ex. 14.  This Court confirmed the Arbitration Award on June 5, 2012, awarding Universitas pre-judgment interest at an annual rate of ten percent (10%) (see dkt. no. 40), and entering judgment on June 7 for Universitas in the amount of $30,181,880.30 (dkt. no. 41).[3]

Following entry of judgment, Universitas has not been paid, and neither Nova nor any of its principals has disclosed the whereabouts of the $30 million paid out by Lincoln Life in May 2009, which they, as Universitas' fiduciaries, were supposed to be holding in trust for Universitas.

---

[3] On October 5, 2012, the District Court granted Universitas an additional $268,810.01 in attorneys' fees (dkt. no. 162).

### b.   Overview of Movants' role in the Charter Oak Trust

Movants played an integral role in operating the Charter Oak Trust and transferring its assets.  They made or arranged the premium payments on many of the life insurance policies held by the Charter Oak Trust, and eventually took possession of these life insurance policies, which are Trust assets.

The Charter Oak Trust, of which Nova is the Trustee, purported to be a multiple-employer welfare benefit plan that offered businesses the opportunity to provide life insurance benefits for their executives.  See Universitas Petition to Confirm, Ex. 1 (copy of Charter Oak Trust Declaration of Trust).  The life insurance policies are owned by the Charter Oak Trust, with the Trust also listed as their beneficiary.  See id.  If the insured died, their beneficiaries would receive from the Charter Oak Trust a death benefit equal to the life insurance proceeds less funding expenses.  See id.

### c.   Identity and roles of the Movants

Movants are seven interrelated entities and four individuals who are, or were, affiliated with these entities.

Movant **Plainfield Asset Management LLC** ("Plainfield") is or was a parent company or funder of the other six subpoenaed entities, and used these entities to finance, purchase and sell life insurance policies.  See 1/25/13 Motion to Quash Memorandum at 13-14 (identifying Plainfield as "part of the same general family of companies as the other[ ] [entities]") (dkt. no. 214); 6/21/12 Nova Motion for Reconsideration at 2-3 (identifying Ridgewood and Caldwell as divisions of Plainfield) (dkt. no. 46).  Movant **Max Holmes** is Plainfield's founder.  1/25/13 Motion to Quash Memorandum at 2.

Movant **Ridgewood Finance, Inc.** ("Ridgewood") served as a lender to the Charter Oak Trust and Trust-affiliated entities, lending them about $35 million in order for the Trust to procure, and finance premium payments for, life insurance policies that the Trust owned. Ridgewood signed a funding agreement with the Charter Oak Trust in February 2007.   3/4/13 Barnett Decl., Ex. C.   Movant **Steven Segaloff**, identified in the Motion as Plainfield's deputy general counsel from October 2006 to July 2010 (1/25/13 Motion to Quash Memorandum at 2), signed the February 2007 restated agreement on behalf of Ridgewood.   3/4/13 Barnett Decl., Ex. C at 47.

Movant **Ridgewood Finance II LLC** purports to be the successor in interest to Ridgewood, and in or about October 2010 signed a Settlement Agreement with the Charter Oak Trust and Trust-affiliated entities, as Ridgewood's successor, that terminated Ridgewood's premium-funding arrangement with the Trust and distributed most Trust policies to Ridgewood. 3/4/13 Barnett Decl., Ex. F.  Movant **Adam Balinsky**, whom the Motion identifies as an executive for Caldwell Life Strategies Corporation from September 2007 to April 2012 (1/25/13 Motion to Quash Memorandum at 2-3), signed the Settlement Agreement on behalf of Ridgewood.  Id., Ex. F at 14.

Movants **Caldwell Life Strategies Corporation**, **Caldwell Funding Corporation**, **Caldwell Life Holdings LLC** and **Caldwell Life Strategies LLC** (collectively, "Caldwell") administered the premium payments on Charter Oak Trust policies alongside their affiliate Ridgewood.  See 3/4/13 Barnett Decl., Ex. G.  Officials from Caldwell – including Movant **Veronica Cranny**, identified in the Motion as chief compliance officer of Caldwell Life Strategies Corporation from October 2006 to April 2012 (1/25/13 Motion to Quash Memorandum at 3) – assisted in the operation of the Charter Oak Trust.  See id.

