4/26/13 Supplemental Declaration of Bryan Reyhani

EXHIBIT 39

## OPEN-END MORTGAGE DEED AND SECURITY AGREEMENT

TO ALL PEOPLE TO WHOM THESE PRESENTS SHALL COME, GREETINGS:

KNOW YE, that MOONSTONE PARTNERS, LLC, a Rhode Island limited liability company with an address at 392 Cards Pond Road, South Kingston, Rhode Island (the "Borrower"), for the consideration of One Dollar ($1.00) and other valuable consideration received to the Borrower's full satisfaction HANOVER TRUST COMPANY, a Delaware trust having an address at 100 Grist Mill Road, Simsbury, Connecticut 06070 (the "Lender"), does hereby give, grant, bargain, sell and confirm, with MORTGAGE COVENANTS, unto the Lender, his successors and assigns forever:

### THE PROPERTY

(A)  PROPERTY: All of their interest in and to that certain piece or parcel of real property known as 392 Cards Pond Road, located in the Town of South Kingston, County of Washington and State of Rhode Island, and appliances or structures appurtenant thereto, described on Schedule A attached hereto (the "Land").

(B)  IMPROVEMENTS: All the buildings, structures and improvements now or hereafter placed on the Land (the "Improvements").

(C)  SERVICE EQUIPMENT: All fixtures, appliances, machinery and equipment now or hereafter installed, and such other goods and chattels and personal property as are now or hereafter attached to, used, or furnished in connection with the letting or operation of the Property (hereinafter defined) or in connection with the activities conducted thereon, and all renewals or replacements thereof or additions thereto or articles of substitution therefor (the "Service Equipment").

(D)  INSURANCE PROCEEDS; CONDEMNATION PROCEEDS: All awards or payments, including interest thereon, which may be made with respect to the Property as a result (i) of any casualty or other event covered by insurance in accordance with, and subject to, the terms and conditions of Section 1.2 and (ii) of the exercise of the right of eminent domain in accordance with, and subject to, the terms and conditions of Section 1.4.

TO HAVE AND TO HOLD the above granted and bargained premises, with the privileges and appurtenances thereof (collectively referred to herein as the "Property") but subject to those encumbrances, if any, listed on Schedule B (the "Permitted Encumbrances"), unto it, the said Lender, its successors and assigns forever, to its and their own proper use and behoof.

THE CONDITION OF THIS DEED IS SUCH THAT:

WHEREAS, the Borrower is justly indebted to the Lender pursuant to a certain promissory note in the principal amount of One Million One Hundred Thousand Dollars

($1,100,000.00) (the "Loan"), a copy of which note is attached hereto and made a part hereof as Schedule C (the "Note"); and

WHEREAS, in order to more fully protect the security of this Mortgage, this Mortgage contains the following additional terms and conditions.

### ARTICLE I
### COVENANTS AND REPRESENTATIONS OF THE BORROWER

The Borrower covenants, represents and warrants to the Lender as follows:

1.1   PAYMENT AND PERFORMANCE. The Borrower will pay the debt evidenced by the Note and all other sums due thereunder in lawful money of the United States and pay and perform all of its obligations under the Note, this Mortgage and every other instrument now or hereafter securing, evidencing, guarantying or relating to the Note and the Loan (collectively referred to herein as the "Loan Documents") at the times and in the manner set forth in such Loan Documents. All amounts due the Lender under any of the aforesaid instruments shall be secured by the lien of this Mortgage and shall hereinafter be referred to as the "Mortgage Debt".

1.2   INSURANCE.

A.   The Borrower shall keep the Property insured against loss by fire, flood and other hazards, casualties, liability, contingencies and all other "extended coverage" risks. All insurance carried on the Property must show the Lender as an additional insured and be payable to the Lender under the standard non-contributing mortgagee endorsement and such other endorsements as the Lender may require.

