UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

UNIVERSITAS EDUCATION, LLC,     :

    : Case No.: 11 CV 1590-LTS-HBP

            Petitioner,     :

    :

      -v-     :

    :

NOVA GROUP, INC., as Trustee, Sponsor     :
and Named Fiduciary of the CHARTER OAK     :
TRUST WELFARE BENEFIT PLAN,     :

    :

            Respondent.     :

------------------------------------------------------------------- :

NOVA GROUP, INC., as Trustee, Sponsor     :
and Named Fiduciary of the CHARTER OAK     : Case No.: 11 CV 8726-LTS-RLE
TRUST WELFARE BENEFIT PLAN,     :

    :

            Petitioner,     :

    :

      -v-     :

    :

UNIVERSITAS EDUCATION, LLC,     :

    :

            Respondent.     :

---------------------------------------------------------------------X

## MEMORANDUM OF LAW OF RESPONDENT DANIEL E. CARPENTER

By an Order to Show Cause, signed on October 15, 2103, Universitas Education LLC

("Universitas") (Docket #303) has moved this Court for a preliminary and a permanent

injunction against Daniel E. Carpenter and for a turnover order as to certain specified sums

allegedly held by one or more of the respondents named on the motion, to wit, to wit, Daniel E.

Carpenter and the following entities – Nova Group, Inc. ("Nova"), the Charter Oak Trust

Welfare Benefit Plan (the "Charter Oak Trust" and "Charter Oak Trust 2009"), Grist Mill

Capital, LLC ("Grist Mill Capital"), Grist Mill Holdings, LLC ("Grist Mill Holdings"), The Grist

1

Mill Trust Welfare Benefit Plan ("Grist Mill Trust"), Avon Capital, LLC ("Avon capital"),

Hanover Trust Company ("Hanover"), Carpenter Financial Group ("Carpenter Financial") and

Phoenix Capital Management, LLC ("Phoenix Capital") (collectively the "Respondents").

**Statement of Facts**

Respondent Carpenter and Petitioner Universitas have previously submitted to this Court

certain documents as part of a "Statement of Proposed Findings of Fact", dated June 21, 2013,

(Docket # 252). Respondent Carpenter incorporates by reference that submission, as part of

Carpenter's submission on the latest motion by Universitas. Also submitted with this

memorandum is a Declaration by Daniel E. Carpenter, dated October 25, 2013.

As a participant in the Charter Oak Trust, Sash Spencer was the named insured on two

life insurance policies owned by the Charter Oak Trust, which policies' face amounts totaled

thirty million dollars. (Exhibit [1]D at 1 and 8).

Mr. Spencer paid none of the premiums for the insurance agreements into which he

entered. (Exhibit D, pg. 5 at ¶ 7; Exhibit N at 9 and 11).

The premiums for the Spencer policies were paid by Charter Oak Trust using funds

borrowed from Grist Mill Capital under a Split-Dollar Arrangement. (Exhibit E, at 1-3).

The funding agreement between Grist Mill Capital and Charter Oak Trust with respect to

the Spencer life insurance policies contained a provision whereby Grist Mill Capital (the

"Funder") was given

> a first priority lien and a first priority security interest in and to all properties,
> assets, and rights of the Trust, wherever located, whether now owned or hereafter
> acquired or arising, including, without limitation the Policy (including all

---

[1] References to Exhibits by letter are Respondents' Exhibits in the earlier turnover proceeding
and references to Exhibits by number are Universitas' Exhibits in that earlier proceeding; each
exhibit is specifically referenced in "Respondent's Proposed Findings of Fact" dated June 21,
2013.

proceeds thereof, such proceeds to encompass, among other things, the premium refunds, cash value, death proceeds or other payments by the insurer with respect to such Policy or any proceeds from the sale thereof... (Exhibit E at ¶ 7).

On December 27, 2006, Grist Mill Capital recorded a UCC 1 Financing Statement against all assets of the Charter Oak Trust and all proceeds thereof and including after acquired assets. (Exhibit C at # 2431931).

The funding arrangement for the Spencer policies was part of the insurance agreement entered into by Mr. Spencer, in December 2006 and March 2007. (Exhibit D).

