

**NOVA**
GROUP INC.

GRIST MILL PLAZA
100 GRIST MILL ROAD
SIMSBURY, CT 06070

July 30, 2009

## CONFIDENTIAL AND FOR SETTLEMENT PURPOSES ONLY

Ms. Sharon Siebert
Ms. Donna Vassar
Universitas Education, LLC
404 East 55th Street, Suite 13A
New York, NY 10022

Re: <u>Charter Oak Trust and Sash A. Spencer</u>

Dear Ms. Siebert & Ms. Vassar:

This shall confirm Nova's timely receipt of the <u>provisional</u> claim filed by Universitas.[1] Just as you say in your letter, we wish to preserve all of the Plan's rights as well. Also, you have plenty of time to retain new counsel, since we have 90 days to review the submitted provisional claim. See Plan § 8.01.

As part of Nova's claim investigation process, we have the following initial observations:

1) Attached to the Claim Request Form is a document entitled "Settlement Agreement and Releases" dated November 11, 2008 ("Agreement") by and between the Employer (Holding Capital) and the Beneficiary (Universitas). However, the copy of the Agreement provided to us lacks the signatures of both Mrs. Mary M. Spencer and Mr. Bruce Mactas. Please provide us with a <u>fully-executed</u> copy of the Agreement (if one exists).

2) Section B(2)(b) of the Agreement makes reference to releases having been executed by Mary Spencer, the Estate of Sash A. Spencer ("Estate"), Donna J. Vassar and Sharon E. Siebert. Please provide us with <u>fully-executed</u> copies of all such releases.

---

[1] Capitalized terms not otherwise defined herein have the same meaning as in Nova's letter to Universitas dated July 8, 2009.

TEL: (860) 408-7000  •  FAX: (860) 408-7015

1



EXHIBIT
426
AAA Case No.
13145Y1556 10

UNIV-000992



Page 2
Sash Spencer Claim

3)   Section B(1)(b) of the Agreement provides that the insurance broker on the transaction, Mr. Bruce Mactas, is entitled to a fee of $200,000 if the Death Benefit exceeds $23 million. Please provide a letter executed by Holding Capital, Universitas and Mr. Mactas explaining the reasoning behind and basis for such a payment. We note that such a payment may violate the insurance laws, rules and regulations of New York and/or Connecticut, and may also constitute a conflict of interest. However, if Mr. Mactas agrees to waive any such payment, then at least this issue would be resolved. If so, please provide a letter executed by Mr. Mactas and addressed to Nova evidencing his irrevocable waiver of any such payment or otherwise sharing in any Death Benefit. Absent such an irrevocable waiver, Nova has been advised that it will most likely be precluded from paying any of the Death Benefit to anyone.[2]

4)   We are very concerned that the Agreement is between the Employer (Holding Capital) and the Beneficiary (Universitas), and provides for the Employer to receive 50% of the Death Benefit. See Agreement § B(1)(a). As you may know, pursuant to Sections 419(e) and 419A(f)(6) of the Internal Revenue Code and the regulations thereunder, there can never be a reversion to any Employer in the Plan. See also, e.g., Plan §§ 5.05, 5.07, 7.01. Furthermore, regardless of any such Agreement, Nova can only pay the irrevocably designated Beneficiary the entire Death Benefit (if any)—meaning that Nova can only make a distribution to Universitas.

5)   However, the existence of the Agreement raises an even more serious problem. Now that you have informed Nova that you are "splitting" the Death Benefit with Holding Capital which will result in an illegal reversion that would imperil the very existence of the Plan, we cannot recognize the Agreement at all. Our only suggestion is that you retain competent legal counsel to advise you in this regard. Nova must and shall pay all of the Death Benefit (if any) solely to Universitas as the irrevocably designated Beneficiary and as instructed by Mr. Spencer prior to his death.

6)   We want to make it clear that you will have an opportunity to appeal within the Plan any decision that we make on your claim. You will also have the right to commence an arbitration proceeding if you are unhappy with our final decision.

---

[2] We now understand why Mr. Mactas has been sowing confusion around the 80% Death Benefit provision found in Plan § 6.01, since he has a strong incentive under the Agreement to maximize the Death Benefit—even if there is no basis for doing so.

2



7) However, if we do go to arbitration, the Plan will assert all valid defenses including, but not limited to, the fact that a claim was not filed on a timely basis.

8) We have also made you aware of a competing claim to the Death Benefit by Grist Mill Capital, LLC, which has graciously consented to allow us to process your claim first. Grist Mill believes that it has a binding and enforceable agreement to purchase the Policies in return for a $1.8 million payment to Universitas.

9) As you have requested, we will recognize Mr Alex Sgoutas as your designated representative to assist in processing your claim. We have copied him on this letter, but we also believe that all further communications on this matter should be in writing. Thus, once you retain new counsel, please advise us of that fact in writing as well.

Once you have provided the information and documents requested herein, we can continue to process your provisional claim. If you are unable to provide any of the above referenced information, please inform us of that fact as soon as possible, as we cannot proceed to process the claim without it. Please do not hesitate to contact us if you have any questions.

