# ROBINSON & COLE LLP

JOSEPH L. CLASEN

Chrysler East Building
666 Third Avenue, 20th Floor
New York, NY 10017
Main (212) 451-2900
Fax (212) 451-2999
jclasen@rc.com
Direct (212) 451-2910

February 10, 2014

**BY ECF & FACSIMILE: (212) 805-0426**

Honorable Laura Taylor Swain
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *Universitas Educ., LLC v. Nova Group, Inc.,* USDC, S.D.N.Y., 1:11-cv-1590-LTS-HBP; *Nova Group, Inc. v. Universitas Educ., LLC,* USDC, S.D.N.Y., 1:11-cv-8726-LTS

Dear Judge Swain:

We represent nonparty CuraLeaf, LLC ("Curaleaf"). CuraLeaf will suffer irreparable harm by tomorrow, February 11, 2014 as a result of the Court's granting of Universitas Education, LLC's ("Universitas") application for preliminary injunction dated January 13, 2014 (Doc. 366) (the "Injunction"). For reasons discussed below, CuraLeaf seeks emergency relief from this Court in the form of a *limited* modification of the Injunction to permit Grist Mill Partners, LLC ("GMP") to complete its obligations under the Letter of Intent by entering into a written lease with CuraLeaf. As described below, no one disputes that Curaleaf has no affiliation with Mr. Carpenter and that Curaleaf and Mr. Carpenter entered into an arm's length agreement to enter a lease. However, Universitas refuses to consent to amending the Injunction to permit this lease unless Curaleaf agrees to enter into a side letter with Universitas which, among other things, provides for a cash payment of at least $250,000 to Universitas.

On January 28, 2014, the State of Connecticut selected CuraLeaf for an award of license (the "Conditional License") to produce medical cannabis at property to be leased by CuraLeaf from GMP located at 100 Grist Mill Road, Simsbury Connecticut.[1] Although CuraLeaf and its members are not directly or indirectly related to GMP or

---

[1] The real property in question was purchased by GMP in 2007 and is subject to a mortgage in favor of TD Banknorth, N.A. dated August 30, 2007. A copy of the deed and mortgage are recorded on the land records and can be made available if there is any disagreement on this point. The acquisition of this property is unrelated to any funds diverted by Nova Group, Inc. in or after 2009.

*Law Offices*
BOSTON
PROVIDENCE
HARTFORD
NEW LONDON
STAMFORD
WHITE PLAINS
NEW YORK CITY
ALBANY
SARASOTA

www.rc.com

12734516-v5

Daniel Carpenter or to any of Carpenter's entities, the Order materially affects CuraLeaf's rights under a Letter of Intent signed by CuraLeaf and GMP on November 5, 2013 as amended on January 9, 2014. CuraLeaf had no notice at the time that an Order to Show Cause was pending, and did not learn of the Injunction until February 5, 2014. Since that date, Curaleaf has attempted unsuccessfully to negotiate a consent by all parties to modify the Injunction. As discussed below, there is extreme exigency for this motion. If the motion to modify is not granted by tomorrow, **February 11, 2014**, CuraLeaf will suffer irreparable harm in that it will be unable to satisfy the conditions of the Conditional License award as set by the State of Connecticut.

Granting of the modification will not result in the dissipation of any of the assets of Mr. Carpenter or his entities, including GMP. Instead it will create substantially new asset value. Indeed, CuraLeaf submits that this is a unique opportunity to enhance the value of GMP (which would also benefit its creditors) which opportunity will be irrevocably lost if the injunction is not modified as requested.

The Letter of Intent as amended was shared with counsel for Universitas on Friday, and yesterday CuraLeaf provided a copy of the proposed lease. CuraLeaf attempted to resolve this matter without court intervention, but was unsuccessful. Despite CuraLeaf and Mr. Carpenter's agreement to enter into a side letter providing assurances that payments under the lease will be wired to a specific account covered by the Injunction as well as monthly statements, and other assurances as requested by Universitas, Universitas, would not agree to a stipulated modification of the Injunction unless CuraLeaf would pay $250,000.00 to Universitas for its consent.

***The Proposed Lease Creates Substantial Economic Value for GMP (and its Creditors).***

The economic terms set forth in the proposed lease provided to Universitas for its review provide substantial economic value to GMP (and hence to its creditors). Specifically, under the terms of the proposed lease, CuraLeaf agrees to pay $60,000 per month during the first two years of the lease, and $120,000 per month for the remaining term of the lease. These rental payments will exceed the rentals currently being paid to GMP by $60,000 per month after the first two years of the lease. In addition, the proposed lease contains an option to purchase which if exercised would result in CuraLeaf purchasing the property for $5,000,000. Although a formal appraisal has not been done, the tax assessor for the Town of Simsbury appraised the value of the property as of October 31, 2013 at $3,374,735, i.e., over $1.5 million less

than the option price set forth in the lease. CuraLeaf is obviously paying a premium for a use that is *unique* to CuraLeaf by virtue of its Conditional License from the State of Connecticut. The maximum number of licenses that the State intends to award have been awarded to applicants. Universitas' reasons for withholding consent to a modification are not related to the value of the transaction to GMP and its creditors.

***The Proposed Modification to Permit Entry Into The Lease Does Not Create Additional Risk For Universitas.***

If the Injunction is modified for the limited purpose of permitting GMP to enter into the proposed lease, Universitas will not be at any additional risk. Any rents, option payments or security deposits to be paid under the proposed lease will be made to GMP and will be subject to the Injunction. Further, if the purchase option is exercised (which is not foreseen in the reasonably near future), all proceeds payable to GMP would be subject to the injunction.

