# EXHIBIT 36



Doc ID: 001107620002 Type: LAN
BK 867 PG 662-663

After recording, return to:

## WARRANTY DEED - Survivorship

TO ALL PEOPLE TO WHOM THESE PRESENTS SHALL COME, GREETING:

KNOW YE, THAT BIRCH HILL PARTNERS, LLC, a Connecticut Limited Liability Company with an office in the Town of Simsbury, County of Hartford and State of Connecticut, acting herein by CAROLINE FINANCIAL GROUP, INC., a Delaware Corporation, acting herein by MATTHEW G. WESTCOTT, presently of Burlington, Connecticut, hereinafter referred to as Grantor, for the consideration of TWO HUNDRED FORTY THOUSAND AND NO/100 ($240,000.00) DOLLARS, received to its full satisfaction of STEVEN MECKEL and CAROLINE MECKEL, both presently of the Town of Simsbury, County of Hartford and State of Connecticut, hereinafter referred to as Grantees, do give, grant, bargain, sell and confirm unto the said Grantees, and the survivor of them, and the heirs and assigns of the survivor of them forever

*SEE SCHEDULE "A" ATTACHED HERETO AND MADE A PART HEREOF*

Said premises are subject to any and all provisions of any ordinance, municipal regulation or public or private law, as of record more fully appear. Said premises are further subject to taxes due the Town of Southington on the Grand List of October 1, 2012, which taxes the Grantees hereby assumes and agrees to pay.

TO HAVE AND TO HOLD the above granted and bargained premises, with the appurtenances thereof, unto them, the said Grantees and the survivor of them, and the heirs and assigns of the survivor of them forever, and to their own proper use and behoof. And also, it, the said Grantor does for itself, its successors and assigns covenant with the said Grantees, their survivor and such survivor's heirs and assigns, that at and until the ensealing of these presents, it is well seized of the premises, as a good indefeasible estate in FEE SIMPLE; and have a good right to bargain and sell the same in manner and form as is above written; and that the same is free from all encumbrances whatsoever, except as above written.

AND FURTHERMORE, it, the said Grantor, does by these presents bind itself, its successor and assigns forever to WARRANT AND DEFEND the above granted and bargained premises to them, the said Grantees, and to the survivor of them and to such survivor's heirs and assigns, against all claims and demands whatsoever, except as above written.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 22nd of November 2013.

Signed, sealed and delivered         **GRANTOR**
in the presence of:                  **BIRCH HILL PARTNERS, LLC**

                                     By: _____
_____            CAROLINE FINANCIAL GROUP, INC., Member/Manager
Jason S. Famiglietti                     By: Matthew G. Westcott, duly authorized

_____
Richard P. Roberts

STATE OF CONNECTICUT  )
                      ) ss: Hartford                        November 22, 2013
COUNTY OF HARTFORD    )

On this 22nd day of November 2013, before me, the undersigned officer, personally appeared Matthew G. Westcott, duly authorized signer for CAROLINE FINANCIAL GROUP, INC., Member/Manager of BIRCH HILL PARTNERS, LLC, and that he, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation, by himself.

_____
Jason S. Famiglietti
Commissioner of the Superior Court

Grantees' Address: 41 Church Street, Simsbury, CT 06081

$ CONVEYANCE TAX RECEIVED
CT $ 1800.00   S/S $ 600.00
_____
ASST TOWN CLERK OF SIMSBURY CT
Book: 867 Page: 662 Seq: 1

## SCHEDULE A
## DESCRIPTION
## 41 Church Street

A certain piece or parcel of land with the buildings thereon, situated in Simsbury, Connecticut, being known as No. 41-43 Church Street and designated as House #41 on a map entitled, "Plan Showing Property By or To Be Acquired By Bradford E. & Gertrude B. Wilkinson Church Street Tariffville, Conn. Henry Charles Cotton Land Surveyor Stardust Drive Granby, Conn. Scale 1" = 20' Date 8-15-1967", which map is on file In the Simsbury Town Clerk's Office and being more particularly bounded and described as follows:

Northerly   by land now or formerly of John J. Brown. 132 Feet:

Easterly    by Church Street, 85 feet:

Southerly   by House #45 as shown on said map, 132.72 feet, and;

Westerly    by land now or formerly of the Estate of Arthur J. Hayes and John J. Brown. partly by each, in all. 82 feet.

