# EXHIBIT 39

Doc ID: 001194000001 Type: TAX LIEN

BK **419** PG **553**

## CERTIFICATE OF CONTINUING TAX LIEN FOR NOT MORE THAN FIFTEEN YEARS

THE UNDERSIGNED TAX COLLECTOR OF THE TOWN OF CANTON IN THE STATE OF CONNECTICUT
HEREBY CONTINUES FOR A PERIOD OF NOT MORE THAN FIFTEEN YEARS FROM THE DATE HERE OF A
TAX LIEN IN FAVOR OF THE SAID TOWN OF CANTON UPON CERTAIN REAL ESTATE SITUATED IN
SAID TOWN OF CANTON, WHICH REAL ESTATE IS DESCRIBED AS FOLLOWS :

        PROP LOC : 84 LAWTON ROAD                         BILL #2013-01-3470084
        M/B/L:      32 3470084                            VOL.   384 PAGE 568

The lien continued by this certificate is to secure payment of a tax, THE PRINCIPAL
OF WHICH AMOUNTS TO $3,526.45 due to said TOWN OF CANTON with legal interest, fees
and charges thereon, laid on the assessment list of OCTOBER 01, 2013 and appearing in
the rate bill in the name of:

        GREYHOUND PARTNERS LLC
        100 GRIST MILL ROAD  SIMSBURY  CT  06070

THE PRINCIPAL of which tax became due on 07/01/2014 and 01/01/2015.

THIS CERTIFICATE IS FILED IN ACCORDANCE WITH THE PROVISIONS OF THE APPLICABLE LAW.
BY THE RECORDING OF THIS LIEN, THE UNDERSIGNED TAX COLLECTOR HEREBY GIVES NOTICE OF
HIS INTENTION, IF NECESSARY, TO CLAIM AGAINST THE PROCEEDS OF FIRE INSURANCES
POLICIES IN ACCORDANCE WITH THE PROVISIONS OF SECTIONS OF 12-173, AND 49-73A THROUGH
49-73I, AS REVISED.

Dated at TOWN OF CANTON , Connecticut,   04 June 2015

                                          *Debra Gosselin*
                                          DEBRA GOSSELIN CCMC

Received for Record at Canton, CT
On 06/04/2015 At 11:15:13 am

VOL 384 PAGE 0574

## OPEN-END MORTGAGE DEED AND SECURITY AGREEMENT

TO ALL PEOPLE TO WHOM THESE PRESENTS SHALL COME, GREETINGS:

KNOW YE, that GREYHOUND PARTNERS LLC, a Connecticut limited liability company with an address at 100 Grist Mill Road, Simsbury, CT 06070 (the "Borrower"), for the consideration of One Dollar ($1.00) and other valuable consideration received to the Borrower's full satisfaction THE CARPENTER FAMILY TRUST (the "Lender"), does hereby give, grant, bargain, sell and confirm, with MORTGAGE COVENANTS, unto the Lender, his successors and assigns forever:

### THE PROPERTY

(A)   PROPERTY: All of their interest in and to that certain piece or parcel of real property known as 84 Lawton Road, located in the Town of Canton, County of Hartford and State of Connecticut, and appliances or structures appurtenant thereto, described on Schedule A attached hereto (the "Land").

(B)   IMPROVEMENTS: All the buildings, structures and improvements now or hereafter placed on the Land (the "Improvements").

(C)   SERVICE EQUIPMENT: All fixtures, appliances, machinery and equipment now or hereafter installed, and such other goods and chattels and personal property as are now or hereafter attached to, used, or furnished in connection with the letting or operation of the Property (hereinafter defined) or in connection with the activities conducted thereon, and all renewals or replacements thereof or additions thereto or articles of substitution therefor (the "Service Equipment").

(D)   INSURANCE PROCEEDS: CONDEMNATION PROCEEDS: All awards or payments, including interest thereon, which may be made with respect to the Property as a result (i) of any casualty or other event covered by insurance in accordance with, and subject to, the terms and conditions of Section 1.2 and (ii) of the exercise of the right of eminent domain in accordance with, and subject to, the terms and conditions of Section 1.4.

TO HAVE AND TO HOLD the above granted and bargained premises, with the privileges and appurtenances thereof (collectively referred to herein as the "Property") but subject to those encumbrances, if any, listed on Schedule B (the "Permitted Encumbrances"), unto it, the said Lender, its successors and assigns forever, to its and their own proper use and behoof.

THE CONDITION OF THIS DEED IS SUCH THAT:

WHEREAS, the Borrower is justly indebted to the Lender pursuant to a certain promissory note in the principal amount of Two Hundred Fifty Thousand Dollars ($250,000.00) (the "Loan"), a copy of which note is attached hereto and made a part hereof as Schedule C (the "Note"); and

WHEREAS, in order to more fully protect the security of this Mortgage, this Mortgage contains the following additional terms and conditions.

## ARTICLE I
## COVENANTS AND REPRESENTATIONS OF THE BORROWER

The Borrower covenants, represents and warrants to the Lender as follows:

1.1    PAYMENT AND PERFORMANCE.  The Borrower will pay the debt evidenced by the Note and all other sums due thereunder in lawful money of the United States and pay and perform all of its obligations under the Note, this Mortgage and every other instrument now or hereafter securing, evidencing, guarantying or relating to the Note and the Loan (collectively referred to herein as the "Loan Documents") at the times and in the manner set forth in such Loan Documents.  All amounts due the Lender under any of the aforesaid instruments shall be secured by the lien of this Mortgage and shall hereinafter be referred to as the "Mortgage Debt".