### d.   *The funding of Charter Oak Trust policies*

By agreement dated February 12, 2007, Ridgewood agreed to make premium payments for life insurance policies held by the Charter Oak Trust.  See 3/4/13 Barnett Decl., Ex. C.  But Ridgewood did not unconditionally agree to fund any and every policy held by the Charter Oak Trust, and instead put in place a multi-step decision-making and documentation process that would need to be completed in order for a policy's premium payment to be funded.  See 3/4/13 Barnett Decl., Ex. B.  Ridgewood agreed to loan up to $35 million in funding for insurance premium payments, which Ridgewood sought to secure by insurance policies and other assets. See id., Ex. C at Article 7 (titled "Security Interest," starting on page 16).  In the event that Grist Mill Capital and its affiliates failed to repay the funding loans to Ridgewood (with interest), Ridgewood would be able to take ownership of the life insurance policies as collateral.

### e.   *Movants seize assets from the Charter Oak Trust during the Universitas arbitration*

Grist Mill Capital apparently failed to repay Ridgewood for a portion of the loans, because on March 31, 2010 and again on July 27, 2010, Ridgewood sent Notices of Default, addressed to Nova, the Charter Oak Trust, Grist Mill Capital and Avon Capital, LLC[4] (among others), in which it claimed to be owed $35.7 million.  3/4/13 Barnett Decl., Ex. D.  From this repayment dispute emerged a Settlement Agreement, effective as of September 30, 2010, in which Ridgewood purported to take, as collateral for the unpaid loans, at least several dozen life

---

[4] Avon Capital, LLC ("Avon") is yet another entity, located at 100 Grist Mill Road in Simsbury, Connecticut, that was used by Nova's principals to procure monies with which to fund life insurance policy premium payments.  By Court Order dated January 4, 2013 (dkt. no. 197), Avon is required to comply with a document subpoena that Universitas served on it.

insurance policies held by the Charter Oak Trust.[5]  See id., Ex. F at ¶2 (titled "Collateral Transfer Agreements," on page 2).  The effective date of the Settlement Agreement, September 30, 2010, happens to be a day prior to the preliminary injunction motion that Universitas brought in the arbitration, in which Universitas sought to place Charter Oak Trust assets into escrow to ensure that any arbitration award could be satisfied.  See 3/4/13 Barnett Decl., Ex. E.

In April 2011, law enforcement authorities executed a search warrant on Plainfield's office in connection with a federal grand jury investigation into the Charter Oak Trust.  3/4/13 Barnett Decl., Ex. H.  The search of Plainfield's office occurred during the same week that authorities raided the offices of the Charter Oak Trust, Nova and Grist Mill Capital at 100 Grist Mill Road in Simsbury, Connecticut.  6/21/12 Nova Motion for Reconsideration at 2-3.

### f.   Universitas subpoenas the Movants

As Movants note, Universitas first sought documents and information from them in early August 2012.  1/25/13 Motion to Quash Memorandum at 5.  Universitas' counsel hoped that Movants would voluntarily provide the documents and information Universitas was seeking, rather than forcing Universitas to initiate the subpoena process.  But since Movants had provided only a handful of documents by October 2012,  Universitas served Plainfield with a document subpoena.  3/4/13 Barnett Decl. at ¶4.

Plainfield's counsel (the same counsel who represents all of the Movants on this Motion) objected to many of the document requests and asserted that Plainfield was not a proper subpoena recipient since it had no involvement in the Charter Oak Trust funding arrangement (3/4/13 Barnett Decl., Ex. A), even though it funded both the Caldwell and Ridgewood entities (which in turn funded the Charter Oak Trust), and was the subject of a federal grand jury search

---

[5] The Sash Spencer policies were not among the policies that Movants took, since Lincoln Life paid out on those policies in May 2009.

warrant seeking documents relating to the Charter Oak Trust.  Plainfield's counsel insisted that Universitas direct its subpoena solely to Caldwell Life Strategies Corporation (3/4/13 Barnett Decl., ¶5), even though, for instance, Ridgewood was the signatory to the February 2007 funding agreement for the Charter Oak Trust.

Counsel for Universitas and Plainfield conferred several times by phone, seeking to resolve their dispute.  3/4/13 Barnett Decl. at ¶5.  The dispute was not resolved, and on or about November 8, Universitas subpoenaed the 11 Movants, believing that each of them possesses documents and/or information relating to Nova and the Charter Oak Trust.  3/4/13 Barnett Decl. at ¶6.  (Also, Universitas subpoenaed multiple entities in view of Plainfield's counsel's assertion that Plainfield was not a proper subpoena recipient, even though Plainfield is the parent company to the other six entities and presumably has access to all of the documents requested.)