B.   In the event of any loss or damage to the Property, the Borrower shall give prompt notice thereof to the Lender.

C.   Borrower shall, together with the monthly payments of principal and interest, remit to Lender an amount estimated to equal one-twelfth (1/12) of the next year's premium on such insurance policy to be held in escrow. In the event such escrow is insufficient to cover the premium due, Borrower shall make up any such shortfall at Lender's request and Lender shall provide reasonable documentation for the basis of such calculations.

1.3   TAXES. The Borrower shall pay within any applicable grace period and before the same become delinquent, all taxes, water rates, sewer rents, utility charges, rentals, assessments and governmental or other charges and impositions of any kind whatsoever including any assessment for local improvements, whether payable in installments or otherwise, for which lien rights exist, which may now or hereafter be assessed or levied upon any part of the Property, or in lieu of or in addition to a tax on the Property (all such charges and payments collectively referred to herein as the "Taxes"). The Borrower shall promptly notify the Lender of the delinquency in the

payment of any Taxes.

1.4 CONDEMNATION. The Borrower will give the Lender prompt notice of any eminent domain proceedings affecting any part of the Property. The Lender shall have the right to intervene and participate in any eminent domain proceedings and the Borrower shall consult with the Lender in all matters pertaining to the adjustment, compromise or settlement of such proceedings and shall not enter into any agreement with respect to such matters without the prior written consent of the Lender. The Lender may, in its sole discretion, retain and apply any eminent domain award or payment toward payment of the Mortgage Debt, or pay same over wholly or in part to the Borrower.

1.5 COMPLIANCE WITH LAW, ETC. The Borrower warrants that it presently does and covenants that it will continue to observe and comply with (1) all laws, regulations, ordinances, rules, and orders affecting the Property; and (2) the terms of each insurance policy applicable to the Property. If the Borrower receives notice that it is not in compliance with any such law or condition, the Borrower will promptly provide the Lender with a copy of such notice.

1.6 MAINTENANCE AND REPAIR; INSPECTION.

A. The Borrower will (1) keep and maintain the Property in good condition, working order and repair; (2) not commit or suffer any waste of the Property; (3) repair, replace, rebuild or restore any part of the Property which may be damaged or destroyed; and (4) make all other repairs and replacements to the Property which the Lender may reasonably require. All such work shall be done promptly in good and workmanlike manner.

B. The Lender and any person authorized by the Lender shall have the right to enter and inspect the Property at all reasonable times.

1.7 SALE, ENCUMBRANCE AND USE.

A. The Borrower shall not, without the Lender's prior written consent, which may be withheld in the Lender's sole discretion for any reason whatsoever, (1) initiate or allow any transfer, lease, mortgage or other disposition of, or contract to dispose of, legal or equitable title to all or any part of the Property; (2) change the ownership of, commence an action to dissolve or otherwise effect the dissolution of the Borrower; or (3) voluntarily create any liens or encumbrances against such title.

B. The Borrower will keep the Property free from the claim of all persons supplying labor or materials in connection with the construction or repair of any Improvements constituting a part of the Property.

1.8 PROTECTION OF LIEN AND OTHER EXPENSES. The Borrower shall pay, indemnify, defend and hold the Lender harmless from all costs, disbursements,

3

expenses and reasonable counsel fees incurred by the Lender in connection with protecting or sustaining the lien of this Mortgage or collection of the Mortgage Debt, either before or after obtaining judgment of foreclosure of the Mortgage or judgment on or with respect to the Mortgage Debt.

1.10  REQUIRED NOTICES. In addition to any other notices required under this Mortgage, the Borrower shall promptly notify the Lender of the (1) receipt of notice from any governmental authority relating to the Property; (2) receipt of any notice from the holder of any other lien or security interest in the Property; or (3) commencement of any judicial or administrative proceedings by or against or otherwise affecting the Borrower or the Property.

ARTICLE II
DEFAULT

2.1  EVENTS OF DEFAULT. Any one or more of the following shall constitute an "Event of Default" hereunder:

A.  The failure to pay any installment of principal and/or interest or any other sums due with respect to the Loan when due.