When he enrolled in the Charter Oak Trust, Sash Spencer executed a Disclosure, Acknowledgment & Certification Agreement which contained the following provision:

> 9. The Insured and Agent both understand and agree that the following remittances, fees and expenses shall be due and payable to the Funder upon the maturation, disposition, termination, or change in beneficiary of the Policy:
> (a)  repayment of all premiums and related costs regarding the Policy;
> (b)  an Origination Fee of twenty percent (20%) of the total premiums funded and paid for the Policy in consideration of the funding Arrangement having been implemented;
> (c)  a Premium Funding Fee of three percent (3%) of the face amount of the Policy in consideration for the funding of such premiums;
> (d)  a Termination Fee of one percent (1%) of the face amount of the Policy in consideration of the termination of the Funding Arrangement.
> (Exhibit D at 5 ¶ 9).

When Universitas arbitrated its claim against Nova Group, Inc., the arbitrator determined that $4,020,453.23 was owed and was payable to Grist Mill Capital from the life insurance proceeds.

(Exhibit D, at 3, 9).

Mr. Spencer died on June 10, 2008. (Exhibit 11).

Charter Oak Trust received the proceeds of the Spencer policies from Lincoln Life Insurance Co. in two checks:  one dated May 15, 2009, in the sum of $10,225,758.92 and a second, dated May 15, 2009, in the sum of $ 20,451,517.83. (Exhibit 1 at 1 and G at 1-2).

Charter Oak Trust disbursed sums of $ 8,677,276.75 on May 21, 2009, and

$ 2,186,566.00 on May 26, 2009, to Grist Mill Capital Inc., a total sum of $10,863,842.75.

(Exhibit 1 at 0348-0349 and Exhibit H, # 0357).

As of the time these two sums were disbursed, Grist Mill Capital was a secured creditor

of Charter Oak Trust (Exhibit C, # 2431931).

Grist Mill Capital provided funding to Charter Oak Trust for the Spencer insurance

policies and for many other policies owned by the Charter Oak Trust, approximately 85 policies

in all. (Exhibit 22, at 74).

Under various funding agreements between Grist Mill Capital and the Charter Oak Trust,

Charter Oak Trust became indebted to Grist Mill Capital in the amount of approximately sixty

million dollars. (Exhibit 34, pp. 101,102).

Charter Oak Trust disbursed the total sum of $10,863,842.75, to Grist Mill Capital in

partial repayment of Charter Oak Trust's indebtedness to Grist Mill Capital. (Exhibit 34, pp. 90-

104).

Before the disbursement of $10,863,842.75 to Grist Mill Capital, Charter Oak Trust had

borrowed well in excess of that sum from Grist Mill Capital. (Exhibit 34, pp. 90-104).

Grist Mill Capital had, in turn, a financing agreement with Ridgewood Finance, Inc.

whereby Ridgewood advanced to Grist Mill Capital funds which Grist Mill Capital then used to

make loans to the Charter Oak Trust under a Split-Dollar Arrangement. (Exhibit 34, pp. 90-104).

Ridgewood Finance, Inc. was a secured creditor of Grist Mill Capital. (Exhibit C, #

2431927).

Among the insurance policies so funded were the Spencer policies. (Exhibit D).

4

Grist Mill Capital, after receiving on May 21, 2009 and May 26, 2009, the sums described, paid various of its creditors, during the period May 2009 through October 2009. Carpenter Declaration, dated October 25, 2013,

The October payment of $19.8 million made to GMC was based on a collateral assignment extant in 2009. At that time, Charter Oak Trust owed GMC over $50 million and GMC had both a collateral assignment interest in each policy and a UCC filing on all assets of the Charter Oak Trust. See Carpenter Declaration, ¶¶ 11-12.

## Argument

## I

## This Court Does not Have Subject Matter Jurisdiciton to Resolve the Claims Asserted Now by Universitas as to Carpenter and the So-called "Alter-ego Entities".

Federal courts are universally recognized as courts of limited jurisdiction. The Supreme Court has held that this Court lacks subject matter jurisdiction to resolve the latest claims made by Universitas.

In Peacock v. Thomas, 516 U.S. 349 (1996), the Supreme Court held that federal courts do not possess ancillary jurisdiction "over new actions in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment." Peacock, 516 U.S. at 351, 116 S.Ct. 862.