Sincerely,

Wayne H. Bursey
Trustee

cc: Mr. Alex Sgoutas
237 Range Road
Wilton, CT 06897

3

UNIV-000994



**NOVA GROUP INC.**

GRIST MILL PLAZA
100 GRIST MILL ROAD
SIMSBURY, CT 06070

July 30, 2009

## CONFIDENTIAL AND FOR SETTLEMENT PURPOSES ONLY

Ms. Sharon Siebert
Ms. Donna Vassar
Universitas Education, LLC
404 East 55th Street, Suite 13A
New York, NY 10022

Re: Charter Oak Trust and Sash A. Spencer

Dear Ms. Siebert & Ms. Vassar:

This shall confirm Nova's timely receipt of the provisional claim filed by Universitas.[1] Just as you say in your letter, we wish to preserve all of the Plan's rights as well. Also, you have plenty of time to retain new counsel, since we have 90 days to review the submitted provisional claim. See Plan § 8.01.

As part of Nova's claim investigation process, we have the following initial observations:

1) Attached to the Claim Request Form is a document entitled "Settlement Agreement and Releases" dated November 11, 2008 ("Agreement") by and between the Employer (Holding Capital) and the Beneficiary (Universitas). However, the copy of the Agreement provided to us lacks the signatures of both Mrs. Mary M. Spencer and Mr. Bruce Mactas. Please provide us with a fully-executed copy of the Agreement (if one exists).

2) Section B(2)(b) of the Agreement makes reference to releases having been executed by Mary Spencer, the Estate of Sash A. Spencer ("Estate"), Donna J. Vassar and Sharon E. Siebert. Please provide us with fully-executed copies of all such releases.

---

[1] Capitalized terms not otherwise defined herein have the same meaning as in Nova's letter to Universitas dated July 8, 2009.

1

TEL: (860) 408-7000    •    FAX: (860) 408-7015

RESCANNED

UNIV-000992



Page 2
Sash Spencer Claim

3) Section B(1)(b) of the Agreement provides that the insurance broker on the transaction, Mr. Bruce Mactas, is entitled to a fee of $200,000 if the Death Benefit exceeds $23 million. Please provide a letter executed by Holding Capital, Universitas and Mr. Mactas explaining the reasoning behind and basis for such a payment. We note that such a payment may violate the insurance laws, rules and regulations of New York and/or Connecticut, and may also constitute a conflict of interest. However, if Mr. Mactas agrees to waive any such payment, then at least this issue would be resolved. If so, please provide a letter executed by Mr. Mactas and addressed to Nova evidencing his irrevocable waiver of any such payment or otherwise sharing in any Death Benefit. Absent such an irrevocable waiver, Nova has been advised that it will most likely be precluded from paying any of the Death Benefit to anyone.[2]

4) We are very concerned that the Agreement is between the Employer (Holding Capital) and the Beneficiary (Universitas), and provides for the Employer to receive 50% of the Death Benefit. See Agreement § B(1)(a). As you may know, pursuant to Sections 419(e) and 419A(f)(6) of the Internal Revenue Code and the regulations thereunder, there can **never** be a reversion to any Employer in the Plan. See also, e.g., Plan §§ 5.05, 5.07, 7.01. Furthermore, regardless of any such Agreement, Nova can only pay the irrevocably designated Beneficiary the entire Death Benefit (if any)—meaning that Nova can only make a distribution to Universitas.

5) However, the existence of the Agreement raises an even more serious problem. Now that you have informed Nova that you are "splitting" the Death Benefit with Holding Capital which will result in an illegal reversion that would imperil the very existence of the Plan, we cannot recognize the Agreement at all. Our only suggestion is that you retain competent legal counsel to advise you in this regard. Nova must and shall pay all of the Death Benefit (if any) solely to Universitas as the irrevocably designated Beneficiary and as instructed by Mr. Spencer prior to his death.

6) We want to make it clear that you will have an opportunity to appeal within the Plan any decision that we make on your claim. You will also have the right to commence an arbitration proceeding if you are unhappy with our final decision.

---

[2] We now understand why Mr. Mactas has been sowing confusion around the 80% Death Benefit provision found in Plan § 6.01, since he has a strong incentive under the Agreement to maximize the Death Benefit—even if there is no basis for doing so.

2

UNIV-000993


ROUP INC.

Page 3
Sash Spencer Claim

7) However, if we do go to arbitration, the Plan will assert all valid defenses including, but not limited to, the fact that a claim was not filed on a timely basis.

8) We have also made you aware of a competing claim to the Death Benefit by Grist Mill Capital, LLC, which has graciously consented to allow us to process your claim first. Grist Mill believes that it has a binding and enforceable agreement to purchase the Policies in return for a $1.8 million payment to Universitas.

9) As you have requested, we will recognize Mr Alex Sgoutas as your designated representative to assist in processing your claim. We have copied him on this letter, but we also believe that all further communications on this matter should be in writing. Thus, once you retain new counsel, please advise us of that fact in writing as well.

Once you have provided the information and documents requested herein, we can continue to process your provisional claim. If you are unable to provide any of the above referenced information, please inform us of that fact as soon as possible, as we cannot proceed to process the claim without it. Please do not hesitate to contact us if you have any questions.

Sincerely,

Wayne H. Bursey
Trustee

cc: Mr. Alex Sgoutas
237 Range Road
Wilton, CT 06897

3

UNIV-000994