It should be noted that there is a current tenant in the facility making rental payments to GMP. Rental payments by the current tenant are protected by the Injunction to the same extent as rents to be paid by CuraLeaf under the proposed lease. Mr. Carpenter and his entities may not transfer those payments except to the extent provided in the Injunction. In submitting the proposed order that resulted in the signed injunction, Universitas did not request any additional protections.

Notwithstanding that the Injunction protects against dissipation of moneys to be paid under leases, Universitas has expressed concern that Mr. Carpenter will run off with the rent payments under the lease to CuraLeaf. Universitas therefore asked that CuraLeaf's payments under its lease be treated differently, namely that they be wired to GMP's account at TD Bank, and that Universitas be given copies of the bank statements. CuraLeaf and Carpenter proposed a side letter that would meet these newly raised security concerns, notwithstanding that they were not asked for when Universitas requested the Injunction. However, Universitas would not agree to present a stipulated motion for modification to the Court absent an additional payment for its consent.

***Universitas's Initial Demand For $500,000 For Its Consent to a Modification.***

In an effort to avoid dispute and unnecessary time of the Court, CuraLeaf and GMP were willing to enter into a side letter as requested by Universitas, in exchange for presenting a stipulated modification to the Court for approval. However, Universitas

imposed an additional demand. It initially demanded that Curaleaf pay it the sum of $500,000:

> Given that Curaleaf is seeking Universitas' consent to a transaction that may cause Mr. Carpenter to violate the Court's Order, and may further hurt Universitas' efforts to collect the judgment, and is seeking such consent on extremely short notice, Curaleaf agrees to pay $500,000.00 to Universitas within 10 business days of this agreement, as consideration for Universitas' blessing of the lease.

The demand for payment is overreaching. CuraLeaf has done nothing to cause Mr. Carpenter to violate a court order. Further CuraLeaf is not seeking Universitas's consent to the lease. Rather, CuraLeaf sought Universitas's cooperation to avoid a contested hearing on a motion to modify the Injunction to permit a transaction that is beneficial to Universitas and to GMP's creditors. The attempt to extract $500,000 for the cooperation of counsel to avoid needless waste of the Court's time is unconscionable. Universitas has now reduced their demand to $250,000.

***Exigent Circumstances Exist For This Emergency Motion: Unless The Injunction Is Modified Immediately CuraLeaf (and GMP) Will Suffer Enormous and Irreparable Loss.***

In the fall of 2013, CuraLeaf incurred over $250,000 in expenses for attorneys', architects' and consultant's fees to obtain zoning approvals necessary to use the GMP property as a licensed medical marijuana production facility. On November 5, 2013, as it was in the process of preparing to obtain the necessary zoning approvals, CuraLeaf entered into a Letter of Intent with GMP to lease the Simsbury property on the same economic terms now set forth in the proposed lease. In reliance on the Letter of Intent, CuraLeaf prepared and submitted an extensive application to the State of Connecticut Department of Consumer Protection for licensure as a medical marijuana production facility. In its application, CuraLeaf stated that its growing operations would be conducted in a secure facility located at 100 Grist Mill Road, Simsbury, Connecticut, and that CuraLeaf had a Letter of Intent to lease that property from GMP. CuraLeaf submitted a non-refundable application fee of $25,000 with its application. In total, CuraLeaf incurred over $250,000 on expert fees, attorneys' fees, architect fees and other expenses in supporting its license application so as to demonstrate its ability to perform if CuraLeaf were awarded a license.

Honorable Laura Taylor Swain
February 10, 2014
Page 5

On January 28, 2014, after a lengthy and stringent application review process, the State of Connecticut Department of Consumer Protection selected four applications for the award of licenses to grow medical cannabis in the State. CuraLeaf was one of the four successful applicants. CuraLeaf's license is expressly conditioned on CuraLeaf paying a further $75,000 non-refundable license fee (which it has already done) and posting security in the amount of $2,000,000 by February 11, 2014. The $2,000,000 is forfeitable if CuraLeaf is unable to satisfy the commitments made in its license application, including its ability to successfully complete the construction of a fully operational production facility at 100 Grist Mill Road, Simsbury, Connecticut.[2] Although CuraLeaf has a Letter of Intent to lease those premises, state regulations require a written lease that limits the landlord's right of access to the premises. Only authorized personnel may use the facility.

Late on February 5, 2014, CuraLeaf learned for the first time of the Injunction issued on January 13, 2014. If the Preliminary Injunction is not modified immediately, the parties will not sign the proposed lease agreement and CuraLeaf will not be able to satisfy one of the express conditions to the award of the Conditional License, and will be faced with the immediate loss of its economic expectations under the license and the loss of the substantial investment of over $250,000 in professional fees and expenses in successfully undertaking the application process and paying the $25,000 application fee and the $75,000 license fee.

Specifically, CuraLeaf cannot risk posting a forfeitable security deposit of $2,000,000, *which is required by February 11, 2014*, if it does not have a written lease agreement that satisfies state regulations. It is out of time. Unless the Injunction is modified as requested, CuraLeaf will lose millions in economic value. Extreme exigency exists to prevent irreparable harm to CuraLeaf. This harm is not outweighed by countervailing considerations. Indeed, the proposed lease benefits creditors of GMP.

Respectfully submitted,

Joseph L. Clasen

    cc:    All counsel of record (*via ECF*)

---

[2] This is the address of the real property acquired by GMP in 2007.