Doc ID: 001107630008 Type: LAN
BK 867 PG 664-671

Return To:
Village Mortgage Company
30 Tower Lane
Avon, CONNECTICUT 06001

This instrument was prepared by:
Village Mortgage Company
30 Tower Lane
Avon, CONNECTICUT 06001
860-482-7378

_____ [Space Above This Line For Recording Data] _____

State of Connecticut

# OPEN-END MORTGAGE

FHA Case Number:
061-4550865-703

MIN: 100451300000014130
SIS Telephone #: (888) 679-MERS

THIS MORTGAGE ("Security Instrument") is given on **November 22, 2013**.

The Mortgagor is **Steven Meckel and Caroline Meckel, as joint tenants,** ("Borrower").

This Security Instrument is given to **Mortgage Electronic Registration Systems, Inc. ("MERS")**, (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of **Delaware**, and has an address and telephone number of **P.O. Box 2026, Flint, MICHIGAN 48501-2026,** tel. **(888) 679-MERS.**

**Village Mortgage Company,** ("Lender")
is organized and existing under the laws of **CONNECTICUT,**
and has an address of **30 Tower Lane , Avon, CONNECTICUT 06001**.

Borrower owes Lender the principal sum of **TWO HUNDRED THIRTY-FIVE THOUSAND SIX HUNDRED FIFTY-THREE AND NO/100** Dollars (U.S. **$235,653.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **December 1, 2043**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower in consideration of this debt does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the Town of **Tariffville, Hartford** County, Connecticut:

**See Attached Exhibit 'A'**

which has the address of **41 Church Street**
**Tariffville, CONNECTICUT 06081,** ("Property Address");

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to

---

**FHA Connecticut Open-End Mortgage with MERS – 4/96**                                                **Amended 2/01**

Page 1 of 7

IDS, Inc.                                                                                  Borrower(s) Initials CM SM

exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 12 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires

---

FHA Connecticut Open-End Mortgage with MERS – 4/96         Amended 2/01

IDS, Inc.                              Page 2 of 7          Borrower(s) Initials CLM  SM

insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) *Sale Without Credit Approval.* Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the

Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may invoke any of the remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider           ☐ Graduated Payment Rider   ☐ Adjustable Rate Rider
☐ Planned Unit Development Rider  ☐ Growing Equity Rider       ☐ Other:

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ -Witness        _Olivia M. Albanese_____ -Witness
Richard P. Roberts

_____ (Seal)           _Caroline C. Meckel_____ (Seal)
Steven Meckel                    -Borrower        Caroline Meckel                    -Borrower

STATE OF CONNECTICUT, _____Hartford_____ County ss:

The foregoing instrument was acknowledged before me this __22nd__ day of ____November____, __2013__ by Steven Meckel and Caroline Meckel.
Witness my hand and official seal.

My Commission Expires: _____
(Seal)

                                  Richard P. Roberts, Esq.
                                  Commissioner of the Superior Court

## SCHEDULE A
## DESCRIPTION
## 41 Church Street

        A certain piece or parcel of land with the buildings thereon, situated in Simsbury, Connecticut, being known as No. 41-43 Church Street and designated as House #41 on a map entitled, "Plan Showing Property By or To Be Acquired By Bradford E. & Gertrude B. Wilkinson Church Street Tariffville, Conn. Henry Charles Cotton Land Surveyor Stardust Drive Granby, Conn. Scale 1" = 20' Date 8-15-1967", which map is on file In the Simsbury Town Clerk's Office and being more particularly bounded and described as follows:

Northerly    by land now or formerly of John J. Brown, 132 Feet:

Easterly    by Church Street, 85 feet:

Southerly    by House #45 as shown on said map, 132.72 feet, and;

Westerly    by land now or formerly of the Estate of Arthur J. Hayes and John J. Brown, partly by each, in all, 82 feet.