1.2    INSURANCE.

A.    The Borrower shall keep the Property insured against loss by fire, flood and other hazards, casualties, liability, contingencies and all other "extended coverage" risks.  All insurance carried on the Property must show the Lender as an additional insured and be payable to the Lender under the standard non-contributing mortgagee endorsement and such other endorsements as the Lender may require.

B.    In the event of any loss or damage to the Property, the Borrower shall give prompt notice thereof to the Lender.

C.    Borrower shall, together with the monthly payments of principal and interest, remit to Lender an amount estimated to equal one-twelfth (1/12) of the next year's premium on such insurance policy to be held in escrow.  In the event such escrow is insufficient to cover the premium due, Borrower shall make up any such shortfall at Lender's request and Lender shall provide reasonable documentation for the basis of such calculations.

1.3    TAXES.  The Borrower shall pay within any applicable grace period and before the same become delinquent, all taxes, water rates, sewer rents, utility charges, rentals, assessments and governmental or other charges and impositions of any kind whatsoever including any assessment for local improvements, whether payable in installments or otherwise, for which lien rights exist, which may now or hereafter be assessed or levied upon any part of the Property, or in lieu of or in addition to a tax on the Property (all such charges and payments collectively referred to herein as the "Taxes").  The Borrower shall promptly notify the Lender of the delinquency in the payment of any Taxes.

1.4    CONDEMNATION.  The Borrower will give the Lender prompt notice of any eminent domain proceedings affecting any part of the Property.  The Lender shall have the right to

2

intervene and participate in any eminent domain proceedings and the Borrower shall consult with the Lender in all matters pertaining to the adjustment, compromise or settlement of such proceedings and shall not enter into any agreement with respect to such matters without the prior written consent of the Lender.  The Lender may, in its sole discretion, retain and apply any eminent domain award or payment toward payment of the Mortgage Debt, or pay same over wholly or in part to the Borrower.

    1.5    <u>MAINTENANCE AND REPAIR; INSPECTION</u>.

        A.    The Borrower will (1) keep and maintain the Property in good condition, working order and repair; (2) not commit or suffer any waste of the Property; (3) repair, replace, rebuild or restore any part of the Property which may be damaged or destroyed; and (4) make all other repairs and replacements to the Property which the Lender may reasonably require.  All such work shall be done promptly in good and workmanlike manner.

        B.    The Lender and any person authorized by the Lender shall have the right to enter and inspect the Property at all reasonable times.

    1.6    <u>SALE, ENCUMBRANCE AND USE</u>.

        A.    The Borrower shall not, without the Lender's prior written consent, which may be withheld in the Lender's sole discretion for any reason whatsoever, (1) initiate or allow any transfer, lease, mortgage or other disposition of, or contract to dispose of, legal or equitable title to all or any part of the Property; (2) change the ownership of, commence an action to dissolve or otherwise effect the dissolution of the Borrower; or (3) voluntarily create any liens or encumbrances against such title.

        B.    The Borrower will keep the Property free from the claim of all persons supplying labor or materials in connection with the construction or repair of any Improvements constituting a part of the Property.

    1.7    <u>PROTECTION OF LIEN AND OTHER EXPENSES</u>.  The Borrower shall pay, indemnify, defend and hold the Lender harmless from all costs, disbursements, expenses and reasonable counsel fees incurred by the Lender in connection with protecting or sustaining the lien of this Mortgage or collection of the Mortgage Debt, either before or after obtaining judgment of foreclosure of the Mortgage or judgment on or with respect to the Mortgage Debt.

<u>ARTICLE II</u><br><u>DEFAULT</u>

    2.1    <u>EVENTS OF DEFAULT</u>.  Any one or more of the following shall constitute an "Event of Default" hereunder:

        A.    The failure to pay any installment of principal and/or interest or any other

3

sums due with respect to the Loan when due.

B.     The occurrence of a default under any other Loan Document beyond any grace periods set forth in said document.

C.     The failure to pay the premiums on or keep in force any insurance required under Section 1.2. herein.

D.     The failure to pay any Taxes within the applicable time periods set forth under Section 1.3. herein.

E.     The transfer, encumbrance or change in use of, or other action or non-action with respect to, the Property or the composition of the Borrower in contravention of the provisions of Section 1.7. herein.

F.     The failure to observe or perform any other covenants of the Borrower contained in this Mortgage for a period of thirty (30) days after the occurrence of such failure.

G.     The filing by or against the Borrower of any petition, arrangement, reorganization, or the like under any insolvency or bankruptcy law, or the adjudication of the Borrower as a bankrupt (and if such filing is involuntary, the failure to have same dismissed within sixty (60) days from the date of filing), or the making of an assignment for the benefit of creditors, or the appointment of a receiver for any part of the Borrower's properties or the admission in writing by the Borrower of the inability to pay debts as they become due.