The entities that received document subpoenas collectively produced about 600 pages of documents between November 2012 and February 2013, but (as detailed below) their production was incomplete, and for some requests no documents were produced.  With respect to the four individuals subpoenaed for depositions, Movants' counsel offered to produce one of them – Mr. Balinsky – for an informal, unrecorded interview, but only on the condition that the deposition subpoenas to all four individuals be withdrawn prior to the interview.  Universitas would not accept that condition.  3/4/13 Barnett Decl. at ¶¶8-10.

### III.    LEGAL STANDARD

A court may in its discretion quash a subpoena only in limited, enumerated circumstances (see Fed. R. Civ. P. 45(c)(3)(A)), the existence of which the moving party has the burden of establishing.  See Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992); see also

9

Universitas Educ., LLC v. Nova Group, Inc., 11 Civ. 1590-LTS-HBP, 2013 WL 57892, at *2

(S.D.N.Y. Jan. 4, 2013).  Moreover, the scope of post-judgment discovery is broad:

> Obtaining Discovery. In aid of the judgment or execution, the judgment creditor
> or a successor in interest whose interest appears of record may obtain discovery
> from any person—including the judgment debtor—as provided in these rules or
> by the procedure of the state where the court is located.

Fed. R. Civ. P. 69(a)(2); see EM Ltd. v. Republic of Argentina, 695 F.3d 201, 207 (2d Cir. 2012)

("we note that broad post-judgment discovery in aid of execution is the norm in federal and New

York state courts"); Gibbons v. Smith, No. 01 Civ. 1224, 2010 U.S. Dist. LEXIS 13938, at *6-7

(S.D.N.Y. Feb. 9, 2010) ("Respondent has wide latitude in using the discovery devices provided

by the Federal Rules in post-judgment proceedings"); see also Syposs v. U.S., 181 F.R.D. 224,

226 (W.D.N.Y.1998) ("The reach of a subpoena issued pursuant to Fed.R.Civ.P. 45 is subject to

the general relevancy standard applicable to discovery under Fed.R.Civ.P. 26(b)(1)").

    In order to obtain discovery from a third party, a judgment creditor need only show that a

third party possesses information relevant to the enforcement of the judgment, namely

information about the judgment debtor's assets.   As the Second Circuit noted in its most recent

decision articulating the bounds of post-judgment discovery:

> The scope of discovery under Rule 69(a)(2) is constrained principally in that it
> must be calculated to assist in collecting on a judgment. … Of course, as in all
> matters relating to discovery, the district court has broad discretion to limit
> discovery in a prudential and proportionate way. ... It is not uncommon to seek
> asset discovery from third parties … that possess information pertaining to the
> judgment debtor's assets.

EM Ltd., 695 F.3d at 207 (internal quotations and citations omitted); see also Vazquez v. Ranieri

Cheese Corp., Case No. 07-464-ENV-VVP, 2013 U.S. Dist. LEXIS 2989, at *4-5 (E.D.N.Y. Jan.

8, 2013) ("the breadth of post-judgment discovery with respect to a judgment debtor's assets

affords judgment creditors considerable latitude in obtaining documents and information from

non-parties").

Discovery of a third party is especially appropriate where the third party may have received assets from the judgment debtor or has had a close relationship with the judgment debtor.  In EM Ltd., 695 F.3d at 207,  for instance, the Second Circuit affirmed the District Court's order requiring third-party banks to comply with subpoenas *duces tecum*, where the banks possessed information about the nature of the judgment debtor's assets and how the judgment debtor circulated its assets.  See also Magnaleasing, Inc. v. Staten Island Mall, 76 F.R.D. 559, 560-561 (S.D.N.Y. 1977) (court orders production of part of a settlement agreement that may have been used to improperly transfer judgment debtor's assets to third party); WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE §3014 (2d ed. 2012) ("Ordinarily third persons can be examined only about the assets of the judgment debtor and cannot be required to disclose their own, **although probing questioning is allowed with regard to third parties with close ties to the judgment debtor**") (emphasis added) (citing cases).[6]

Movants' cases hold no differently and in fact support enforcement of Universitas' subpoenas.  In GMA Accessories, Inc. v. Electric Wonderland, Inc., Case No. 07-3219-PKC, 2012 WL 1933558, at *4-5 (S.D.N.Y. May 22, 2012), the court, citing Magnaleasing, noted that third-party discovery related to enforcing a judgment is appropriate where the third party has received assets from the judgment debtor under possibly suspicious circumstances – which is exactly what happened here, where Ridgewood received Charter Oak Trust assets around the same time Universitas was seeking to secure those assets in the arbitration.  Another case that Movants cite, Costomar Shipping Co. v. Kim-Sail, Ltd., Case No. 95-3349-KTD, 1995 WL 736907, at *3 (S.D.N.Y. Dec. 12, 1995), holds the same.  In Lewis v. United Joint Venture,

---

[6] Movants quoted the non-bolded portion of this excerpt from the Wright & Miller treatise, but tellingly omitted the bolded portion.