B.  The occurrence of a default under any other Loan Document beyond any grace periods set forth in said document.

C.  The failure to pay the premiums on or keep in force any insurance required under Section 1.2. herein.

D.  The failure to pay any Taxes within the applicable time periods set forth under Section 1.3. herein.

E.  The transfer, encumbrance or change in use of, or other action or non-action with respect to, the Property or the composition of the Borrower in contravention of the provisions of Section 1.7. herein.

F.  The failure to observe or perform any other covenants of the Borrower contained in this Mortgage for a period of thirty (30) days after the occurrence of such failure.

G.  The filing by or against the Borrower of any petition, arrangement, reorganization, or the like under any insolvency or bankruptcy law, or the adjudication of the Borrower as a bankrupt (and if such filing is involuntary, the failure to have same dismissed within sixty (60) days from the date of filing), or the making of an assignment for the benefit of creditors, or the appointment of a receiver for any part of the Borrower's properties or the admission in writing by the Borrower of the inability to pay debts as they become due.

## ARTICLE III
## REMEDIES

Whenever an Event of Default shall have occurred, the Lender may take any one or more of the following remedial steps:

3.1   ACCELERATION. The Lender may declare, without demand or notice to the Borrower, the outstanding principal amount of the Note and the interest accrued thereon, and the Mortgage Debt, to be due and payable immediately, and upon such declaration such principal and interest and other sums shall immediately become, and be, due and payable. The Lender may take any steps available to him as a secured party under the Uniform Commercial Code with respect to such portions of the Collateral and Mortgaged Premises as may be deemed to be personal property.

3.2   FORECLOSURE. The Lender may foreclose this Mortgage and exercise its rights as a secured party for all or any portion of the Mortgage Debt which is then due and payable, subject to the continuing lien of this Mortgage for the balance not then due and payable.

3.3   LENDER ADVANCES. The Lender may, without notice or demand, pay any amount which the Borrower has failed to pay, or perform any act which the Borrower has failed to perform hereunder. In such event, such Lender advances, together with interest thereon from the date made, at the highest interest rate allowed under the Note shall be (1) added to the Mortgage Debt, (2) payable on demand to the Lender and (3) secured by the lien of this Mortgage.

3.4   REMEDIES CUMULATIVE; LENDER'S DISCRETION. No remedy conferred upon or reserved to the Lender hereunder is or shall be deemed to be exclusive but shall be cumulative, and may be exercised in the sole discretion of the Lender at any time, in any manner, and in any order, and shall be in addition to and separate and distinct from every other remedy given the Lender under this Mortgage, or any other Loan Documents, or now or hereafter existing in favor of the Lender at law or in equity or by statute. The Lender, in exercising any remedy provided herein under which it may make payments or perform actions which the Borrower has failed to do or make, may do so in its sole discretion whenever in its opinion such payment or performance is necessary or desirable to protect the full security intended by this Mortgage.

3.5   NO WAIVER. Time and punctuality shall be of the essence in this Mortgage, but any delay or failure by the Lender to exercise any right or remedy available to it upon the occurrence of an Event of Default hereunder shall not constitute a waiver of such Event of Default or relinquishment of the right in the future to enforce strict compliance by the Borrower with all of the covenants, conditions and agreements herein, or of the right to exercise any such rights or remedies if such Event of Default by the Borrower be continued or repeated. No modification, amendment, change, or discharge of any term or provision of this Mortgage shall be valid or binding unless the same is in

writing and signed by the Lender and the Borrower. The Lender may however, without notice to or the consent of the Borrower, any other person primarily or contingently liable for the payment of the Mortgage Debt or the holders of any subordinate lien on the Property, (1) release any part of the security described herein, (2) release the obligation of any person primarily or contingently liable for the Mortgage Debt secured hereby, (3) extend the time for payment or otherwise modify the terms of the Mortgage Debt or this Mortgage, and (4) take any additional security for the Mortgage Debt. No such release, extension, modification or additional security shall impair or affect the lien of this Mortgage or its priority over any subordinate lien and no such party shall be relieved of any liability by reason thereof.