Writing for the 8-1 majority, Judge Thomas further stated:

> The court must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims. See United Mine Workers v. Gibbs, 383 U.S. 715, 715, 86 S.Ct. 1130, 1138 16 L.Ed. 2d 218 (1966) In a subsequent lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction. *See* Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ] at 380-381, 114 S.Ct., at 1677; H.C. Cook Co. V. Beecher, 217 U.S. 497, 498-499, 30 S.Ct. 601, 601-602, 54 L.Ed. 855 (1910). Consequently, claims alleged to be factually interdependent with and, hence, ancillary to claims brought in an earlier federal lawsuit will not support federal jurisdiction over a subsequent lawsuit. The basis of the doctrine of ancillary jurisdiction is the practical need "to protect legal rights or effectively to resolve an entire, logically entwined lawsuit." [Owen Equipment and Erection Co. v. Kroger, 437 U.S. 365, 376, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978)], 437 U.S., at 377, 98 S.Ct. at 2404. But once judgment was entered in the original ERISA suit, the ability to resolve simultaneously factually intertwined issues vanished..."

Peacock v. Thomas, 516 U.S. at 355, 166 S.Ct. at 867, 116 L.Ed.2d at 825.

Judge Thomas succinctly disposes of Universitas' claims, when he wrote:

"We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment. Indeed, we rejected an attempt to do so in *H.C. Cook Co. v. Beecher*, 217 U.S. 497, 30 S.Ct. 601, 54 L.Ed. 855 (1910)."

Peacock v. Thomas, 516 U.S. at 358 (1996).

Every transaction complained of in the current motion seeks to make recovery against persons or parties that were not part of the arbitration proceeding and are not named in the action to confirm before this Court.

With the exception of a single piece of correspondence cited by Universitas, all events complained of occurred prior to the Universitas-Nova arbitration commencing. None of the claims now being made were any part of either the arbitration or of the action to confirm the award, which was commenced before this Court.

In addition, none of the transactions identified by Universitas in its moving papers is alleged to have occurred after the entry of judgment in this action. Indeed, none of the monetary transfers as yet identified by Universitas even occurred after the arbitration proceeding had commenced, no less been determined.

## II

**Universitas has not proven that Carpenter or the "Carpenter alter-ego entities" is now or was ever in possession or custody of money or other personal property in which the judgment debtor has an interest.**

The Section 5225 proceeding may be brought by motion in federal court under FRCP 69(a), rather than instituting a special proceeding under the New York state law. See Northern Marianas v. Millard, 845 F.Supp. 579 (S.D.N.Y. 2012), S.E.C. v. Colonial Inv. Management LLC, No. 07 Civ. 8849, 2010, WL 4159276, at *2 (S.D.N.Y. Oct. 6, 2011); Mitchell v. Lyons *582 Professional Services, Inc., 727 F.Supp.2d 120, 122-23 (E.D.N.Y. 2010). A turnover

proceeding seeks to gain possession of property in which the judgment debtor has a possessory

right at the time the Section 5225 proceeding is undertaken.

The relevant state law procedure to be applied by the District Court is found in N.Y.

C.P.L.R. § 5225(b). That statute provides that:

> Upon a special proceeding commenced by the judgment creditor, against a person
> in possession or custody of money or other personal property in which the
> judgment debtor has an interest, or against a person who is a transferee of money
> or other personal property from the judgment debtor, where it is shown that the
> judgment debtor is entitled to the possession of such property or that the judgment
> creditor's rights to the property are superior to those of the transferee, the court
> shall require such person to pay the money, or so much of it as is sufficient to
> satisfy the judgment, to deliver any other personal property, or so much of it as is
> of sufficient value to satisfy the judgment to a designated sheriff…The Court may
> permit the judgment debtor to intervene in the proceeding.

On the merits, the Second Circuit has set forth a two-step process for cases in which a

judgment creditor alleges that property belongs to a judgment debtor but is in the hands of a third

party. See Beauvais v. Allegiance Sec., Inc., 942 F.2d 838, 841 (2d Cir.1991).

In order for the creditor to prevail under §5225:

> First, it must be shown that the judgment debtor "has an interest" in the property
> the creditor seeks to reach. Where this first step is satisfied, the trial court must,
> second, then make one of two findings: it must find either that the judgment
> debtor is "entitled to the possession of such property," or it must find that "the
> judgment creditor's rights to the property are superior" to those of the party in
> whose possession it is.

Id. at 840-41. See also Baker v. Power Securities Corp., 948 F.Supp. 255 (W.D.N.Y.

1996).

Only after both parts of the analysis are proved by the judgment-creditor may a trial court

order the transferee to turn over the property to the judgment creditor, here Universitas. *See* Key

Lease Corp. v. Manufacturers Hanover Trust Co., 117 A.D.2d 560, 561-62, 499 N.Y.S.2d 66, 68

(1st Dep't 1986).

Nothing in the papers submitted by Universitas in its latest motion proves either element

of Section 5225 as to Mr. Carpenter or as to the companies which Universitas alleges he controls.