Received for Record at Simsbury, CT
On 11/25/2013 At 10:06:23 am
Carolyn D. Kelly, Town Clerk

RETURN TO:
Birch Hill Partners, LLC
41 Church Street
Simsbury, CT 06081

Doc ID: 000917280002 Type: LAN
BK 802 PG 216-217

(Individual)　　　　　　　　　　　114SF　　　　　　　　　　　CLEAVELAND inc.
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Bloomfield, Connecticut
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(203) 243-3456

**STATUTORY FORM WARRANTY DEED**

WE, JEFFERY S. SELTZER a/k/a JEFFREY S. SELTZER AND DORANN H. SELTZER, of the Town of Simsbury, County of Hartford and State of Connecticut

for consideration paid, grant to BIRCH HILL PARTNERS, LLC, of the Town of Simsbury, County of Hartford and State of Connecticut

with **WARRANTY COVENANTS**

A certain piece or parcel of land with all building and improvements thereon situated in the Town of Simsbury, known as 41 Church Street, being more particularly bounded and described on SCHEDULE A attached hereto and made a part hereof.

SAID PREMISES ARE BEING CONVEYED SUBJECT TO:

1. Real property taxes on the current Grand list and any municipal liens or assessments becoming due and payable on or after the delivery of this Deed.

2. Any and all provisions of any municipal, ordinance or regulation or public and private law with special reference to the provisions of any zoning regulations and regulations governing the said Premises.

Signed this 29th h day of September, 2010

Witnessed by:

_____　　　　　_____
Jacklyn Frappier　　　　　　　　　　　Jeffery S. Seltzer a/k/a Jeffrey S. Seltzer

_____　　　　　_____
DARLENE C. ARTER　　　　　　　　　　Dorann H. Seltzer

STATE OF CONNECTICUT　　　)
　　　　　　　　　　　　　　　) ss:　Simsbury　September 29, 2010
COUNTY OF HARTFORD　　　　 )

Personally Appeared JEFFERY S. SELTZER A/K/A JEFFREY S. SELTZER
Signer(s) of the foregoing Instrument, and acknowledged the same to be their free act and deed, before me

_____
Notary Public / J. of Peace / Commissioner of Superior Court

DARLENE C. ARTER
NOTARY PUBLIC
MY COMMISSION EXP: 5/31/14

$ CONVEYANCE TAX RECEIVED
CT $ 825.00  SI $ 412.50
_____
ASST TOWN CLERK OF SIMSBURY CT

Book: 802  Page: 216  Seq: 1

## SCHEDULE A
## DESCRIPTION

      A certain piece or parcel of land with the buildings thereon, situated in Simsbury. Connecticut, being known as No. 41-43 Church Street and designated as House #41 on a map entitled, "Plan Showing Property By or To Be Acquired By Bradford E. & Gertrude B. Wilkinson Church Street Tariffville, Conn. Henry Charles Cotton Land Surveyor Stardust Drive Granby. Conn. Scale 1" = 20' Date 8-15-1967", which map is on file In the Simsbury Town Clerk's Office and being more particularly bounded and described as follows:

Northerly    by land now or formerly of John J. Brown. 132 Feet:

Easterly    by Church Street, 85 feet:

Southerly    by House #45 as shown on said map, 132.72 feet, and;

Westerly    by land now or formerly of the Estate of Arthur J. Hayes and John J. Brown. partly by each, in all. 82 feet.

Received for Record at Simsbury, CT
On 10/04/2010 At 1:52:40 pm
*Carolyn D. Kelly, Town Clerk*