<u>ARTICLE III</u>
<u>REMEDIES</u>

Whenever an Event of Default shall have occurred, the Lender may take any one or more of the following remedial steps:

3.1     <u>ACCELERATION</u>.  The Lender may declare, without demand or notice to the Borrower, the outstanding principal amount of the Note and the interest accrued thereon, and the Mortgage Debt, to be due and payable immediately, and upon such declaration such principal and interest and other sums shall immediately become, and be, due and payable.  The Lender may take any steps available to him as a secured party under the Uniform Commercial Code with respect to such portions of the Collateral and Mortgaged Premises as may be deemed to be personal property.

3.2     <u>FORECLOSURE</u>.  The Lender may foreclose this Mortgage and exercise its rights as a secured party for all or any portion of the Mortgage Debt which is then due and payable, subject to the continuing lien of this Mortgage for the balance not then due and payable.

3.3     <u>LENDER ADVANCES</u>.  The Lender may, without notice or demand, pay any amount which the Borrower has failed to pay, or perform any act which the Borrower has failed to

4

VOL 3 8 4 PAGE 0 5 7 8

perform hereunder.  In such event, such Lender advances, together with interest thereon from the date made, at the highest interest rate allowed under the Note shall be (1) added to the Mortgage Debt, (2) payable on demand to the Lender and (3) secured by the lien of this Mortgage.

3.4    REMEDIES CUMULATIVE; LENDER'S DISCRETION.  No remedy conferred upon or reserved to the Lender hereunder is or shall be deemed to be exclusive but shall be cumulative, and may be exercised in the sole discretion of the Lender at any time, in any manner, and in any order, and shall be in addition to and separate and distinct from every other remedy given the Lender under this Mortgage, or any other Loan Documents, or now or hereafter existing in favor of the Lender at law or in equity or by statute.  The Lender, in exercising any remedy provided herein under which it may make payments or perform actions which the Borrower has failed to do or make, may do so in its sole discretion whenever in its opinion such payment or performance is necessary or desirable to protect the full security intended by this Mortgage.

3.5    NO WAIVER.  Time and punctuality shall be of the essence in this Mortgage, but any delay or failure by the Lender to exercise any right or remedy available to it upon the occurrence of an Event of Default hereunder shall not constitute a waiver of such Event of Default or relinquishment of the right in the future to enforce strict compliance by the Borrower with all of the covenants, conditions and agreements herein, or of the right to exercise any such rights or remedies if such Event of Default by the Borrower be continued or repeated.  No modification, amendment, change, or discharge of any term or provision of this Mortgage shall be valid or binding unless the same is in writing and signed by the Lender and the Borrower.  The Lender may however, without notice to or the consent of the Borrower, any other person primarily or contingently liable for the payment of the Mortgage Debt or the holders of any subordinate lien on the Property, (1) release any part of the security described herein, (2) release the obligation of any person primarily or contingently liable for the Mortgage Debt secured hereby, (3) extend the time for payment or otherwise modify the terms of the Mortgage Debt or this Mortgage, and (4) take any additional security for the Mortgage Debt.  No such release, extension, modification or additional security shall impair or affect the lien of this Mortgage or its priority over any subordinate lien and no such party shall be relieved of any liability by reason thereof.

3.6    NO MERGER.  In the event the Lender shall acquire title to the Property by conveyance from the Borrower or as a result of the foreclosure of any other mortgage which the Lender at any time holds with respect to the Property, this Mortgage shall not merge in the fee of the Property but shall remain and continue as an existing and enforceable lien for the Mortgage Debt secured hereby until the same shall be released of record by the Lender in writing.

ARTICLE IV
MISCELLANEOUS PROVISIONS

4.1    FUTURE ADVANCES.  This is an "Open-End Mortgage" and the holder hereof shall have all of the rights, powers and protection to which the holder of any Open-End Mortgage is entitled under Connecticut law.  Upon request the Lender may, in its discretion, make future advances to the Borrower.  Any future advance, and the interest payable thereon, shall be secured

5

VOL 3 8 4 PAGE 0 5 7 9

by this Mortgage.  At no time shall the principal amount of the debt secured by this Mortgage exceed the sum of the original principal amount of the Note, nor shall the maturity of any future advance secured hereby extend beyond the date the final principal payment is due on the Note.

4.2    GOVERNING LAW; BINDING EFFECT.  This Mortgage shall be governed by and construed, interpreted, regulated and enforced in accordance with the applicable laws of the State of Connecticut.  All covenants, conditions and agreements herein shall run with the land, and shall be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Lender and the Borrower.

4.3    NOTICE.

A.    Any notice, report, demand or other written instrument required hereunder shall be in writing, signed by the party giving or making the same, and shall be sent by certified mail, return receipt requested, to all parties hereto simultaneously at their respective mailing address indicated at the beginning of this Mortgage.

B.    The date of receipt of any notice shall be deemed to be, and shall be effective from, the earlier of (1) the date of the actual receipt of such notice, or (2) three days after same is deposited in the United States mail as provided above, whether or not the same is actually received by such party.  Any party hereto shall have the right to change the place to which any such notice shall be sent by a similar notice sent in like manner to all parties hereto.

4.4    NO AGENCY OR JOINT VENTURE.  Nothing contained in this Mortgage shall be construed to cause the Borrower to become the agent for, or joint venturer with, the Lender for any purpose whatsoever, nor shall the Lender be responsible for any shortage, discrepancy, damage, loss or destruction of any part of the Property for whatever cause unless same is the direct result of the gross negligence of the Lender.