Case No. 10-61, 2010 WL 5230866, at *2 (N.D. Ohio Dec. 16, 2010), the court said that third-party discovery would have been appropriate if the third party had "special knowledge" regarding the judgment debtor's assets – which is the case here, where Movants loaned about $35 million to the Charter Oak Trust and its affiliated entities, and then took assets out of the Trust when the loans were not repaid.  And in <u>F.T.C. v. Trudeau</u>, Case No. 12-022, 2012 WL 6100472, at *6 (S.D. Ohio Dec. 7, 2012), the court ordered discovery, finding that the FTC demonstrated that the third-party documents it sought were relevant for the agency's investigation into the defendant's undisclosed assets.  Here, Universitas seeks from Movants documents and information concerning unknown or improperly conveyed assets of Nova and/or the Charter Oak Trust.

### IV.   ARGUMENT

       ***a.  Universitas' subpoenas seek information that is highly relevant and necessary, and Movants will not be unduly burdened by compliance***

          ***i.  Universitas' deposition subpoenas***

Movants' role in the Charter Oak Trust was extensive, complex, spanned several years, and cannot possibly be explained entirely by documents.  The documents produced so far do not speak for themselves, and give rise to numerous questions that can only be answered by individuals knowledgeable about the Charter Oak Trust.[7]  To take one example, the funding agreement that Ridgewood signed in February 2007 provides that in the event of default on the loans, Ridgewood may take the Charter Oak Trust policies as collateral.  3/4/13 Barnett Decl., Ex. C at ¶2.  But there is no indication of how the policies were to be valued in the event of

---

[7] Depositions are also necessary because they are the only way of ascertaining the documents that have been requested but not produced.

default, to avoid a situation where Ridgewood would take more Charter Oak Trust assets than were necessary as collateral for any amounts due by the Trust and its affiliates.  Also, Movants have not produced any insurance policy valuations, and thus depositions are necessary to ask whether any valuations were performed and, if not, why not.  Depositions are also necessary to explain why Movants accepted the insurance policies as collateral in lieu of being paid back, in cash, on the outstanding loans, as was originally contemplated.  (For instance, Movants might not have insisted on repayment if they were aware of fraudulent conveyances by persons operating the Charter Oak Trust.)  Movants' counsel has authored several letters attempting to explain their clients' dealings with the Charter Oak Trust (1/25/13 Motion to Quash Memorandum at 5, 10),  but Universitas need not be content with thinly disguised attorney argument from counsel who has no first-hand knowledge of Trust transactions.

Nor would depositions unduly burden the Movants.  Universitas had offered, and will still offer, to depose the person represented by Movants' counsel to be the most knowledgeable about the Charter Oak Trust, while holding in abeyance the remaining three depositions (for example, for at least a month).  3/4/13 Barnett Decl. at ¶10.  In the event this first deponent proves unable to answer all of Universitas' questions, Universitas would then depose the person who is the second-most knowledgeable about the Charter Oak Trust, while holding in abeyance the remaining two depositions.[8]  In this way, the depositions would proceed logically and efficiently, and would not occupy more time than necessary.  Movants, however, rejected this

---

[8] Movants assert that Messrs. Holmes and Segaloff have no knowledge regarding the Charter Oak Trust, but submit no sworn affidavit to that effect.  See 1/25/13 Motion to Quash Memorandum at 15, n. 3.  Movants' claim is specious, since Holmes' company, Plainfield, helped arrange for the funding of the Charter Oak Trust, and Segaloff signed the February 2007 funding agreement on behalf of Ridgewood. 3/4/13 Barnett Decl., Ex. C at 47.  Further, Universitas need not accept Movants' counsel's representations about what some of the Movants do and do not know; Universitas can test their knowledge through depositions.  In any event, Universitas is willing to depose Mr. Balinsky and Ms. Cranny first, holding the depositions of Messrs. Holmes and Segaloff in abeyance.