3.6   NO MERGER. In the event the Lender shall acquire title to the Property by conveyance from the Borrower or as a result of the foreclosure of any other mortgage which the Lender at any time holds with respect to the Property, this Mortgage shall not merge in the fee of the Property but shall remain and continue as an existing and enforceable lien for the Mortgage Debt secured hereby until the same shall be released of record by the Lender in writing.

## ARTICLE IV
## MISCELLANEOUS PROVISIONS

4.1   FUTURE ADVANCES. This is an "Open-End Mortgage" and the holder hereof shall have all of the rights, powers and protection to which the holder of any Open-End Mortgage is entitled under Connecticut law. Upon request the Lender may, in its discretion, make future advances to the Borrower. Any future advance, and the interest payable thereon, shall be secured by this Mortgage. At no time shall the principal amount of the debt secured by this Mortgage exceed the sum of the original principal amount of the Note, nor shall the maturity of any future advance secured hereby extend beyond the date the final principal payment is due on the Note.

4.2   GOVERNING LAW; BINDING EFFECT. This Mortgage shall be governed by and construed, interpreted, regulated and enforced in accordance with the applicable laws of the State of Connecticut. All covenants, conditions and agreements herein shall run with the land, and shall be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Lender and the Borrower.

4.3   NOTICE.

A.   Any notice, report, demand or other written instrument required hereunder shall be in writing, signed by the party giving or making the same, and shall be sent by certified mail, return receipt requested, to all parties hereto simultaneously at their respective mailing address indicated at the beginning of this Mortgage.

B.   The date of receipt of any notice shall be deemed to be, and shall be effective from, the earlier of (1) the date of the actual receipt of such notice, or (2) three days after same is deposited in the United States mail as provided above, whether or not

the same is actually received by such party. Any party hereto shall have the right to change the place to which any such notice shall be sent by a similar notice sent in like manner to all parties hereto.

    4.4    NO AGENCY OR JOINT VENTURE. Nothing contained in this Mortgage shall be construed to cause the Borrower to become the agent for, or joint venturer with, the Lender for any purpose whatsoever, nor shall the Lender be responsible for any shortage, discrepancy, damage, loss or destruction of any part of the Property for whatever cause unless same is the direct result of the gross negligence of the Lender.

    4.5    INVALID PROVISIONS. If any term or provision herein is judicially determined invalid or unenforceable then the same shall either be severed from this Mortgage or if possible reduced in scope to the extent necessary to be valid or enforceable.

NOW, THEREFORE, if all agreements and provisions contained herein are fully kept and performed by the Borrower, and all the Mortgage Debt shall be fully paid in all respects, then this deed shall be void; otherwise to remain in full force and effect.

IN WITNESS WHEREOF, the Borrower has caused this instrument to be executed and delivered this 15th day of October, 2010.

Signed, sealed and delivered
in the presence of

MOONSTONE PARTNERS, LLC

By: _____
Name:
Its Duly Authorized Member

STATE OF CONNECTICUT   )
                       : ss.
COUNTY OF              )

On this the 15th day of October, 2010, before me, the undersigned officer, personally appeared Daniel E. Carpenter, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained as his free act and deed and the free act and deed of said company.

In witness whereof I hereunto set my hand.

Ineke Murphy

Commissioner of the Superior Court
Notary Public

INEKE MURPHY
Notary Public, State of Connecticut
My Commission Expires April 30, 2012

8

## SCHEDULE A

That certain piece or parcel of land, with the buildings and improvements thereon, in the Town of South Kingston, County of Washington and State of Rhode Island, known as 392 Cards Pond Road and more particularly described as follows:

## SCHEDULE B

Said premises are conveyed subject to the following:

1. Real estate taxes due the Town of South Kingston on the List of October 1, 2009 and thereafter, which the Grantees herein assume and agree to pay.