## III

**New York Debtor Creditor Law Sections 275 and 276 do not apply to the Transactions Identified by Universitas in the Present Motion.**

In addition to its reliance on § 5225, Universitas seeks to rely on two provisions of New

York substantive law, to wit., New York Debtor-Creditor Law §275 and §276.

New York Debtor Creditor Law §275 provides:

"Every conveyance made and every obligation incurred without fair consideration
when the person making the conveyance or entering into the obligation intends or
believes that he will incur debts beyond his ability to pay as they mature, is
fraudulent as to both present and future creditors. "

New York Debtor Creditor Law §276 provides:

"Every conveyance made and every obligation incurred with actual intent, as
distinguished from intent presumed in law, to hinder, delay, or defraud either
present or future creditors, is fraudulent as to both present and future creditors."


Case law in the Second Circuit allows this Court to use CPLR § 5225 as an enforcement

device, in the exercise of ancillary jurisdiction. None of the cases or statutes cited by Universitas

permit this Court to exercise subject matter jurisdiction to execute New York substantive law,

particularly NY DCL§§ 275 and 276, in an ancillary proceeding to determine purported

fraudulent conveyances.

To the contrary, the claims Universitas now makes are entirely new state law claims. On

the facts presented in the moving papers, Universitas' claims do not lie under New York law.

Sandlin v. Corporate Interiors, Inc., 972 F.2d 1212, 1214, 23 Fed. R. Serv. 3d 943 (10th Cir.

1992).

The transactions complained of by Universitas occurred in Connecticut, among persons and entities that were citizens of Delaware and of Connecticut. None of the transactions complained of by Universitas is alleged to have occurred in New York. None of the respondents was or is a citizen of New York. All the respondent entities were and are incorporated in states other than New York.

Respondent Carpenter is a domiciliary of Connecticut.

Universitas itself is an entity incorporated in Delaware.

Subsequent suits to enforce judgments must have their own source of federal jurisdiction when they involve new theories of liability, such as fraudulent conveyances. Williams v. Pfeffer, 117 F.Supp.2d 331 (U.S.D.C., S.D.N.Y. 2000).

Peacock foreclosed the view that ancillary enforcement jurisdiction exists in a subsequent action based on state law claims to enforce a prior federal judgment against non-diverse third parties. Knox v. Orascom Telecom Holding S.A.E., 477 F.Supp.2d 642, 648 (S.D.N.Y. Mar. 12, 2007) (finding no ancillary jurisdiction over a turnover action against a third party who owed money to the judgment debtor), motion for recon. denied, 242 F.R.D. 251 (S.D.N.Y. Apr. 19, 2007); Williams v. Pfeffer, 117 F.Supp.2d 331, 335 (S.D.N.Y. 2000) (finding no ancillary jurisdiction over subsequent action to recover state law fraudulent conveyances when there was no diversity and jurisdiction in original action for looting of company was based on diversity).. 2000) . In re Transcolor Corp. v. Lapides, et al., 2007 WL 2916408, Not Reported in B.R. (2007).

Counsel for Universitas recognizes the fact that the latest claims are, in reality, a new action. They have re-captioned the original action to now include a litany of entities that were not in the original action and ignore the fact that the underlying case before this Court is closed.

However much plastic surgery Universitas does to the caption in their original case, the most recent motion is a new action against new parties.

That new action, however disguised, does not belong in this District Court.

## CONCLUSION

Based on the foregoing, the motion of Universitas for a turnover order should be denied and the entire proceeding on this motion should be dismissed.

Dated: October 25, 2013
     White Plains, New York

Respectfully submitted,

          s/Anthony J. Siano
Anthony J. Siano, Esq. (AS8842)
Anthony J. Siano Esq. PLLC
*Attorney for Daniel E. Carpenter. Phoenix Capital and Carpenter Financial Group*
300 Westchester Avenue, Suite 302
White Plains, New York 10604

To:

Paula K. Colbath,Esq
Michael Barnett, Esq.
Loeb & Loeb
345 Park Avenue
New York, New York 10154

Matthew Brief, Esq.
Ira Kleiman, Esq.
Brief, Carmen, Kleiman, LLP
805 Third Avenue - 12th Floor
New York New York
United States of America 10022

Carole Bernstein, Esq.
41 Maple Avenue North
Westport, Connecticut 06880


Glenn A. Duhl, Esq.
Siegel, O'Connor, O'Donnell & Beck, P.C.
150 Trumbull Street
Hartford, CT 06103