4.5    INVALID PROVISIONS.  If any term or provision herein is judicially determined invalid or unenforceable then the same shall either be severed from this Mortgage or if possible reduced in scope to the extent necessary to be valid or enforceable.

NOW, THEREFORE, if all agreements and provisions contained herein are fully kept and performed by the Borrower, and all the Mortgage Debt shall be fully paid in all respects, then this deed shall be void; otherwise to remain in full force and effect.

6

VOL 3 8 4 PAGE 0 5 8 0

IN WITNESS WHEREOF, the Borrower has caused this instrument to be executed and delivered this _24th_ day of _February_, 2011.

Signed, sealed and delivered
in the presence of

GREYHOUND PARTNERS LLC

By:   Greyhound Management Inc.
      Its Managing Member

By: _Daniel E Carpenter_
    Name: _Daniel E Carpenter_
    Duly Authorized
    _Chairman of Managing Member_

STATE OF CONNECTICUT)
                                    : ss. _Simsbury_
COUNTY OF _Hartford_   )

On this the _24th_ day of _February_, 2011, before me, the undersigned officer, personally appeared _Daniel E. Carpenter_, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained as his free act and deed and the free act and deed of said company.

In witness whereof I hereunto set my hand.

Commissioner of the Superior Court
Notary Public

JASON J. CONCATELLI
Notary Public, State of Connecticut
My Commission Expires March 31, 2012

7

VOL 3 8 4 PAGE 0 5 8 1

## SCHEDULE A
### Legal Description

The following pieces or parcels of land, with all improvements and buildings thereon and all appurtenances thereto, located to the west of Lawton Road in the Town of Canton, County of Hartford and State of Connecticut.

FIRST PARCEL

A certain piece or parcel of land, with the buildings thereon, situated in the Town of Canton, County of Hartford and State of Connecticut, on the northwesterly side of Lawton Road, bounded and described as follows:

Beginning at an iron pipe in the northwesterly line of Lawton Road three hundred eighty-six (386) feet, more or less, northeasterly from the northeasterly corner of land now or formerly of Fred Lawton et al as measured in said northwesterly line of Lawton Road; thence running northwesterly in a line making an interior angle with the northwesterly line of Lawton Road of 94° 07' 35" along other land now or formerly of Lillian U. Carpenter, four hundred ninety-eight and fifty-five one-hundredths (498.55) feet to an iron pipe in the southeasterly line of land now or formerly of Donald S. Irwin, et al; thence running northeasterly in a line forming an interior angle of 73° 05' 07" with the last described line along said land now or formerly of Donald S. Irwin et al, two hundred fifteen and fifty-four one-hundredths (215.54) feet to an iron pipe; thence running southeasterly in a line forming an interior angle of 107° 18' 20" with the last described line along other land now or formerly of Lillian U. Carpenter, four hundred fifty and ninety-five one-hundredths (450.95) feet to an iron pipe in the northwesterly line of Lawton Road; thence running southwesterly along said northwesterly line of Lawton Road two hundred nine and eighty-three one-hundredths (209.83) feet to the point of beginning.

Being the same premises conveyed by Warrantee Deed from Lillian U. Carpenter to the Grantors dated June 23, 1961 and recorded in Volume 59, Page 307 of the Canton Land Records.

SECOND PARCEL

A certain piece or parcel of land, with the buildings thereon, situated in the Town of Canton, County of Hartford and State of Connecticut, on the northwesterly side of Lawton Road and bounded and described as follows, to wit:

NORTHEASTERLY:        by other land now or formerly of Edgar B. Carpenter and Constance L. Carpenter, four hundred ninety-eight and fifty-five one-hundredths (498.55) feet;

SOUTHEASTERLY: by Lawton Road, ninety-two (92) feet;

SOUTHWESTERLY: by the remaining land of Lillian U. Carpenter five hundred eighteen (518) feet, more or less; and

8

VOL 3 8 4 PAGE 0 5 8 2

WESTERLY: by land now or formerly of Donald S. Irwin et al, being the former right of way of the Hartford and Connecticut Railroad Company, ninety-nine (99) feet:

The northeasterly and northwesterly corners of said premises are marked by iron pipes.

Being the same premises conveyed by Warrantee Deed from Lillian U. Carpenter to the Grantors dated December 11, 1963 and recorded in Volume 64, Page 320 of the Canton Land Records.

THIRD PARCEL

A certain piece or parcel of land with improvements thereon situated in the Town of Canton, being a portion of the premises shown on a map entitled "Property of Lillian U. Carpenter, Lawton Rd. Canton Conn. Scale 1" = 50' Oct. 1, 1963, Morton S. Fine & Associates, Certified Substantially Correct By Merwyn F. Straus" and being more particularly described as follows, to wit:

Beginning at a point in the center of Roaring Brook which point marks the intersection of the northeast corner of land herein conveyed and land now or formerly of Lillian U. Carpenter and land now or formerly of the State of Connecticut which point is also approximately 337.5 feet southwest of a State Forest boundary marker located at Bahre Corner Road (the marker being about 958 feet northwest of the intersection of Bahre Corner Road and Lawton Road); thence running in a southwesterly direction 601 feet more or less to a State Forest boundary marker; thence running northwesterly 338 feet more or less to a State Forest boundary marker; thence running southwesterly 384 feet more or less to a State Forest boundary marker; thence running northwesterly 663 feet to a point marking the northeasterly corner of land now or formerly of Frank T. Smith (these last four boundaries being along land now or formerly of the State of Connecticut); thence running southwesterly along land now or formerly of Frank T. Smith 675 feet more or less to an iron pipe in the northerly boundary line of land now or formerly of William P. Delaney; thence running southeasterly along land now or formerly of William P. Delaney and land now or formerly of Frank T. Smith, partly by each, in all 793 feet more or less to a point; thence running northeasterly along land now or formerly of Frank T. Smith 379 feet more or less to a point; thence in a curved line running northeasterly and easterly along land now or formerly of Hartford and Connecticut Western Railroad Co. and land now or formerly of Donald S. and Mildred Irwin, partly by each, in all 1140 feet more or less to a point in the center of Roaring Brook; thence running northerly along land now or formerly of Lillian U. Carpenter 584 feet more or less to point or place of beginning.

Being the first parcel conveyed by Warranty Deed from Lillian U. Carpenter to the grantors dated May 16, 1968 and recorded in Volume 74, Page 322 of the Canton Land Records.

9

VOL 3 0 4 PAGE 0 5 8 3

## FOURTH PARCEL

Another piece or parcel of land being a portion of the above-referred to map and being more particularly bounded and described as follows, to wit:

Commencing at a point in a stone wall on the northwesterly side of Lawton Road which point marks the intersection of land now or formerly of Frank T. Smith and land now or formerly of Lillian U. Carpenter and the northwesterly line of Lawton Road; thence running northwesterly along said stone wall marking the boundary of land now or formerly of Frank T. Smith and Lillian U. Carpenter a distance of 511 feet more or less to a point in the southeasterly line of land now or formerly of the Hartford & Connecticut Western Railroad Company; thence northeasterly along the southeasterly boundary of said land of the Hartford & Connecticut Western Railroad Company a distance of 50 feet; thence southwesterly in a line parallel to the line along said stone wall a distance of 511 feet more or less to a point in the northwesterly line of Lawton Road; thence southwesterly along the northwesterly line of Lawton Road a distance of 50 feet to point or place of beginning.

Being the second parcel conveyed by Warranty Deed from Lillian U. Carpenter to the grantors dated May 16, 1968 and recorded in Volume 74, Page 322 of the Canton Land Records.

The Third and Fourth Parcels being conveyed together with any and all rights the grantors may have in and to the property shown on said map as belonging to the Hartford & Connecticut Western Railroad Company.

## FIFTH PARCEL

A certain piece or parcel of land situated on the northwesterly side of Lawton Road in the Town of Canton, County of Hartford and State of Connecticut, more particularly bounded and described as follows:

Beginning at a point 170 feet, more or less, northwesterly from an iron pin, which iron pin is located in the northwesterly side of Lawton Road and which pin marks the southerly corner of land now or formerly of Edgar B. Carpenter and Constance L. Carpenter and the easterly corner of land now or formerly of Lillian U. Carpenter; thence continuing northwesterly a distance of 348 feet, more or less, along and now or formerly of Edgar B. Carpenter and Constance L. Carpenter; thence in a southwesterly direction 268 feet, more or less, along a former right of way now or formerly of the Hartford & Connecticut Western Railroad Company; thence southeasterly a distance of 328 feet, more or less, along and now or formerly of Edgar B. Carpenter and Constance L. Carpenter; and thence northeasterly 250 feet, more or less, to point or place of beginning.

Bounded:

NORTHEASTERLY: by land now or formerly of Edgar B. Carpenter and Constance L. Carpenter, 348 feet, more or less;

10

VOL 3 8 4 PAGE 0 5 8 4

NORTHWESTERLY:          by right of way now or formerly of the Hartford and Connecticut
Western Railroad Company, 268 feet, more or less;

SOUTHWESTERLY: by land now or formerly of Edgar B. Carpenter and Constance L. Carpenter,
328 feet, more or less; and

SOUTHEASTERLY: by land now or formerly of Lillian U. Carpenter, 250 feet, more or less.

      Being the same premises conveyed by Warranty Deed from Lillian U. Carpenter to the
grantors dated May 3, 1974 and recorded in Volume 90, Page 389 of the Canton Land Records.

EXCEPTING FROM said Fifth Parcel those portions of the premises conveyed by the Grantors to
Lillian U. Carpenter by Warranty Deed dated November 14, 1975 and recorded in Volume 98,
Page 167 of the Canton Land Records and by Quit Claim Deed dated October 2, 1979 and
recorded in Volume 111, Page 692 of the Canton Land Records.

11

VOL 3 8 4 PAGE 0 5 8 5

## SCHEDULE B

Said premises are conveyed subject to the following:

1. Real estate taxes due the Town of Canton on the List of October 1, 2010 and thereafter, which the Grantees herein assume and agree to pay.

2. Building lines, zoning restrictions, building regulations and any and all provisions of any ordinance, municipal regulation or public or private law.