offer, with their counsel insisting that the most-knowledgeable person would only voluntarily submit to an unrecorded interview, notwithstanding the fact that this person had been validly subpoenaed.  As if this condition were not enough, Movants' counsel also insisted that the unrecorded interview would not take place unless Universitas first withdrew its four deposition subpoenas (including the subpoena to the person to be interviewed) and provided them with an outline of topics to be discussed at the interview.  3/4/13 Barnett Decl. at ¶8.  Collectively, these conditions are unreasonable, and Universitas need not agree to any of them, especially when all four individuals were subpoenaed and Universitas is willing to take the depositions in a way that may result in only one deposition actually going forward.

### ii.  Universitas' document subpoenas

Out of an abundance of caution, Universitas sent document subpoenas to seven entities with identical requests, since each of these entities was involved with the Charter Oak Trust to some extent, and Universitas had no knowledge as to which entity or entities among them had possession of the documents sought.  (Universitas has been willing, and is still willing, to accept a single comprehensive production from the seven subpoenaed entities, in an effort to avoid duplication.)  Although Movants have produced about 600 pages of documents, their production is incomplete.  To take just a few examples:

- Movants have failed to produce valuations of the various life insurance policies held by the Charter Oak Trust, even though the policies must have been periodically evaluated since the policies served as collateral for the loans, and valuations likely played a role in Movants' decision about whether to loan the premium payments for a certain policy.

- Movants have failed to produce documents concerning the distribution of life insurance policies out of the Charter Oak Trust, which appears to have occurred starting in the fall of 2010, when the Settlement Agreement was signed (3/4/13 Barnett Decl., Ex. F), and when Universitas had made its application in the arbitration for a preliminary injunction to secure the Charter Oak Trust's assets (Id., Ex. E).

- Movants have failed to produce all communications regarding Grist Mill Capital's repayment of the loans, and the communications that culminated in the Settlement Agreement.

- Movants have not produced a single e-mail, and their counsel has declined to confer on an electronic discovery protocol whereby e-mail search terms would be mutually agreed upon.  3/4/13 Barnett Decl. at ¶7.

As further examples, the following document requests (set forth below in bolded italics) remain outstanding; following each bolded, italicized request is an explanation as to why each request is relevant to Universitas' judgment-collection efforts:

     ***7.     Any other documents (not already requested in the requests set forth above) that have or may contain information concerning the identity, location and value of the property, income or assets of Nova Group and/or the Charter Oak Trust at any time, including all insurance policies held by Nova Group and/or the Charter Oak Trust, and all insurance policies for which Nova Group, the Charter Oak Trust and/or Wayne H. Bursey is or was a beneficiary, owner, transferee or transferor.***

     Any documents containing information concerning assets of Nova and the Charter Oak Trust are relevant to Universitas' efforts to locate and collect these assets.  Among other categories of documents, Movants have refused to provide all documents that they collected or created in the course of performing due diligence on the Charter Oak Trust, and its affiliated entities and individuals.  Movants would have conducted extensive due diligence prior to, and

during the course of, lending about $35 million to the Charter Oak Trust; they are refusing to produce all of these due diligence documents even though they will likely shed light on the operations and assets of Nova and the Charter Oak Trust, as well as the commingling of monies by Nova's principals.

**10.    All documents evidencing and/or explaining investments of or distributions from the Charter Oak Trust, including without limitation, cash, insurance policies, or other property or assets.**

Universitas is a beneficiary of the Charter Oak Trust and has a judgment against its Trustee, Nova, which initially deposited Universitas' $30 million into a bank account standing in the Charter Oak Trust's name.  Universitas thus has a critical need to understand all distributions from the Charter Oak Trust, as well as all Trust investments, since Trust assets can be used to satisfy Universitas' judgment.

**12.    Copies of all documents that identify any individual or entity that has or once had an ownership interest in Nova Group, Grist Mill Capital or Avon Capital, as well as copies of all documents that identify any individual or entity that is or was a member, shareholder, officer, director of Nova Group, Grist Mill Capital or Avon Capital.**

Movants likely conducted extensive due diligence prior to, and during the course of, lending about $35 million to the Charter Oak Trust.  These documents, as well as Movant's e-mails with the individuals affiliated with the Trust, likely show who owns or controls the various entities that came into possession of Universitas' money after it was initially deposited at TD Bank.