2. Building lines, zoning restrictions, building regulations and any and all provisions of any ordinance, municipal regulation or public or private law.

3. Any state of facts which an accurate survey or personal inspection of the premises would disclose.

SCHEDULE C

11

1842651v.1

PROMISSORY NOTE

$1,100,000.00                                                           Hartford, Connecticut
                                                                        October 15, 2010

    FOR VALUE RECEIVED, the undersigned, MOONSTONE PARTNERS, LLC, a Rhode Island limited liability company with an address of 392 Cards Pond Road, South Kingston, Rhode Island (the "Borrower"), promises to pay to the order of HANOVER TRUST COMPANY, a Delaware trust with an address of 100 Grist Mill Road, Simsbury, Connecticut 06070 (the "Lender"), at the Lender's address or at such other place as the holder hereof may from time to time designate in writing, the principal sum of One Million One Hundred Thousand and 00/100 Dollars ($1,100,000.00) (the "Loan"), with interest from the date hereof until October 1, 2025 at the fixed rate of six percent (6.00%) per annum until this Note is fully paid. The interest rate shall be computed on the basis of a three hundred sixty (360) day year for the actual number of days in each period for which interest is charged.

    The outstanding amount hereunder shall be due and payable as follows:

    (a)    A single interest only annual payment of Sixty-Six Thousand and 00/100 Dollars ($66,000.00) shall be due on the first day of November, 2010, and continuing once annually on the first day of each November thereafter through and including November 1, 2025; and

    (b)    If not sooner paid, the entire outstanding principal balance of this Note together with any other amounts outstanding hereunder shall be due and payable on November 1, 2025.

    Said sums shall be payable together with all lawful taxes and assessments levied thereon, or upon this Note, or upon the Lender with respect to the same, and together with the reasonable fees of the attorney of the Lender and all costs and expenses if this Note is placed in the hands of an attorney for collection or in any proceeding instituted to collect said sums, to foreclose, or to protect or sustain the lien of any security which may be given to secure the payment of this Note, or in any litigation or controversy arising from or connected with this Note and any security agreement securing the same, whether or not a suit is actually commenced in any court (collectively, the "Loan Indebtedness").

    The Borrower may prepay the Loan in whole or in part without penalty.

    At the option of the Lender, the entire principal balance and accrued interest thereon shall at once become due and payable without notice or demand upon the occurrence at any time of any of the following events (each referred to as an "Event of Default"):

    1.    The failure to make a payment due hereunder within fifteen (15) days after

written notice from Lender to Borrower that the same is due and payable;

2. The occurrence of an Event of Default under any other document now or hereafter evidencing, securing, guarantying or relating to the Loan;

3. The transfer or attachment of any interest in the property secured by the Mortgage securing the Loan; or

4. The death of the Borrower.

Upon the happening of any event of default specified above, the whole of said indebtedness, including principal and interest and all other sums which may become due hereunder, shall immediately become due and payable automatically, and without presentment, demand, protest, notice of protest, or other notice or notice of dishonor of any kind, all of which are hereby expressly waived by the Borrower.

Borrower, for itself and its heirs, executors, successors and assigns, hereby waives presentment, demand, notice of protest, notice of dishonor, protest and all other demands and notices in connection with the delivery, acceptance, performance, default, acceleration or enforcement of this Note.

If any term, clause or provision hereof shall be adjudged to be invalid, the validity of the remainder shall not be affected thereby and each such term, clause and provision shall be valid and enforceable to the fullest extent permitted by law.

The Note and all transactions hereunder and/or evidenced herein shall be governed by, construed and enforced in accordance with the laws of the State of Connecticut.

MOONSTONE PARTNERS, LLC

By: _____
Name: Daniel E. Carpenter, Chairman of
Its Duly Authorized Member

This Promissory Note is secured
by a mortgage of certain real estate
located at 392 Cards Pond Road
South Kingston, Rhode Island

1829181v.2