3. Any state of facts which an accurate survey or personal inspection of the premises would disclose.

12

VOL 3 8 M PAGE 0 5 0 6

SCHEDULE C

13

1912537v.1

VOL 3 8 4 PAGE 0 5 8 7

SCHEDULE C

<u>PROMISSORY NOTE</u>

$250,000.00                                                    Hartford, Connecticut
                                                              February 24, 2011

     FOR VALUE RECEIVED, the undersigned, GREYHOUND PARTNERS LLC, a Connecticut limited liability company with an address of 100 Grist Mill Road, Simsbury, Connecticut 06070 (the "Borrower"), promises to pay to the order of THE CARPENTER FAMILY TRUST (the "Lender"), at the Lender's address or at such other place as the holder hereof may from time to time designate in writing, the principal sum of Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00) (the "Loan"), with interest from the date hereof until March 1, 2021 at the fixed rate of six percent (6.00%) per annum until this Note is fully paid. The interest rate shall be computed on the basis of a three hundred sixty (360) day year for the actual number of days in each period for which interest is charged.

     The outstanding amount hereunder shall be due and payable as follows:

     (a)    A single interest only annual payment of Fifteen Thousand and 00/100 Dollars ($15,000.00) shall be due on the first day of March, 2011, and continuing once annually on the first day of each March thereafter through and including March 1, 2021; and

     (b)    If not sooner paid, the entire outstanding principal balance of this Note together with any other amounts outstanding hereunder shall be due and payable on March 1, 2021.

     Said sums shall be payable together with all lawful taxes and assessments levied thereon, or upon this Note, or upon the Lender with respect to the same, and together with the reasonable fees of the attorney of the Lender and all costs and expenses if this Note is placed in the hands of an attorney for collection or in any proceeding instituted to collect said sums, to foreclose, or to protect or sustain the lien of any security which may be given to secure the payment of this Note, or in any litigation or controversy arising from or connected with this Note and any security agreement securing the same, whether or not a suit is actually commenced in any court (collectively, the "Loan Indebtedness").

     The Borrower may prepay the Loan in whole or in part without penalty.

     At the option of the Lender, the entire principal balance and accrued interest thereon shall at once become due and payable without notice or demand upon the occurrence at any time of any of the following events (each referred to as an "Event of Default"):

     1.    The failure to make a payment due hereunder within fifteen (15) days after written notice from Lender to Borrower that the same is due and payable;

     2.    The occurrence of an Event of Default under the Mortgage or any other document now or hereafter evidencing, securing, guarantying or relating to the Loan; or

VOL 3 0 4 PAGE 0 5 8 8

3.      The transfer or attachment of any interest in the property secured by the Mortgage securing the Loan.

Upon the happening of any event of default specified above, the whole of said indebtedness, including principal and interest and all other sums which may become due hereunder, shall immediately become due and payable automatically, and without presentment, demand, protest, notice of protest, or other notice or notice of dishonor of any kind, all of which are hereby expressly waived by the Borrower.

Borrower, for itself and its heirs, executors, successors and assigns, hereby waives presentment, demand, notice of protest, notice of dishonor, protest and all other demands and notices in connection with the delivery, acceptance, performance, default, acceleration or enforcement of this Note.

If any term, clause or provision hereof shall be adjudged to be invalid, the validity of the remainder shall not be affected thereby and each such term, clause and provision shall be valid and enforceable to the fullest extent permitted by law.

The Note and all transactions hereunder and/or evidenced herein shall be governed by, construed and enforced in accordance with the laws of the State of Connecticut.

GREYHOUND PARTNERS LLC

By:    Greyhound Management, Inc.
       Its Managing Member

By: _____
    Name: Daniel E. Carpenter
    Duly Authorized Chairman
    of Its Managing member

This Promissory Note is secured
by a mortgage of certain real estate
located at 84 Lawton Road
Canton, Connecticut

RECEIVED FOR RECORD AT CANTON, CT.
ON _Oct-8-11_ AT _3:30pm_
ATTEST: LINDA SMITH, TOWN CLERK

1912539v.1

Doc ID:   001201290001 Type: REL TAX

BK **421**   PG **786**

## CERTIFICATE RELEASING AND DISCHARGING TAX LIENS

IN THE NAME OF **GREYHOUND PARTNERS LLC**          PIN # 3470084
LOCATED AT        **84 LAWTON ROAD**                IN VOLUME    384
BILL NUMBER       **2013-01-3470084**               IN PAGE      568

IN THE TOWN OF CANTON LAND RECORDS. THE AMOUNT SO PAID CONSISTS OF
**$3,526.45  TAX DUE TO TOWN OF CANTON   LIEN VOL:      419 LIEN PAGE:**     553
AND OF ALL INTEREST, FEES AND OTHER LEGAL ACCUMULATIONS THEREON.
DATED AT TOWN OF CANTON, TOWN OF CANTON, CONNECTICUT, ON THE 10 DAY OF
SEPTEMBER 2015.

TAX COLLECTOR

Received for Record at Canton, CT
On 09/10/2015 At 3:51:48 pm

VOL 3 8 4 PAGE 0 5 6 8

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

HALLORAN & SAGE LLP
ONE GOODWIN SQUARE
225 ASYLUM STREET
HARTFORD, CONNECTICUT 06103
ATTENTION: ROBERT B. COX, ESQ.