**15.    Copies of all communications between an individual representing Plainfield Asset Management or one of its affiliates (including without limitation Adam Balinsky, Edward Stone, Steven Segaloff and Veronica Cranny) and any individual acting on behalf of, or for the benefit of, Nova Group, the Charter Oak Trust, Grist Mill Capital and/or Avon Capital, including but not limited to the following individuals:**

    **A.  Daniel E. Carpenter;**

16

> **B.  Wayne H. Bursey;**
>
> **C.  Jack E. Robinson;**
>
> **D.  Donald J. Trudeau;**
>
> **E.  Amanda Rossi;**
>
> **F.  Molly Carpenter; and**
>
> **G.  Daniel Drever**

Movants have not produced a single e-mail, even though the Ridgewood and Caldwell entities were the principal funders of the life insurance policies held by the Charter Oak Trust, and undoubtedly had weekly, if not daily, e-mail communications with Trust representatives at the outset and conclusion of the lending arrangement.  These e-mails likely contain information about the assets, bank accounts and operations of Nova and Charter Oak Trust.   Movants' counsel has declined to confer on an electronic discovery protocol whereby the parties would agree on e-mail search terms and the scope of the search.

The foregoing categories of documents sought by Universitas are highly relevant to, and necessary for, discovering the nature and location of the assets that can be used to satisfy Universitas' judgment.  Universitas has also gone to great lengths to minimize the burdens of document retrieval and production on Movants.  First, respective counsel for Universitas and the Movants conferred over the course of about two months prior to Universitas even issuing a subpoena, in an effort to avoid subpoenas and motion practice.  Then, after these unsuccessful talks, in early October, Universitas issued a single document subpoena to Plainfield, which prompted Movants' counsel to assert that Universitas had subpoenaed the wrong entity.  After additional talks in November, Universitas issued the 11 subpoenas that are the subject of the

Motion.  Universitas did not insist on immediate, full compliance, and instead delayed the depositions and permitted Movants to produce documents on a rolling basis, in a single production (even though seven entities were subpoenaed).   Universitas' counsel also offered to confer with Movants' counsel to agree on an electronic discovery protocol, but Movants' counsel refused to commit to any e-mail searching, even though e-mail was likely the primary mode of communication between Movants and the individuals who operated the Charter Oak Trust.

Universitas has been patient and accommodating with regard to Movants' compliance with the document subpoenas, whereas Movants have stonewalled for months and produced a fraction of the responsive documents.  Movants' main reason for withholding documents appears to be that several of the entities that received subpoenas no longer exist, or have merged into the other subpoenaed entities.  See 1/25/13 Motion to Quash Memorandum at 12-14.  But just because some entities may no longer exist does not mean that their documents are not subject to production, since their successors have an obligation to produce these documents.  See, e.g., In re Grand Jury Subpoenas Issued to Thirteen Corps., 775 F.2d 43, 47-48 (2d Cir. 1985) (noting that under New York state law, dissolved corporations must still produce documents relevant to their pre-dissolution conduct).  Further, since Movants undoubtedly funded the Charter Oak Trust, and have detailed knowledge of the Judgment Debtor Nova and its affiliates, Movants cannot reasonably complain about having been unfairly subpoenaed.  Movants should produce the requested documents instead of further wasting the resources of Universitas and the Court with unnecessary motion practice.

### V.    CONCLUSION

For the reasons set forth in this memorandum, as supported by the accompanying March 4, 2013 Declaration of Michael Barnett and Exhibits thereto, Universitas Education, LLC respectfully requests that the Court issue an Order denying the Motion to Quash filed on January 25, 2013 by Movants Caldwell Life Strategies Corporation, Caldwell Funding Corporation, Caldwell Life Holdings LLC, Caldwell Life Strategies LLC, Ridgewood Finance II LLC, Ridgewood Finance Inc., Plainfield Asset Management LLC, Max Holmes, Steven Segaloff, Adam Balinsky and Veronica Cranny, and directing each subpoena recipient to fully comply with the subpoena issued to it, her or him within twenty-eight (28) days of the Court's Order.

New York, NY
Dated: March 4, 2013

LOEB & LOEB LLP

By: /s/ Michael Barnett                    
   Paula K. Colbath (PC-9895)
   Michael Barnett (MB-7686)
   345 Park Avenue
   New York, New York 10154-1895
   (212) 407-4000

   *Attorneys for Judgment Creditor*
   *Universitas Education, LLC*