_____
SPACE ABOVE LINE RESERVED FOR OFFICIAL RECORDER'S USE

## STATUTORY WARRANTY DEED

THE CARPENTER FAMILY TRUST, a trust formed and existing under the laws of the State of Connecticut (hereinafter referred to as "Grantor") for the consideration of Two Hundred and Fifty Thousand Dollars ($250,000.00) paid, grant to GREYHOUND PARTNERS LLC, a Connecticut limited liability company with an office located in Simsbury, Connecticut, with WARRANTY COVENANTS (hereinafter referred to as "Grantee"), the following described property commonly known as 84 Lawton Road, Canton, Connecticut, and more particularly described on Schedule A attached hereto .

Said premises are subject to any and all provisions of any ordinances, municipal regulation or public or private law and to taxes due the Town of Canton on the Grand List of October 1, 2010 and thereafter, which taxes the Grantee herein assumes and agrees to pay as part consideration for this deed.

Signed this _24th_ day of February, 2011.

Witnessed by:                          THE CARPENTER FAMILY TRUST

                                       By: _Constance L. Carpenter_
                                           Name: CONSTANCE L. CARPENTER
                                           Its: TRUSTEE

VOL 3 8 4 PAGE 0 5 6 9

STATE OF CONNECTICUT }

COUNTY OF Hartford   } ss: *Canton*         *February 24,* 2011
                     }

    On this 24th day of *February*, 2011, before me, the undersigned officer, personally
appeared *Constance L. Carpenter, Trustee*         of THE CARPENTER FAMILY
TRUST, known to me (or satisfactorily proven) to be the person whose name is subscribed to the
within instrument and acknowledged that he executed the same as his free act and deed and the
free act and deed of said corporation.

                                 Commissioner of the Superior Court
                                   Notary Public

Grantees' Address:
100 Grist Mill Road
Simsbury, CT 06070

AMANDA ROSSI
Notary Public, State of Connecticut
My Commission Expires April 30, 2012

VOL 3 8 4 PAGE 0 5 7 0

## SCHEDULE A
## LEGAL DESCRIPTION

The following pieces or parcels of land, with all improvements and buildings thereon and all appurtenances thereto, located to the west of Lawton Road in the Town of Canton, County of Hartford and State of Connecticut.

FIRST PARCEL

A certain piece or parcel of land, with the buildings thereon, situated in the Town of Canton, County of Hartford and State of Connecticut, on the northwesterly side of Lawton Road, bounded and described as follows:

Beginning at an iron pipe in the northwesterly line of Lawton Road three hundred eighty-six (386) feet, more or less, northeasterly from the northeasterly corner of land now or formerly of Fred Lawton et al as measured in said northwesterly line of Lawton Road; thence running northwesterly in a line making an interior angle with the northwesterly line of Lawton Road of 94° 07' 35" along other land now or formerly of Lillian U. Carpenter, four hundred ninety-eight and fifty-five one-hundredths (498.55) feet to an iron pipe in the southeasterly line of land now or formerly of Donald S. Irwin, et al; thence running northeasterly in a line forming an interior angle of 73° 05' 07" with the last described line along said land now or formerly of Donald S. Irwin et al, two hundred fifteen and fifty-four one-hundredths (215.54) feet to an iron pipe; thence running southeasterly in a line forming an interior angle of 107° 18' 20" with the last described line along other land now or formerly of Lillian U. Carpenter, four hundred fifty and ninety-five one-hundredths (450.95) feet to an iron pipe in the northwesterly line of Lawton Road; thence running southwesterly along said northwesterly line of Lawton Road two hundred nine and eighty-three one-hundredths (209.83) feet to the point of beginning.

Being the same premises conveyed by Warrantee Deed from Lillian U. Carpenter to the Grantors dated June 23, 1961 and recorded in Volume 59, Page 307 of the Canton Land Records.

SECOND PARCEL

A certain piece or parcel of land, with the buildings thereon, situated in the Town of Canton, County of Hartford and State of Connecticut, on the northwesterly side of Lawton Road and bounded and described as follows, to wit:

NORTHEASTERLY:        by other land now or formerly of Edgar B. Carpenter and Constance L. Carpenter, four hundred ninety-eight and fifty-five one-hundredths (498.55) feet;

SOUTHEASTERLY: by Lawton Road, ninety-two (92) feet;

SOUTHWESTERLY:by the remaining land of Lillian U. Carpenter five hundred eighteen (518) feet, more or less; and

WESTERLY: by land now or formerly of Donald S. Irwin et al, being the former right of way of the Hartford and Connecticut Railroad Company, ninety-nine (99) feet:

The northeasterly and northwesterly corners of said premises are marked by iron pipes.

Being the same premises conveyed by Warrantee Deed from Lillian U. Carpenter to the Grantors dated December 11, 1963 and recorded in Volume 64, Page 320 of the Canton Land Records.

THIRD PARCEL

A certain piece or parcel of land with improvements thereon situated in the Town of Canton, being a portion of the premises shown on a map entitled "Property of Lillian U. Carpenter, Lawton Rd. Canton Conn. Scale 1" = 50' Oct. 1, 1963, Morton S. Fine & Associates, Certified Substantially Correct By Merwyn F. Straus" and being more particularly described as follows, to wit:

Beginning at a point in the center of Roaring Brook which point marks the intersection of the northeast corner of land herein conveyed and land now or formerly of Lillian U. Carpenter and land now or formerly of the State of Connecticut which point is also approximately 337.5 feet southwest of a State Forest boundary marker located at Bahre Corner Road (the marker being about 958 feet northwest of the intersection of Bahre Corner Road and Lawton Road); thence running in a southwesterly direction 601 feet more or less to a State Forest boundary marker; thence running northwesterly 338 feet more or less to a State Forest boundary marker; thence running southwesterly 384 feet more or less to a State Forest boundary marker; thence running northwesterly 663 feet to a point marking the northeasterly corner of land now or formerly of Frank T. Smith (these last four boundaries being along land now or formerly of the State of Connecticut); thence running southwesterly along land now or formerly of Frank T. Smith 675 feet more or less to an iron pipe in the northerly boundary line of land now or formerly of William P. Delaney; thence running southeasterly along land now or formerly of William P. Delaney and land now or formerly of Frank T. Smith, partly by each, in all 793 feet more or less to a point; thence running northeasterly along land now or formerly of Frank T. Smith 379 feet more or less to a point; thence in a curved line running northeasterly and easterly along land now or formerly of Hartford and Connecticut Western Railroad Co. and land now or formerly of Donald S. and Mildred Irwin, partly by each, in all 1140 feet more or less to a point in the center of Roaring Brook; thence running northerly along land now or formerly of Lillian U. Carpenter 584 feet more or less to point or place of beginning.

Being the first parcel conveyed by Warranty Deed from Lillian U. Carpenter to the grantors dated May 16, 1968 and recorded in Volume 74, Page 322 of the Canton Land Records.

FOURTH PARCEL

Another piece or parcel of land being a portion of the above-referred to map and being more particularly bounded and described as follows, to wit:

VOL 3 8 4 PAGE 0 5 7 2

Commencing at a point in a stone wall on the northwesterly side of Lawton Road which point marks the intersection of land now or formerly of Frank T. Smith and land now or formerly of Lillian U. Carpenter and the northwesterly line of Lawton Road; thence running northwesterly along said stone wall marking the boundary of land now or formerly of Frank T. Smith and Lillian U. Carpenter a distance of 511 feet more or less to a point in the southeasterly line of land now or formerly of the Hartford & Connecticut Western Railroad Company; thence northeasterly along the southeasterly boundary of said land of the Hartford & Connecticut Western Railroad Company a distance of 50 feet; thence southwesterly in a line parallel to the line along said stone wall a distance of 511 feet more or less to a point in the northwesterly line of Lawton Road; thence southwesterly along the northwesterly line of Lawton Road a distance of 50 feet to point or place of beginning.

Being the second parcel conveyed by Warranty Deed from Lillian U. Carpenter to the grantors dated May 16, 1968 and recorded in Volume 74, Page 322 of the Canton Land Records.

The Third and Fourth Parcels being conveyed together with any and all rights the grantors may have in and to the property shown on said map as belonging to the Hartford & Connecticut Western Railroad Company.

FIFTH PARCEL

A certain piece or parcel of land situated on the northwesterly side of Lawton Road in the Town of Canton, County of Hartford and State of Connecticut, more particularly bounded and described as follows:

Beginning at a point 170 feet, more or less, northwesterly from an iron pin, which iron pin is located in the northwesterly side of Lawton Road and which pin marks the southerly corner of land now or formerly of Edgar B. Carpenter and Constance L. Carpenter and the easterly corner of land now or formerly of Lillian U. Carpenter; thence continuing northwesterly a distance of 348 feet, more of less, along and now or formerly of Edgar B. Carpenter and Constance L. Carpenter; thence in a southwesterly direction 268 feet, more or less, along a former right of way now or formerly of the Hartford & Connecticut Western Railroad Company; thence southeasterly a distance of 328 feet, more or less, along and now or formerly of Edgar B. Carpenter and Constance L. Carpenter; and thence northeasterly 250 feet, more or less, to point or place of beginning.

Bounded:

NORTHEASTERLY: by land now or formerly of Edgar B. Carpenter and Constance L. Carpenter, 348 feet, more or less;

NORTHWESTERLY:          by right of way now or formerly of the Hartford and Connecticut Western Railroad Company, 268 feet, more or less;

SOUTHWESTERLY: by land now or formerly of Edgar B. Carpenter and Constance L. Carpenter, 328 feet, more or less; and

VOL 3 8 4 PAGE 0 5 7 3

SOUTHEASTERLY: by land now or formerly of Lillian U. Carpenter, 250 feet, more or less.

Being the same premises conveyed by Warranty Deed from Lillian U. Carpenter to the grantors dated May 3, 1974 and recorded in Volume 90, Page 389 of the Canton Land Records.

EXCEPTING FROM said Fifth Parcel those portions of the premises conveyed by the Grantors to Lillian U. Carpenter by Warranty Deed dated November 14, 1975 and recorded in Volume 98, Page 167 of the Canton Land Records and by Quit Claim Deed dated October 2, 1979 and recorded in Volume 111, Page 692 of the Canton Land Records.

State Conveyance $ 1350.00
Town Conveyance $ 625.00

Town Clerk of Canton

RECEIVED FOR RECORD AT CANTON, CT.
ON 2-28-11 AT 3:50pm

ATTEST: LINDA SMITH, TOWN CLERK