# EXHIBIT L

# BENISTAR 419 PLAN & TRUST

**Effective as of January 2, 2005**
**Amended and Restated**
**as of January 4, 2010**

# BENISTAR 419 PLAN & TRUST

## TABLE OF CONTENTS

ARTICLE I:       ESTABLISHMENT PROVISIONS

    Section 1.01   Duration
    Section 1.02   Establishment
    Section 1.03   Construction
    Section 1.04   Sponsor to be Fiduciary with Delegative Authority
    Section 1.05   Payment of Expenses

ARTICLE II:      DEFINITIONS

    Section 2.01   Administrator
    Section 2.02   Adoption Agreement
    Section 2.03   Anniversary Date
    Section 2.04   Beneficiary
    Section 2.05   Code
    Section 2.06   Compensation
    Section 2.07   Covered Employee
    Section 2.08   Death Benefit
    Section 2.09   Effective Date
    Section 2.10   Eligible Employee
    Section 2.11   Employee
    Section 2.12   Employer(s)
    Section 2.13   Gains and Losses
    Section 2.14   Insurance Costs
    Section 2.15   Insured
    Section 2.16   Insurer
    Section 2.17   Named Fiduciary
    Section 2.18   Named Trustee
    Section 2.19   Participant
    Section 2.20   Participation Date
    Section 2.21   Plan

i

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

Section 2.22   Plan Sponsor
Section 2.23   Plan Year
Section 2.24   Termination of Employment
Section 2.25   Trust or Trust Fund or Fund
Section 2.26   Trustee
Section 2.27   Valuation Date

ARTICLE III:       ELIGIBILITY FOR PARTICIPATION

Section 3          Eligibility

ARTICLE IV:        CONTRIBUTIONS TO AND EARNINGS OF THE PLAN AND TRUST

Section 4.01   Employer Contributions
Section 4.02   Earnings of the Trust
Section 4.03   Limitation on Employer Liability
Section 4.04   Investment of Employer Contributions
Section 4.05   Non-Reversionary Clause
Section 4.06   Experience Rating
Section 4.07   Limitation on Employer Liability
Section 4.08   Contribution Limitation
Section 4.09   Irrevocability of Contributions Made

ARTICLE V:         EMPLOYEE DEATH BENEFITS

Section 5.01   Employee Death Benefits for Covered Employees
Section 5.02   Insurer's Role in Plan
Section 5.03   Insurer's Relationship to Plan Sponsor
Section 5.04   Insurer's Receipt of Instructions
Section 5.05   Applications to Insurer
Section 5.06   Issuance of Policies
Section 5.07   Transfer of Policies

ARTICLE VI:        DISTRIBUTION OF BENEFITS

Section 6.01   Distribution upon Death
Section 6.02   Distribution upon Plan Termination

ii

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

ARTICLE VII:      MISCELLANEOUS PROVISIONS

    Section 7.01   Amendment or Termination
    Section 7.02   Employment Relationship Not Affected
    Section 7.03   Non-Liability of Employer
    Section 7.04   Non-Alienation
    Section 7.05   Expenses
    Section 7.06   Communication to Participants
    Section 7.07   Administrative Trustee
    Section 7.08   Employer's Right to Terminate
    Section 7.09   Sponsor's Right to Terminate
    Section 7.10   Automatic Termination
    Section 7.11   Discharge of Trustee upon Termination
    Section 7.12   Records of Regulatory Compliance

ARTICLE VIII:     TRUST FUND AND TRUSTEE

    Section 8.01   Establishment of Trust
    Section 8.02   Authority of Trustee
    Section 8.03   Powers of Trustee
    Section 8.04   Discretionary Powers

ARTICLE IX:      REMOVAL OF TRUSTEE

    Section 9.01   Removal of Trustee

ARTICLE X:       INSURANCE COMPANIES

    Section 10.01  Insurance Companies

ARTICLE XI:      WRITINGS

    Section 11.01  Writings

ARTICLE XII:     RELIANCE ON AGREEMENT

    Section 12.01  Reliance on Agreement

iii

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

OT0492

ARTICLE XIII:       SUCCESSORS

    Section 13.01  Successors

ARTICLE XIV:        APPLICABLE LAW

    Section 14.01  Applicable Law

iv

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

## BENISTAR 419 PLAN & TRUST

**THIS DECLARATION OF TRUST** is made by Hanover Benefit Plans, LLC is effective as of January 2, 2005, and is meant to be the continuation of the original BENISTAR 419 Plan & Trust as Amended and Restated on January 4, 2010.  The Plan is a fully insured Multiple Employer Welfare Benefit Plan created under the laws of the State of Connecticut and sponsored by Hanover Benefit Plans, LLC, a corporation organized under the laws of the State of Delaware (hereinafter referred to as the "Plan Sponsor"), and is for the benefit of a group of Employers that have signed Adoption Agreements to join the Plan to provide death benefit protection for certain Employees.

### WITNESSETH

WHEREAS, the BENISTAR 419 Plan & Trust (the "Plan") was created to qualify for the Ten-Or-More Employer exception to the limitations for funded welfare benefit plans as defined in Section 419A(f)(6) of the Internal Revenue Code ("Code") and the Regulations there under; and

WHEREAS, an employer applying for membership in this benefit plan (hereinafter referred to as the "Employer") desires to provide certain welfare benefits to its employees so as to encourage productivity and loyalty, and to provide them, as well as their families, with a measure of financial security; and

WHEREAS, the Employer wishes to join with other employers ("Employers") to provide employees with death benefits through a welfare benefit plan; and

WHEREAS, under the terms of the Plan, the Employers will contribute to a fund (the "Trust"), and the trustee ("Trustee") of the Trust will use the funds, as and when received, to create a trust fund to be held by a Trustee under the Plan pursuant to the management and control of the Plan Sponsor for the benefit of Covered Employees and Beneficiaries as provided in the Plan; and

WHEREAS, the Plan Sponsor is willing to manage and control the Trust fund pursuant to the terms of the Plan;

NOW THEREFORE, the Plan Sponsor hereby establishes a Plan for the exclusive benefit of Covered Employees and Beneficiaries under the following terms and conditions:

5

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06
OT0494

## ARTICLE I:  ESTABLISHMENT PROVISIONS

Section 1.01:  <u>Duration</u>.  The Effective Date of this Plan & Trust shall be January 1, 2003, and the termination date of the Trust shall end at the conclusion of the Plan Year selected by the Plan Sponsor.  The term of the Plan & Trust, during which the Employers intend to continue to make contributions thereto, shall be from year to year until the purposes of the Plan & Trust have been accomplished.

Section 1.02:  <u>Establishment</u>.  As provided in Section 4.05 below, no part of the corpus or income of the Trust shall, at any time, be used or diverted to purposes other than for the exclusive benefit of the Participants (excluding the Employer) and in a manner consistent with any restrictions contained in the Code.

Section 1.03:  <u>Construction</u>.  The Plan & Trust shall be construed in accordance with the laws of the State of Connecticut, where it is made.  In construing the terms of this Agreement, the masculine shall include the feminine and the singular the plural in all cases where such meanings would be appropriate.

Section 1.04:  <u>Sponsor to be Fiduciary with Delegative Authority</u>.  The Plan Sponsor shall be the "Named Fiduciary" for all welfare benefit plan purposes.

Section 1.05:  <u>Payment of Expenses</u>.  The Plan Sponsor shall authorize the payment of all expenses of administering the Plan from the Trust.  Such expenses shall include any expenses incident to the functioning of those to whom the Plan Sponsor has delegated fiduciary duties, including, but not limited to, the payment of professional fees of consultants and the cost of administering the Plan.

## ARTICLE II:  DEFINITIONS

Section 2.01:  "<u>Administrator</u>" shall mean BENISTAR Admin Services, Inc. or any subsequent Administrator appointed by the Plan Sponsor.

Section 2.02:  "<u>Adoption Agreement</u>" shall mean an agreement which the Employer executes to adopt the Plan and Trust.

Section 2.03:  "<u>Anniversary Date</u>" shall mean the first day of each Plan Year.

Section 2.04:  "<u>Beneficiary</u>" shall mean any person or legal entity designated by a Covered Employee to receive the Death Benefit.

Section 2.05:  "<u>Code</u>" shall mean the Internal Revenue Code of 1986, as amended.

6

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

Section 2.06:  "Compensation" shall mean the total amount of all remuneration, in cash or in kind, from all sources accrued for or paid to an Employee by an Employer for services rendered during the Employer's fiscal year.

Section 2.07:  "Covered Employee" shall mean any Eligible Employee who is a participant under the Plan pursuant to Article III. Once an individual becomes a Covered Employee he shall remain as such until the earlier of a) the date on which his benefits under the Plan are forfeited or b) the date on which his benefits under the Plan are paid in full.

Section 2.08:  "Death Benefit" shall mean the amount of death benefit, as selected by the Employer in the Adoption Agreement payable on the death of a Participant to the Participant's designated beneficiary.

Section 2.09:  "Effective Date," as to the Employer, shall mean the date so indicated in the Adoption Agreement when the Employer joined the Plan.

Section 2.10:  "Eligible Employee" shall mean any Employee who is entitled under the Adoption Agreement to participate in the Plan.

Section 2.11:  "Employee" shall mean any person employed as a common law employee of the Employer, or any person providing services to the Employer within the meaning of Code Section 419(g), whether or not such person is a shareholder of the Employer (in the case of an Employer that is a corporation), a self-employed individual or a partner (in the case of an Employer that is a partnership).

Section 2.12:  "Employer(s)" shall mean each entity which adopts this Plan by execution of the Adoption Agreement, or such other entity for whom services are provided within the meaning of Code Section 419(g), as indicated in the Adoption Agreement.

Section 2.13:  "Gains and Losses" "Gains" shall mean the proceeds received from an Insurer in excess of the Death Benefit to which a Participant is entitled, and forfeitures, which shall include but not be limited to the Death Benefits no longer payable as a result of a Participant's separation from the service of the Employer and benefits unclaimed by a Participant or Beneficiary within one year after the occurrence of the event entitling the Participant or Beneficiary to receive said benefit, shall be treated as gains. "Losses" shall occur where a claim is satisfied from the Trust Assets as a whole because there were insufficient proceeds received from the Insurer to cover the Death Benefit to which a Participant was entitled.

Section 2.14:  "Insurance Costs" shall mean all costs and charges assessed by the Insurer based solely upon the Insured's age, risk classification and face amount of coverage.

7

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

Section 2.15:   "Insured" shall mean a Participant on whom the Sponsor has acquired life insurance coverage on his or her life or any additional insured's life.

Section 2.16:   "Insurer" shall mean any legal reserve life insurance company approved by the Plan Sponsor.

Section 2.17:   "Named Fiduciary" shall mean the Plan Sponsor.

Section 2.18:   "Named Trustee" shall mean the Plan Sponsor as the administrative Trustee for all intents and purposes including the signing of all administrative documents, insurance applications, and other administrative forms on behalf of the Plan.

Section 2.19:   "Participant" shall mean the Covered Employee or any other person or entity entitled to benefits under the Plan.

Section 2.20:   "Participation Date" shall mean the later of the Effective Date or the date when a Covered Employee becomes a Participant in the Plan in accordance with the terms hereof.

Section 2.21:   "Plan" shall mean the BENISTAR 419 Plan & Trust.   The governing documents for the Plan shall include this Plan document and amendments thereto, the Adoption Agreement and any amendments thereto, and any updated Certificate of Coverage and any amendments to such documents, and such uniformly applicable rules, regulations and standards promulgated by the Plan Sponsor consistent and in accordance with the terms of the Plan.

Section 2.22:   "Plan Sponsor" shall mean Hanover Benefit Plans, LLC, or any successor or successors thereto appointed by the Plan Sponsor.

Section 2.23:   "Plan Year" shall mean the 12-month period ending on December 31st of each year.

Section 2.24:   "Termination of Employment" shall mean an Employee's termination from service with an Employer.

Section 2.25:   "Trust" or "Trust Fund" or "Fund" shall mean all sums of money and other property, together with all earnings, income and increments thereon, attributable to the Plan and held by the Trustee under the terms of the Plan.

Section 2.26:   "Trustee" shall mean any bank, trust company, custodian, or the Named Trustee or any successor, or successors thereto appointed by the Plan Sponsor to hold Plan Assets.

8

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

Section 2.27: "Valuation Date" shall mean the date on which the Trust Fund's liabilities and assets shall be determined. Each of the following is a Valuation Date:

(a)    the last day of the Plan Year; and

(b)    any additional dates, as mutually agreed upon by the Plan Sponsor and the Trustee.

## ARTICLE III: ELIGIBILITY FOR PARTICIPATION

Section 3:    Eligibility.  Any person who is or was an Eligible Employee of the Employer as specified in the Adoption Agreement may be eligible to receive employee death benefits under the Plan in the manner provided below.  Any dependent or spouse of an Eligible Employee may be covered as a Plan Participant under an insurance policy provided by this Plan, but will lose their benefits and right to participate in the Plan when the Participant ceases to be an Eligible Employee.

## ARTICLE IV: CONTRIBUTIONS TO AND EARNINGS OF THE PLAN AND TRUST

Section 4.01:  Employer Contributions.  For each fiscal year of the Employer with respect to which this Plan is continued, the Employer shall contribute to the Trust, in cash or other property, at any time during its taxable year, or later if permitted by law, an amount sufficient to meet the costs for benefits selected in the Adoption Agreement as determined by the Plan Sponsor and as billed by the Administrator.

Section 4.02:  Earnings of the Trust.  Earnings and expenses of the Trust, and gains and losses, whether realized or unrealized, shall be taken into account annually on an accrual basis, for the purposes of computing the year-end value of the Trust.

Section 4.03:  Limitation on Employer Liability.  The Employer shall not be responsible for the contributions required of other Employers unless otherwise required by law.

Section 4.04:  Investment of Employer Contributions.  The Trust, through its Trustee as directed by the Plan Sponsor, may invest its funds in insurance contracts on the lives of Covered Employees who are insurable for amounts as determined by the Plan Sponsor.  The Insured, however, shall have no rights in the policy or the proceeds of the policy.  All such insurance contracts shall be owned by the Plan, and controlled solely by the Plan Sponsor as the Named Trustee.  The Plan shall be designated as the beneficiary of the policies with respect to any proceeds payable on account of death or otherwise.  In the event that a Covered Employee is not insurable or is unable to comply with the requirements of an insurer for the issuance of insurance contracts on his life, the premiums contributed may be used to purchase an annuity or any other investment payable to the Trust to provide for such Covered Employee's Death Benefit.  This is

9

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

the amount of benefit that would be available as a death benefit, and is not a retirement benefit and would not be available to the Covered Employee based on retirement, but only because of the death of the Covered Employee during the period of eligibility for benefits under the Plan.

Section 4.05:  Non-Reversionary Clause.  No part of the Employer's contributions to the Plan and Trust or any amounts paid directly to an Insurer of an annuity or insurance contract on behalf of the Trust shall be recoverable by the Employer or used or diverted to purposes other than for the exclusive benefit of the Covered Employees in this Plan or in a succeeding employee welfare benefit plan covering the Participants.

Section 4.06:  No Experience Rating.  There shall be no experience rating done with respect to any individual Employer participating in the Plan. Employers participating in the Plan shall contribute an amount determined by the Plan Sponsor for each Covered Employee, which shall be based upon the insurance rates contained in Treasury Regulation Section 1.79-3(d)(2) and utilizing the methodology described under IRC Section 7702 (hereinafter referred to as the "Uniform Rate Schedule"). The Plan Sponsor shall develop and apply the Uniform Rate Schedule to determine the benefit cost for all Employers, which shall be determined without regard to the Plan's cost to acquire individual policies of reinsurance on the lives of Covered Employees.

Section 4.07:  Limitation on Employer Liability.  Notwithstanding anything to the contrary, Death Benefits with respect to a Participant shall be payable solely from the assets of the Trust. No Employer shall have any obligation to contribute on behalf of any other Employer that participates in the Plan.  The Trustee, Administrator, and the Plan Sponsor shall have no obligation (i) to make any contribution required of an Employer, or (ii) to pay any benefits to a Participant not funded by the assets in the Trust.

Section 4.08:  Contribution Limitation.  Notwithstanding anything to the contrary, the contribution made by any one participating Employer for a given Plan Year shall not exceed (i) ten percent (10%) of the total contributions made by all participating Employers for said Plan Year, or (ii) such lesser amounts as may be established by the Code and applicable Regulations and Rulings promulgated there under.

Section 4.09:  Irrevocability of Contributions Made.  All contributions made to the Trust by the Employer are irrevocable.  The Employer shall have no right, title, or interest in or to the contributions made by it to the Trust. No part of the Trust property, nor any income attributable thereto, shall ever revert to the Employer or be used for, or be diverted to, purposes other than for the exclusive benefit of the Covered Employees, or for the payment of taxes and expenses of the administration of the Plan and Trust.

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

OT0499

## ARTICLE V:  EMPLOYEE DEATH BENEFITS

Section 5.01:  <u>Employee Death Benefits for Covered Employees</u>.  In general, each Covered Employee shall be provided with death benefits while an Eligible Employee in an amount as set forth in the Adoption Agreement. The Employer can adjust the amount of death benefits by amending the Adoption Agreement.  Once a Covered Employee ceases being an Eligible Employee, his or her benefits will cease immediately.  If an Employer is more than thirty (30) days behind in any premium payment or contribution, a Participant's participation in the Plan will terminate and cease automatically, and the Participant will no longer be eligible for any benefits under the Plan. If a Participant commits suicide, misrepresents information on any insurance form, is deemed to be uninsurable, the Plan will only be liable for the lesser of premiums paid for the policy on the Participant's life or the cash value of such policy.

Section 5.02:  <u>Insurer's Role in Plan</u>.  An Insurer shall not be deemed a party to this Plan nor shall it be responsible for the validity of the Plan or any other agreement relating thereto.

Section 5.03:  <u>Insurer's Relationship to Plan Sponsor</u>.  Any statement of the Plan Sponsor and/or Administrator may be received by the Insurer as conclusive evidence of the matters relating to this Plan, and the Insurer shall be fully protected in taking or permitting any action on the face thereof and shall incur no liability or responsibility for so doing.  The Insurer shall be under no duty to look into the terms of the Plan, nor question any action of the Plan Sponsor and/or the Administrator.  The Insurer is not responsible for investigating any action of the Plan Sponsor and/or Administrator to ascertain if it is authorized by the terms of this Plan.

Section 5.04:  <u>Insurer's Receipt of Instructions</u>.  The Insurer shall be fully discharged from any and all liability for any amount paid to the Trustee or the Administrator or paid in accordance with the direction of the Plan Sponsor or the Administrator, and any charge made or action taken by the Insurer upon written direction of the Plan Sponsor or the Administrator shall fully discharge the Insurer from all liability with respect thereto.  The Insurer may accept and rely upon the signature of the Plan Sponsor or the Administrator as proper authorization for the action requested by the Plan Sponsor, Named Trustee or the Administrator.  The Insurer shall not be obligated to check the distribution of or further application of any monies paid by it to the Trustee, Plan Sponsor or the Administrator or paid to a Covered Employee or Beneficiary in accordance with the written direction of the Plan Sponsor or the Administrator, nor shall it be required to take any action under the Plan concerning any other agreements that may be contrary to its rules and practices.

Section 5.05:  <u>Applications to Insurer</u>.  The Plan Sponsor shall have sole responsibility for management of all insurance policies held by the Plan, including without limitation, responsibility for the prudent selection and monitoring of Insurers, agencies and policy terms. The Plan Sponsor shall advise the Administrator of its designation of the Insurer and the agency to be used to acquire from said Insurer the policies of insurance needed to reinsure benefits

11

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

provided under the Plan.  The Administrator shall provide completed applications for insurance to the Plan Sponsor for submission to the designated Insurer.

Section 5.06:  Issuance of Policies.  Each policy of insurance issued by an Insurer on the life of a covered Employee shall be issued (i) with the Plan Sponsor as Named Trustee and Owner and (ii) with the Plan & Trust as the Beneficiary.

Section 5.07:  Transfer of Policies.  In the event a Covered Employee's right to receive a death benefit under the Plan is forfeited, either as a result of termination of employment, termination of the Plan, withdrawal of the Employer or otherwise, the Plan Sponsor, at its discretion, may permit the Covered Employee to continue the death benefits by purchasing the insurance policy owned by the Plan on the Covered Employee's Life.  The price to be paid by the Participant shall be an amount equal to the value of the policy as determined by the Plan Sponsor on the date of termination equal to the accumulated cash value of the policy or the PERC value as determined by the formula under Revenue Procedure 2005-25, whichever number is greater.  Where the Plan Sponsor declines to release the policy or the Covered Employee elects not to convert to an individual policy or purchase the policy on his or her life, the policy may be surrendered by the Plan Sponsor.  In the event that the policy on the Covered Employee's life is purchased by the Covered Employee or is transferred to another welfare benefit plan with the Sponsor's permission, the Sponsor reserves the right to charge a transfer fee for the transfer of such policy as well as an assessment to protect the transfer of the policy from a claim of constructive receipt by the Internal Revenue Service.  Proceeds received from conversion fees, transfer fees or assessments or from the surrender of the policy shall be added to the Trust Fund.

## ARTICLE VI: DISTRIBUTION OF BENEFITS

Section 6.01:  Distribution upon Death.  The Named Trustee shall, upon advice of the Plan Sponsor, and in a timely manner, pay out to the Participant's designated Beneficiary the amount of the Death Benefit listed in the Adoption Agreement, upon notification by the Employer of the death of the Participant and receipt of the death certificate and other materials required by the Plan Sponsor.

Section 6.02:  Distribution upon Plan Termination. In the event of the termination of the Plan, payment of such benefits may be made to either the Covered Employee or Participant or to a trust for the benefit of the Covered Employee or Participant at the direction and discretion of the Plan Sponsor.

Upon an Employer's determination to discontinue participation in the Plan, the Plan Sponsor shall determine whether there are sufficient assets remaining in the Trust to meet the Plan's benefit obligations to the remaining Participants.  If those liabilities have been currently met, then the Plan Sponsor will direct the Trustee to transfer the policies on the lives of the

12

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

Covered Employees of the terminating Employer to another welfare benefit fund or trust for their benefit as approved by the Plan Sponsor in its sole discretion. If the Plan Sponsor and/or Administrator determines that there are insufficient assets to meet the Plan's liabilities, then there shall be no distribution of the policies on the lives of the Covered Employees of the withdrawing Employer. Under no circumstances, will any assets of the Trust be distributed to the Employer or revert back to the Employer.

Additionally, the Covered Employee or Participant upon termination of employment may continue the benefits provided hereunder, if transferable under applicable law. The fee charged for this conversion right shall be the value as determined by the Plan Sponsor. The Administrator shall take all necessary steps to facilitate the conversion by the Covered Employee or Participant during the thirty (30) day period following termination of employment. During such thirty (30) day period, all Beneficiary designations shall remain in full force and effect. In the event the Insured does not elect to continue such coverage, the Administrator may surrender such policy to the Insurer. The proceeds from the sale or surrender of the policy shall be added to the Trust Fund. In the event such Insured does not elect to convert the insurance policy and dies prior to the surrendering of the policy by the Named Trustee, but after the expiration of the thirty-day option period, the death proceeds thereof shall be added to the Trust Fund.

## ARTICLE VII: MISCELLANEOUS PROVISIONS

Section 7.01: <u>Amendment or Termination</u>. The Plan Sponsor reserves the right to modify, alter, amend or terminate this Plan or the Trust, at any time, by an instrument in writing to be duly executed, and that any such instrument shall not revert to the Employer any corpus or income of the Trust. No modification, amendment or termination of the Plan shall be construed as a termination of the Plan & Trust unless the instrument expressly so provides.

Section 7.02: <u>Employment Relationship Not Affected</u>. The establishment and maintenance of this Plan and Trust shall not be construed as a contract between the Employer and Employee, so as to give any Employee the right to be retained by the Employer, or to interfere with the rights of the Employer to discharge any Employee at any time.

Section 7.03: <u>Non-Liability of Employer</u>. All benefits payable under the Plan shall be provided solely from the Trust, and the Plan Sponsor and Administrator assume no liability for any insufficiency of the Plan and Trust assets except for their willful misconduct or gross negligence.

Section 7.04: <u>Non-Alienation</u>. The interest of any Participant in the Plan shall not be subject to assignment, transfer, attachment, execution, garnishment, sequestration, or any other seizure under any legal or equitable process, whether on account of the Participant's act or by operation of law. In the event that any Participant or beneficiary shall become bankrupt or shall attempt to anticipate, alienate, sell, transfer, encumber or charge any of his benefits or rights

13

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved. Rev. 1/1/06

under the Plan, then such benefits or rights shall cease and terminate and in that event, the Named Trustee shall hold or apply the same to or for the benefit of such Participant or beneficiary, his spouse, children, parents, brothers and sisters, or other blood relatives, or any of them as the Plan Sponsor in its sole discretion shall determine. Nothing contained herein, however, shall be construed as a limitation on the right of the Plan Sponsor to direct the Trustee to assign, sell, hypothecate, borrow against, or otherwise transfer any assets of the Trust, so long as it is consistent with the purposes of the Plan.

Section 7.05:  <u>Expenses</u>.   Reasonable expenses incurred in the establishment or administration of the Plan, and reasonable compensation of attorneys, accountants, actuaries, or of the Plan Sponsor, Administrator, or Trustee, shall be paid by the Trust.

Section 7.06:  <u>Communication to Participants</u>.  A copy of this instrument shall be made available for inspection at the office of the Plan Sponsor to any Participant upon his request.  In addition, pertinent provisions of this Plan shall be communicated to all eligible Covered Employees and Participants, in writing or by an appropriate posting of such provisions at the principal office of the Employer.

Section 7.07:  <u>Administrative Trustee</u>.  The Plan Sponsor reserves the right, at any time, to discharge any Trustee and to appoint a substitute or successor individual or corporate Trustee. The Plan Sponsor will at all times be allowed to sign any document or insurance form as the true and rightful Named Trustee of the Plan for administrative purposes.

Section 7.08:  <u>Employer's Right to Terminate</u>.  Each Employer hereby reserves the right to terminate its participation in the Plan at any time.  An Employer's termination of participation in the Plan shall be evidenced by a letter from the Employer authorizing such termination, which shall be filed with the Plan Sponsor at least sixty (60) days prior to the effective date thereof or such lesser time as may be agreed to by the Plan Sponsor.  Termination of an Employer's participation in the Plan shall be effective upon the date as determined by the Plan Sponsor. Such termination shall not vest in the Employer any right, title or interest in or to the funds held hereunder, nor shall termination by one Employer effect the participation in the Plan by any other Employer.  Policies on the lives of Plan Participants can be transferred to another welfare benefit plan providing similar benefits and coverage to the Covered Employees or Participants.

Section 7.09:  <u>Sponsor's Right to Terminate</u>.  The Plan Sponsor hereby reserves the right to terminate or amend the Plan if for any reason it should fail to satisfy the requirements of Section 419A(f)(6) of the Code, or for any other reason it may determine in its sole discretion. The Sponsor shall notify the Trustee and each Participating Employer of its intent to terminate and the effective date thereof, which shall not be less than sixty (60) days after the date of the notice.   Benefits and policies on the lives of covered Employees and Participants may be transferred to another welfare benefit plan approved by the Plan Sponsor and the Employer, or sold to the covered Employee at a price to be determined by the Plan Sponsor.  Any funds or

14

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

surplus remaining in the Trust shall revert to the Plan Sponsor or be transferred to another welfare benefit plan as directed and determined by the Plan Sponsor. Under no circumstance will funds revert to any Employer. Additionally, the Plan Sponsor specifically reserves the right to terminate immediately the participation in the Plan of any Employer or Participant that violates any Plan provision or commits any other act not in good faith compliance with the Plan Documents, including, but not limited to, initiating or instigating litigation or threatened litigation against the Plan.

Section 7.10:   <u>Automatic Termination</u>.  This Plan shall automatically terminate if as of the end of any Plan Year subsequent to the first said full Plan Year, there shall be fewer than ten (10) Employers participating in the Plan. Any assets left in the Trust after the payment of all benefits shall revert to the Plan Sponsor, or to another trust as directed and determined by the Plan Sponsor.

Section 7.11:   <u>Discharge of Trustee upon Termination</u>.  In liquidating all or any portion of the Trust Fund upon a termination of this Plan, the Trustee shall be forever discharged from further obligation with respect thereto.

Section 7.12:   <u>Records of Regulatory Compliance</u>.  The Plan Sponsor shall require the Administrator to maintain records sufficient for the Commissioner of the Internal Revenue Service or any Participating Employer to readily verify that the Plan satisfies the requirements of IRC Section 419A(f)(6) as well as the administrative requirements of Section 419A(i) and the Regulations under Section 1.419A(f)(6)-1(a)(2).  Furthermore, the Plan Sponsor and the Plan Administrator will make these records showing that the Plan is in compliance with the requirements under Section 419A(f)(6) available to each Participating Employer (or a person acting on the Participating Employer's behalf) for inspection and/or copying upon written request to the Plan Administrator.

## ARTICLE VIII: TRUST FUND AND TRUSTEE

Section 8.01:   <u>Establishment of Trust</u>.  The Plan Sponsor as the Named Trustee hereby establishes a Trust consisting of such sums of money and other property, acceptable to the Trustee, as shall from time to time be paid or delivered to the Trustee and such earnings, profits and dividends thereon as may occur from time to time.  All such money and other property delivered to the Trustee and all investments and reinvestments made therewith or proceeds thereof and all earnings and profits thereon, less the payment which shall have been made by the Trustee as authorized herein, are referred to herein as the "Fund". The Fund shall be held by the Trustee and dealt with solely in accordance with the express provisions of the Plan and the instructions of the Plan Sponsor.

15

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

Section 8.02:   <u>Authority of Trustee</u>.  The Trustee is directed and authorized: (i) to hold, invest and reinvest the Fund as provided herein; (ii) to pay monies from the Fund to or on order of the Plan Sponsor and/or Administrator provided for in the Plan, for the purpose of distributing to Participants or their beneficiaries the benefits due them; (iii) to pay the expenses of the Plan and Trust as provided hereinafter; and (iv) to pay premiums on insurance contracts to any Insurer designated by the Sponsor on behalf of the Plan to the extent funds are available upon order of the Sponsor, and to hold such contracts in trust.

Section 8.03:   <u>Powers of Trustee</u>.  Neither by way of limitation nor in derogation, but in amplification of any powers granted herein, the Trustee is further authorized but only as directed by the Plan Sponsor:

(a)     To sell, exchange, convey, transfer or dispose of, and also to grant options with respect to any property, whether real or personal, at any time held by it, and to make any sale, private or public; and no person dealing with the Trustee shall be bound to see the application of the purchase money or to inquire into the validity, expediency or propriety of any such sale or other dispositions;

(b)     To hire a Trustee or other qualified investment manager;

(c)     To borrow or raise money for the purposes of the Plan from others in such amounts and upon such terms and conditions as, in the Plan Sponsor's sole discretion, it may deem advisable; and for any sums so borrowed to issue its promissory note as Trustee and to secure the repayment thereof by mortgaging or pledging all or any part of the Fund; and no person lending money to the Trustee shall be bound to see to the application of money loaned or to inquire into the validity, expediency or propriety of any such borrowing;

(d)     To compromise or settle a debt or obligation due from third persons to it or to third persons from it, as Trustee hereunder, and to reduce the rate of interest on, to extend or otherwise modify, or to foreclose upon default or to otherwise enforce, any such obligation;

(e)     To make, execute, acknowledge and deliver any and all deeds, leases, mortgages, assignments, documents of transfer and conveyances and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted;

(f)     To enforce any right, obligation or claim, in its absolute discretion, and in general to protect, in any way, the interest of the Fund, either before or after default with respect to any such right, obligation or claim; and in case it shall consider such action to be in the best interests of the Fund, in its absolute discretion, to abstain

16

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

from the enforcement of any right, obligation or claim and to abandon any property, whether real or personal, which at any time may be held by it;

(g)    To exercise any right or options appurtenant to any securities or other property held by it for the conversion thereof into other securities or property, or to exercise any rights or options held by it, to subscribe for or purchase additional securities or other property, or to exercise any rights or options held by it, to subscribe for any purchase additional securities or other property, and to make any and all necessary payments with respect to any such conversion or exercise;

(h)    To retain, as directed by the Plan Sponsor, any insurance policies, securities or property at any time received by the Trustee as a part of the Trust Fund;

(i)    To join in, dissent from, or oppose the reorganization, recapitalization, consolidation, sale or merger of corporations or properties with respect to which it may be interested, upon such terms and conditions as it may deem prudent; to pay any expenses, assessments or subscriptions in connection therewith and to accept any securities or property (whether or not the Trustee would be authorized to then invest in such securities or property), which may be issued upon any such reorganization recapitalization, consolidation, sale or merger, and thereafter to hold the same;

(j)    To vote in person or by proxy and to give general or special proxies or powers of attorney, with or without power of substitution, with respect to any securities or other property held by it;

(k)    To employ suitable agents and counsel from time to time, with the consent of the Plan Sponsor, and to pay them reasonable expenses and compensations;

(l)    To do all acts which it may deem necessary or proper and to exercise any and all powers of the Named Trustee under such terms and conditions as it may deem to be in the best interests of the Fund.

Section 8.04: <u>Discretionary Powers</u>.  The Trustee shall have no discretionary powers. The Trustee shall at all times follow the directions of the Plan Sponsor as to how to invest the Fund. The Trustee shall not be limited to an amount or type of any investment in relation to the amount or type of investments constituting the Fund as a whole.   All such actions and investments shall be at the direction of the Plan Sponsor.

17

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

## ARTICLE IX: REMOVAL OF TRUSTEE

Section 9:     Removal of Trustee.  The Trustee (or any one of them) may be removed by the Plan Sponsor at any time upon sixty (60) days' written notice to the Trustee unless such notice is waived by the Trustee.  Upon such removal or resignation of the Trustee, the Plan Sponsor shall, within sixty (60) days (or at once, if necessary to avoid the absence of a qualified Trustee), appoint and designate a successor Trustee.  The successor Trustee shall qualify as such by delivering a written acceptance of the Trust to the Plan Sponsor.  The Trustee shall assign, transfer and pay over to the successor Trustee, after approval by the Plan Sponsor of the Trustee's accounts, all cash, securities, and other property then constituting the Fund, less any amounts constituting charges and expenses payable from the Fund, whether in connection with the settlement of its account or otherwise.  The Trustee may resign upon the same terms.

## ARTICLE X: INSURANCE COMPANIES

Section 10:     Insurance Companies.  No insurance company which may issue any policy, or contract, on the life of a Participant in this Plan shall be considered a party to the Plan or this Agreement for any purpose whatsoever; or be responsible for its validity, or be required to take or permit any action contrary to the provisions of said policies or contracts.  No such insurance company shall be required to determine that any action by the Plan Sponsor, Administrator, or Trustees is properly authorized by this Agreement or otherwise, or be responsible for the failure of any party to do or perform any act or duty imposed upon the party by the terms of this Agreement.

## ARTICLE XI: WRITINGS

Section 11:     Writings.  Any action of the Plan Sponsor pursuant to any of the provisions of this Plan shall be evidenced by an instrument or order in writing and the Trustee shall conclusively rely without independent investigation or verification in acting upon such instrument or order.  All requests, directions, requisitions for monies, certifications and instructions by the Plan Sponsor to the Trustee shall be in writing.  The Trustee shall be fully protected when acting without independent verification in accordance with such requests, requisitions, certifications and instructions.  The Sponsor need not specify the application to be made of any money.  The Trustee shall be fully protected when making payments of money upon requisition of the Sponsor without independent verification, and it shall be charged with no responsibility whatsoever respecting the application of such money or for the administration of the Plan.

18

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

OT0507

## ARTICLE XII: RELIANCE ON AGREEMENT

Section 12:   <u>Reliance on Agreement</u>.   Notwithstanding any reference herein to the Plan, it is hereby understood and agreed that the Trustee's duties, obligations and rights shall be limited to the terms and provisions of the Plan; and further, that no Participant or his beneficiary or any other person interested under the provisions of the Plan shall have any claim against the Trustee by virtue of any of the provisions of the Plan or by virtue of any payments made by the Trustee to any Participant or his beneficiary in accordance with the instructions of the Plan Sponsor.

## ARTICLE XIII: SUCCESSORS

Section 13:   <u>Successors</u>.   Any corporation into which the Trustee, if a corporate trustee, may merge or with which it may be consolidated, or any corporation to which all or substantially all of the trust business of the Trustee may be transferred, shall be the successor of the Trustee hereunder, without the exception or filing of any instrument or the performance of any further act.

## ARTICLE XIV: APPLICABLE LAW

Section 14:   <u>Applicable Law</u>.   This Agreement shall be construed, regulated and administered under the laws of the State of Connecticut.   Any and all disputes involving Participant or Employer claims under this Agreement or the Plan will be settled by arbitration by a single arbitrator.   All costs of the prevailing party as well as the costs of arbitration will be paid for by the non-prevailing party.   Any arbitration between the Plan and any Participant or Employer shall be limited to the Participant's or the Employer's individual claims, and no claims arising out of this Agreement shall be asserted or arbitrated on a class-wide basis.   Any litigation brought against the Plan, or threatened against the Plan either on an individual or a class-wide basis will result in the immediate termination from the Plan of the individual Participant(s) or Employer(s) bringing such action or litigation or threatening such action or litigation.

19

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

IN WITNESS WHEREOF, the Plan Sponsor has caused this instrument, through the execution of multiple originals, to be amended and restated as of the 4th day of January 2010, and effective as of the 2nd day of January 2005.

ATTEST:

PLAN SPONSOR
Hanover Benefit Plans, LLC

Signature

Name

Title

20

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06
OT0509

# BENISTAR 419 PLAN & TRUST

**Effective as of January 2, 2005**
**Amended and Restated**
**as of January 4, 2010**

# BENISTAR 419 PLAN & TRUST

## TABLE OF CONTENTS

ARTICLE I:        ESTABLISHMENT PROVISIONS

     Section 1.01   Duration
     Section 1.02   Establishment
     Section 1.03   Construction
     Section 1.04   Sponsor to be Fiduciary with Delegative Authority
     Section 1.05   Payment of Expenses

ARTICLE II:       DEFINITIONS

     Section 2.01   Administrator
     Section 2.02   Adoption Agreement
     Section 2.03   Anniversary Date
     Section 2.04   Beneficiary
     Section 2.05   Code
     Section 2.06   Compensation
     Section 2.07   Covered Employee
     Section 2.08   Death Benefit
     Section 2.09   Effective Date
     Section 2.10   Eligible Employee
     Section 2.11   Employee
     Section 2.12   Employer(s)
     Section 2.13   Gains and Losses
     Section 2.14   Insurance Costs
     Section 2.15   Insured
     Section 2.16   Insurer
     Section 2.17   Named Fiduciary
     Section 2.18   Named Trustee
     Section 2.19   Participant
     Section 2.20   Participation Date
     Section 2.21   Plan

i

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

Section 2.22   Plan Sponsor
Section 2.23   Plan Year
Section 2.24   Termination of Employment
Section 2.25   Trust or Trust Fund or Fund
Section 2.26   Trustee
Section 2.27   Valuation Date

ARTICLE III:        ELIGIBILITY FOR PARTICIPATION

Section 3        Eligibility

ARTICLE IV:        CONTRIBUTIONS TO AND EARNINGS OF THE PLAN AND TRUST

Section 4.01   Employer Contributions
Section 4.02   Earnings of the Trust
Section 4.03   Limitation on Employer Liability
Section 4.04   Investment of Employer Contributions
Section 4.05   Non-Reversionary Clause
Section 4.06   Experience Rating
Section 4.07   Limitation on Employer Liability
Section 4.08   Contribution Limitation
Section 4.09   Irrevocability of Contributions Made

ARTICLE V:        EMPLOYEE DEATH BENEFITS

Section 5.01   Employee Death Benefits for Covered Employees
Section 5.02   Insurer's Role in Plan
Section 5.03   Insurer's Relationship to Plan Sponsor
Section 5.04   Insurer's Receipt of Instructions
Section 5.05   Applications to Insurer
Section 5.06   Issuance of Policies
Section 5.07   Transfer of Policies

ARTICLE VI:        DISTRIBUTION OF BENEFITS

Section 6.01   Distribution upon Death
Section 6.02   Distribution upon Plan Termination

ii

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

ARTICLE VII:        MISCELLANEOUS PROVISIONS

    Section 7.01   Amendment or Termination
    Section 7.02   Employment Relationship Not Affected
    Section 7.03   Non-Liability of Employer
    Section 7.04   Non-Alienation
    Section 7.05   Expenses
    Section 7.06   Communication to Participants
    Section 7.07   Administrative Trustee
    Section 7.08   Employer's Right to Terminate
    Section 7.09   Sponsor's Right to Terminate
    Section 7.10   Automatic Termination
    Section 7.11   Discharge of Trustee upon Termination
    Section 7.12   Records of Regulatory Compliance

ARTICLE VIII:       TRUST FUND AND TRUSTEE

    Section 8.01   Establishment of Trust
    Section 8.02   Authority of Trustee
    Section 8.03   Powers of Trustee
    Section 8.04   Discretionary Powers

ARTICLE IX:        REMOVAL OF TRUSTEE

    Section 9.01   Removal of Trustee

ARTICLE X:         INSURANCE COMPANIES

    Section 10.01  Insurance Companies

ARTICLE XI:        WRITINGS

    Section 11.01  Writings

ARTICLE XII:       RELIANCE ON AGREEMENT

    Section 12.01  Reliance on Agreement

iii

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved. Rev. 1/1/06

OT0513

ARTICLE XIII:     SUCCESSORS

    Section 13.01  Successors

ARTICLE XIV:     APPLICABLE LAW

    Section 14.01  Applicable Law

iv

**Copyright © 2005 BENISTAR 419 Plan Services, Inc.**
**All Rights Reserved.  Rev. 1/1/06**

OT0514

## BENISTAR 419 PLAN & TRUST

**THIS DECLARATION OF TRUST** is made by Hanover Benefit Plans, LLC is effective as of January 2, 2005, and is meant to be the continuation of the original BENISTAR 419 Plan & Trust as Amended and Restated on January 4, 2010.  The Plan is a fully insured Multiple Employer Welfare Benefit Plan created under the laws of the State of Connecticut and sponsored by Hanover Benefit Plans, LLC, a corporation organized under the laws of the State of Delaware (hereinafter referred to as the "Plan Sponsor"), and is for the benefit of a group of Employers that have signed Adoption Agreements to join the Plan to provide death benefit protection for certain Employees.

### WITNESSETH

WHEREAS, the BENISTAR 419 Plan & Trust (the "Plan") was created to qualify for the Ten-Or-More Employer exception to the limitations for funded welfare benefit plans as defined in Section 419A(f)(6) of the Internal Revenue Code ("Code") and the Regulations there under; and

WHEREAS, an employer applying for membership in this benefit plan (hereinafter referred to as the "Employer") desires to provide certain welfare benefits to its employees so as to encourage productivity and loyalty, and to provide them, as well as their families, with a measure of financial security; and

WHEREAS, the Employer wishes to join with other employers ("Employers") to provide employees with death benefits through a welfare benefit plan; and

WHEREAS, under the terms of the Plan, the Employers will contribute to a fund (the "Trust"), and the trustee ("Trustee") of the Trust will use the funds, as and when received, to create a trust fund to be held by a Trustee under the Plan pursuant to the management and control of the Plan Sponsor for the benefit of Covered Employees and Beneficiaries as provided in the Plan; and

WHEREAS, the Plan Sponsor is willing to manage and control the Trust fund pursuant to the terms of the Plan;

NOW THEREFORE, the Plan Sponsor hereby establishes a Plan for the exclusive benefit of Covered Employees and Beneficiaries under the following terms and conditions:

5

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06
OT0515

## ARTICLE I:  ESTABLISHMENT PROVISIONS

Section 1.01:  <u>Duration</u>.  The Effective Date of this Plan & Trust shall be January 1, 2003, and the termination date of the Trust shall end at the conclusion of the Plan Year selected by the Plan Sponsor.  The term of the Plan & Trust, during which the Employers intend to continue to make contributions thereto, shall be from year to year until the purposes of the Plan & Trust have been accomplished.

Section 1.02:  <u>Establishment</u>.  As provided in Section 4.05 below, no part of the corpus or income of the Trust shall, at any time, be used or diverted to purposes other than for the exclusive benefit of the Participants (excluding the Employer) and in a manner consistent with any restrictions contained in the Code.

Section 1.03:  <u>Construction</u>.  The Plan & Trust shall be construed in accordance with the laws of the State of Connecticut, where it is made.  In construing the terms of this Agreement, the masculine shall include the feminine and the singular the plural in all cases where such meanings would be appropriate.

Section 1.04:  <u>Sponsor to be Fiduciary with Delegative Authority</u>.  The Plan Sponsor shall be the "Named Fiduciary" for all welfare benefit plan purposes.

Section 1.05:  <u>Payment of Expenses</u>.  The Plan Sponsor shall authorize the payment of all expenses of administering the Plan from the Trust.  Such expenses shall include any expenses incident to the functioning of those to whom the Plan Sponsor has delegated fiduciary duties, including, but not limited to, the payment of professional fees of consultants and the cost of administering the Plan.

## ARTICLE II:  DEFINITIONS

Section 2.01:  "<u>Administrator</u>" shall mean BENISTAR Admin Services, Inc. or any subsequent Administrator appointed by the Plan Sponsor.

Section 2.02:  "<u>Adoption Agreement</u>" shall mean an agreement which the Employer executes to adopt the Plan and Trust.

Section 2.03:  "<u>Anniversary Date</u>" shall mean the first day of each Plan Year.

Section 2.04:  "<u>Beneficiary</u>" shall mean any person or legal entity designated by a Covered Employee to receive the Death Benefit.

Section 2.05:  "<u>Code</u>" shall mean the Internal Revenue Code of 1986, as amended.

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved. Rev. 1/1/06

OT0516

Section 2.06: "<u>Compensation</u>" shall mean the total amount of all remuneration, in cash or in kind, from all sources accrued for or paid to an Employee by an Employer for services rendered during the Employer's fiscal year.

Section 2.07: "<u>Covered Employee</u>" shall mean any Eligible Employee who is a participant under the Plan pursuant to Article III. Once an individual becomes a Covered Employee he shall remain as such until the earlier of a) the date on which his benefits under the Plan are forfeited or b) the date on which his benefits under the Plan are paid in full.

Section 2.08: "<u>Death Benefit</u>" shall mean the amount of death benefit, as selected by the Employer in the Adoption Agreement payable on the death of a Participant to the Participant's designated beneficiary.

Section 2.09: "<u>Effective Date</u>," as to the Employer, shall mean the date so indicated in the Adoption Agreement when the Employer joined the Plan.

Section 2.10: "<u>Eligible Employee</u>" shall mean any Employee who is entitled under the Adoption Agreement to participate in the Plan.

Section 2.11: "<u>Employee</u>" shall mean any person employed as a common law employee of the Employer, or any person providing services to the Employer within the meaning of Code Section 419(g), whether or not such person is a shareholder of the Employer (in the case of an Employer that is a corporation), a self-employed individual or a partner (in the case of an Employer that is a partnership).

Section 2.12: "<u>Employer(s)</u>" shall mean each entity which adopts this Plan by execution of the Adoption Agreement, or such other entity for whom services are provided within the meaning of Code Section 419(g), as indicated in the Adoption Agreement.

Section 2.13: "<u>Gains and Losses</u>" "Gains" shall mean the proceeds received from an Insurer in excess of the Death Benefit to which a Participant is entitled, and forfeitures, which shall include but not be limited to the Death Benefits no longer payable as a result of a Participant's separation from the service of the Employer and benefits unclaimed by a Participant or Beneficiary within one year after the occurrence of the event entitling the Participant or Beneficiary to receive said benefit, shall be treated as gains. "Losses" shall occur where a claim is satisfied from the Trust Assets as a whole because there were insufficient proceeds received from the Insurer to cover the Death Benefit to which a Participant was entitled.

Section 2.14: "<u>Insurance Costs</u>" shall mean all costs and charges assessed by the Insurer based solely upon the Insured's age, risk classification and face amount of coverage.

7

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

Section 2.15:  "Insured" shall mean a Participant on whom the Sponsor has acquired life insurance coverage on his or her life or any additional insured's life.

Section 2.16:  "Insurer" shall mean any legal reserve life insurance company approved by the Plan Sponsor.

Section 2.17:  "Named Fiduciary" shall mean the Plan Sponsor.

Section 2.18:  "Named Trustee" shall mean the Plan Sponsor as the administrative Trustee for all intents and purposes including the signing of all administrative documents, insurance applications, and other administrative forms on behalf of the Plan.

Section 2.19:  "Participant" shall mean the Covered Employee or any other person or entity entitled to benefits under the Plan.

Section 2.20:  "Participation Date" shall mean the later of the Effective Date or the date when a Covered Employee becomes a Participant in the Plan in accordance with the terms hereof.

Section 2.21:  "Plan" shall mean the BENISTAR 419 Plan & Trust.  The governing documents for the Plan shall include this Plan document and amendments thereto, the Adoption Agreement and any amendments thereto, and any updated Certificate of Coverage and any amendments to such documents, and such uniformly applicable rules, regulations and standards promulgated by the Plan Sponsor consistent and in accordance with the terms of the Plan.

Section 2.22:  "Plan Sponsor" shall mean Hanover Benefit Plans, LLC, or any successor or successors thereto appointed by the Plan Sponsor.

Section 2.23:  "Plan Year" shall mean the 12-month period ending on December 31st of each year.

Section 2.24:  "Termination of Employment" shall mean an Employee's termination from service with an Employer.

Section 2.25:  "Trust" or "Trust Fund" or "Fund" shall mean all sums of money and other property, together with all earnings, income and increments thereon, attributable to the Plan and held by the Trustee under the terms of the Plan.

Section 2.26:  "Trustee" shall mean any bank, trust company, custodian, or the Named Trustee or any successor, or successors thereto appointed by the Plan Sponsor to hold Plan Assets.

8

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved. Rev. 1/1/06

Section 2.27:  "Valuation Date" shall mean the date on which the Trust Fund's liabilities and assets shall be determined. Each of the following is a Valuation Date:

    (a)    the last day of the Plan Year; and

    (b)    any additional dates, as mutually agreed upon by the Plan Sponsor and the Trustee.

## ARTICLE III:  ELIGIBILITY FOR PARTICIPATION

Section 3:    Eligibility.  Any person who is or was an Eligible Employee of the Employer as specified in the Adoption Agreement may be eligible to receive employee death benefits under the Plan in the manner provided below.  Any dependent or spouse of an Eligible Employee may be covered as a Plan Participant under an insurance policy provided by this Plan, but will lose their benefits and right to participate in the Plan when the Participant ceases to be an Eligible Employee.

## ARTICLE IV:  CONTRIBUTIONS TO AND EARNINGS OF THE PLAN AND TRUST

Section 4.01:  Employer Contributions.  For each fiscal year of the Employer with respect to which this Plan is continued, the Employer shall contribute to the Trust, in cash or other property, at any time during its taxable year, or later if permitted by law, an amount sufficient to meet the costs for benefits selected in the Adoption Agreement as determined by the Plan Sponsor and as billed by the Administrator.

Section 4.02:  Earnings of the Trust.  Earnings and expenses of the Trust, and gains and losses, whether realized or unrealized, shall be taken into account annually on an accrual basis, for the purposes of computing the year-end value of the Trust.

Section 4.03:  Limitation on Employer Liability.  The Employer shall not be responsible for the contributions required of other Employers unless otherwise required by law.

Section 4.04:  Investment of Employer Contributions.  The Trust, through its Trustee as directed by the Plan Sponsor, may invest its funds in insurance contracts on the lives of Covered Employees who are insurable for amounts as determined by the Plan Sponsor.  The Insured, however, shall have no rights in the policy or the proceeds of the policy.  All such insurance contracts shall be owned by the Plan, and controlled solely by the Plan Sponsor as the Named Trustee.  The Plan shall be designated as the beneficiary of the policies with respect to any proceeds payable on account of death or otherwise.  In the event that a Covered Employee is not insurable or is unable to comply with the requirements of an insurer for the issuance of insurance contracts on his life, the premiums contributed may be used to purchase an annuity or any other investment payable to the Trust to provide for such Covered Employee's Death Benefit.  This is

9

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved. Rev. 1/1/06

the amount of benefit that would be available as a death benefit, and is not a retirement benefit and would not be available to the Covered Employee based on retirement, but only because of the death of the Covered Employee during the period of eligibility for benefits under the Plan.

Section 4.05: <u>Non-Reversionary Clause</u>.  No part of the Employer's contributions to the Plan and Trust or any amounts paid directly to an Insurer of an annuity or insurance contract on behalf of the Trust shall be recoverable by the Employer or used or diverted to purposes other than for the exclusive benefit of the Covered Employees in this Plan or in a succeeding employee welfare benefit plan covering the Participants.

Section 4.06: <u>No Experience Rating</u>.  There shall be no experience rating done with respect to any individual Employer participating in the Plan. Employers participating in the Plan shall contribute an amount determined by the Plan Sponsor for each Covered Employee, which shall be based upon the insurance rates contained in Treasury Regulation Section 1.79-3(d)(2) and utilizing the methodology described under IRC Section 7702 (hereinafter referred to as the "Uniform Rate Schedule"). The Plan Sponsor shall develop and apply the Uniform Rate Schedule to determine the benefit cost for all Employers, which shall be determined without regard to the Plan's cost to acquire individual policies of reinsurance on the lives of Covered Employees.

Section 4.07: <u>Limitation on Employer Liability</u>.   Notwithstanding anything to the contrary, Death Benefits with respect to a Participant shall be payable solely from the assets of the Trust. No Employer shall have any obligation to contribute on behalf of any other Employer that participates in the Plan.  The Trustee, Administrator, and the Plan Sponsor shall have no obligation (i) to make any contribution required of an Employer, or (ii) to pay any benefits to a Participant not funded by the assets in the Trust.

Section 4.08: <u>Contribution Limitation</u>.  Notwithstanding anything to the contrary, the contribution made by any one participating Employer for a given Plan Year shall not exceed (i) ten percent (10%) of the total contributions made by all participating Employers for said Plan Year, or (ii) such lesser amounts as may be established by the Code and applicable Regulations and Rulings promulgated there under.

Section 4.09: <u>Irrevocability of Contributions Made</u>.  All contributions made to the Trust by the Employer are irrevocable.  The Employer shall have no right, title, or interest in or to the contributions made by it to the Trust.  No part of the Trust property, nor any income attributable thereto, shall ever revert to the Employer or be used for, or be diverted to, purposes other than for the exclusive benefit of the Covered Employees, or for the payment of taxes and expenses of the administration of the Plan and Trust.

10

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved. Rev. 1/1/06

## ARTICLE V:  EMPLOYEE DEATH BENEFITS

Section 5.01:  <u>Employee Death Benefits for Covered Employees</u>.  In general, each Covered Employee shall be provided with death benefits while an Eligible Employee in an amount as set forth in the Adoption Agreement. The Employer can adjust the amount of death benefits by amending the Adoption Agreement.  Once a Covered Employee ceases being an Eligible Employee, his or her benefits will cease immediately.  If an Employer is more than thirty (30) days behind in any premium payment or contribution, a Participant's participation in the Plan will terminate and cease automatically, and the Participant will no longer be eligible for any benefits under the Plan. If a Participant commits suicide, misrepresents information on any insurance form, is deemed to be uninsurable, the Plan will only be liable for the lesser of premiums paid for the policy on the Participant's life or the cash value of such policy.

Section 5.02:  <u>Insurer's Role in Plan</u>.  An Insurer shall not be deemed a party to this Plan nor shall it be responsible for the validity of the Plan or any other agreement relating thereto.

Section 5.03:  <u>Insurer's Relationship to Plan Sponsor</u>.  Any statement of the Plan Sponsor and/or Administrator may be received by the Insurer as conclusive evidence of the matters relating to this Plan, and the Insurer shall be fully protected in taking or permitting any action on the face thereof and shall incur no liability or responsibility for so doing.  The Insurer shall be under no duty to look into the terms of the Plan, nor question any action of the Plan Sponsor and/or the Administrator.  The Insurer is not responsible for investigating any action of the Plan Sponsor and/or Administrator to ascertain if it is authorized by the terms of this Plan.

Section 5.04:  <u>Insurer's Receipt of Instructions</u>.  The Insurer shall be fully discharged from any and all liability for any amount paid to the Trustee or the Administrator or paid in accordance with the direction of the Plan Sponsor or the Administrator, and any charge made or action taken by the Insurer upon written direction of the Plan Sponsor or the Administrator shall fully discharge the Insurer from all liability with respect thereto.  The Insurer may accept and rely upon the signature of the Plan Sponsor or the Administrator as proper authorization for the action requested by the Plan Sponsor, Named Trustee or the Administrator.  The Insurer shall not be obligated to check the distribution of or further application of any monies paid by it to the Trustee, Plan Sponsor or the Administrator or paid to a Covered Employee or Beneficiary in accordance with the written direction of the Plan Sponsor or the Administrator, nor shall it be required to take any action under the Plan concerning any other agreements that may be contrary to its rules and practices.

Section 5.05:  <u>Applications to Insurer</u>.  The Plan Sponsor shall have sole responsibility for management of all insurance policies held by the Plan, including without limitation, responsibility for the prudent selection and monitoring of Insurers, agencies and policy terms. The Plan Sponsor shall advise the Administrator of its designation of the Insurer and the agency to be used to acquire from said Insurer the policies of insurance needed to reinsure benefits

11

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

provided under the Plan.  The Administrator shall provide completed applications for insurance to the Plan Sponsor for submission to the designated Insurer.

Section 5.06:  <u>Issuance of Policies</u>.  Each policy of insurance issued by an Insurer on the life of a covered Employee shall be issued (i) with the Plan Sponsor as Named Trustee and Owner and (ii) with the Plan & Trust as the Beneficiary.

Section 5.07:  <u>Transfer of Policies.</u>  In the event a Covered Employee's right to receive a death benefit under the Plan is forfeited, either as a result of termination of employment, termination of the Plan, withdrawal of the Employer or otherwise, the Plan Sponsor, at its discretion, may permit the Covered Employee to continue the death benefits by purchasing the insurance policy owned by the Plan on the Covered Employee's Life.  The price to be paid by the Participant shall be an amount equal to the value of the policy as determined by the Plan Sponsor on the date of termination equal to the accumulated cash value of the policy or the PERC value as determined by the formula under Revenue Procedure 2005-25, whichever number is greater.  Where the Plan Sponsor declines to release the policy or the Covered Employee elects not to convert to an individual policy or purchase the policy on his or her life, the policy may be surrendered by the Plan Sponsor.  In the event that the policy on the Covered Employee's life is purchased by the Covered Employee or is transferred to another welfare benefit plan with the Sponsor's permission, the Sponsor reserves the right to charge a transfer fee for the transfer of such policy as well as an assessment to protect the transfer of the policy from a claim of constructive receipt by the Internal Revenue Service. Proceeds received from conversion fees, transfer fees or assessments or from the surrender of the policy shall be added to the Trust Fund.

## ARTICLE VI:  DISTRIBUTION OF BENEFITS

Section 6.01:  <u>Distribution upon Death</u>.  The Named Trustee shall, upon advice of the Plan Sponsor, and in a timely manner, pay out to the Participant's designated Beneficiary the amount of the Death Benefit listed in the Adoption Agreement, upon notification by the Employer of the death of the Participant and receipt of the death certificate and other materials required by the Plan Sponsor.

Section 6.02:  <u>Distribution upon Plan Termination</u>. In the event of the termination of the Plan, payment of such benefits may be made to either the Covered Employee or Participant or to a trust for the benefit of the Covered Employee or Participant at the direction and discretion of the Plan Sponsor.

Upon an Employer's determination to discontinue participation in the Plan, the Plan Sponsor shall determine whether there are sufficient assets remaining in the Trust to meet the Plan's benefit obligations to the remaining Participants.  If those liabilities have been currently met, then the Plan Sponsor will direct the Trustee to transfer the policies on the lives of the

12

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved. Rev. 1/1/06

Covered Employees of the terminating Employer to another welfare benefit fund or trust for their benefit as approved by the Plan Sponsor in its sole discretion. If the Plan Sponsor and/or Administrator determines that there are insufficient assets to meet the Plan's liabilities, then there shall be no distribution of the policies on the lives of the Covered Employees of the withdrawing Employer. Under no circumstances, will any assets of the Trust be distributed to the Employer or revert back to the Employer.

Additionally, the Covered Employee or Participant upon termination of employment may continue the benefits provided hereunder, if transferable under applicable law. The fee charged for this conversion right shall be the value as determined by the Plan Sponsor. The Administrator shall take all necessary steps to facilitate the conversion by the Covered Employee or Participant during the thirty (30) day period following termination of employment. During such thirty (30) day period, all Beneficiary designations shall remain in full force and effect. In the event the Insured does not elect to continue such coverage, the Administrator may surrender such policy to the Insurer. The proceeds from the sale or surrender of the policy shall be added to the Trust Fund. In the event such Insured does not elect to convert the insurance policy and dies prior to the surrendering of the policy by the Named Trustee, but after the expiration of the thirty-day option period, the death proceeds thereof shall be added to the Trust Fund.

## ARTICLE VII: MISCELLANEOUS PROVISIONS

**Section 7.01:**  <u>Amendment or Termination</u>.  The Plan Sponsor reserves the right to modify, alter, amend or terminate this Plan or the Trust, at any time, by an instrument in writing to be duly executed, and that any such instrument shall not revert to the Employer any corpus or income of the Trust. No modification, amendment or termination of the Plan shall be construed as a termination of the Plan & Trust unless the instrument expressly so provides.

**Section 7.02:**  <u>Employment Relationship Not Affected</u>.  The establishment and maintenance of this Plan and Trust shall not be construed as a contract between the Employer and Employee, so as to give any Employee the right to be retained by the Employer, or to interfere with the rights of the Employer to discharge any Employee at any time.

**Section 7.03:**  <u>Non-Liability of Employer</u>.  All benefits payable under the Plan shall be provided solely from the Trust, and the Plan Sponsor and Administrator assume no liability for any insufficiency of the Plan and Trust assets except for their willful misconduct or gross negligence.

**Section 7.04:**  <u>Non-Alienation</u>.  The interest of any Participant in the Plan shall not be subject to assignment, transfer, attachment, execution, garnishment, sequestration, or any other seizure under any legal or equitable process, whether on account of the Participant's act or by operation of law. In the event that any Participant or beneficiary shall become bankrupt or shall attempt to anticipate, alienate, sell, transfer, encumber or charge any of his benefits or rights

13

Copyright © 2005 BENISTAR 419 Plan Services, Inc.<br/>All Rights Reserved. Rev. 1/1/06

under the Plan, then such benefits or rights shall cease and terminate and in that event, the Named Trustee shall hold or apply the same to or for the benefit of such Participant or beneficiary, his spouse, children, parents, brothers and sisters, or other blood relatives, or any of them as the Plan Sponsor in its sole discretion shall determine. Nothing contained herein, however, shall be construed as a limitation on the right of the Plan Sponsor to direct the Trustee to assign, sell, hypothecate, borrow against, or otherwise transfer any assets of the Trust, so long as it is consistent with the purposes of the Plan.

Section 7.05: <u>Expenses</u>.   Reasonable expenses incurred in the establishment or administration of the Plan, and reasonable compensation of attorneys, accountants, actuaries, or of the Plan Sponsor, Administrator, or Trustee, shall be paid by the Trust.

Section 7.06: <u>Communication to Participants</u>.  A copy of this instrument shall be made available for inspection at the office of the Plan Sponsor to any Participant upon his request.  In addition, pertinent provisions of this Plan shall be communicated to all eligible Covered Employees and Participants, in writing or by an appropriate posting of such provisions at the principal office of the Employer.

Section 7.07: <u>Administrative Trustee</u>.  The Plan Sponsor reserves the right, at any time, to discharge any Trustee and to appoint a substitute or successor individual or corporate Trustee. The Plan Sponsor will at all times be allowed to sign any document or insurance form as the true and rightful Named Trustee of the Plan for administrative purposes.

Section 7.08: <u>Employer's Right to Terminate</u>.  Each Employer hereby reserves the right to terminate its participation in the Plan at any time.  An Employer's termination of participation in the Plan shall be evidenced by a letter from the Employer authorizing such termination, which shall be filed with the Plan Sponsor at least sixty (60) days prior to the effective date thereof or such lesser time as may be agreed to by the Plan Sponsor.  Termination of an Employer's participation in the Plan shall be effective upon the date as determined by the Plan Sponsor. Such termination shall not vest in the Employer any right, title or interest in or to the funds held hereunder, nor shall termination by one Employer effect the participation in the Plan by any other Employer.  Policies on the lives of Plan Participants can be transferred to another welfare benefit plan providing similar benefits and coverage to the Covered Employees or Participants.

Section 7.09: <u>Sponsor's Right to Terminate</u>.  The Plan Sponsor hereby reserves the right to terminate or amend the Plan if for any reason it should fail to satisfy the requirements of Section 419A(f)(6) of the Code, or for any other reason it may determine in its sole discretion. The Sponsor shall notify the Trustee and each Participating Employer of its intent to terminate and the effective date thereof, which shall not be less than sixty (60) days after the date of the notice.  Benefits and policies on the lives of covered Employees and Participants may be transferred to another welfare benefit plan approved by the Plan Sponsor and the Employer, or sold to the covered Employee at a price to be determined by the Plan Sponsor.  Any funds or

14

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

surplus remaining in the Trust shall revert to the Plan Sponsor or be transferred to another welfare benefit plan as directed and determined by the Plan Sponsor. Under no circumstance will funds revert to any Employer. Additionally, the Plan Sponsor specifically reserves the right to terminate immediately the participation in the Plan of any Employer or Participant that violates any Plan provision or commits any other act not in good faith compliance with the Plan Documents, including, but not limited to, initiating or instigating litigation or threatened litigation against the Plan.

Section 7.10:  Automatic Termination.  This Plan shall automatically terminate if as of the end of any Plan Year subsequent to the first said full Plan Year, there shall be fewer than ten (10) Employers participating in the Plan.  Any assets left in the Trust after the payment of all benefits shall revert to the Plan Sponsor, or to another trust as directed and determined by the Plan Sponsor.

Section 7.11:  Discharge of Trustee upon Termination.  In liquidating all or any portion of the Trust Fund upon a termination of this Plan, the Trustee shall be forever discharged from further obligation with respect thereto.

Section 7.12: Records of Regulatory Compliance.  The Plan Sponsor shall require the Administrator to maintain records sufficient for the Commissioner of the Internal Revenue Service or any Participating Employer to readily verify that the Plan satisfies the requirements of IRC Section 419A(f)(6) as well as the administrative requirements of Section 419A(i) and the Regulations under Section 1.419A(f)(6)-1(a)(2).  Furthermore, the Plan Sponsor and the Plan Administrator will make these records showing that the Plan is in compliance with the requirements under Section 419A(f)(6) available to each Participating Employer (or a person acting on the Participating Employer's behalf) for inspection and/or copying upon written request to the Plan Administrator.

## ARTICLE VIII: TRUST FUND AND TRUSTEE

Section 8.01:  Establishment of Trust.  The Plan Sponsor as the Named Trustee hereby establishes a Trust consisting of such sums of money and other property, acceptable to the Trustee, as shall from time to time be paid or delivered to the Trustee and such earnings, profits and dividends thereon as may occur from time to time.  All such money and other property delivered to the Trustee and all investments and reinvestments made therewith or proceeds thereof and all earnings and profits thereon, less the payment which shall have been made by the Trustee as authorized herein, are referred to herein as the "Fund".  The Fund shall be held by the Trustee and dealt with solely in accordance with the express provisions of the Plan and the instructions of the Plan Sponsor.

15

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

Section 8.02:   <u>Authority of Trustee</u>.  The Trustee is directed and authorized: (i) to hold, invest and reinvest the Fund as provided herein; (ii) to pay monies from the Fund to or on order of the Plan Sponsor and/or Administrator provided for in the Plan, for the purpose of distributing to Participants or their beneficiaries the benefits due them; (iii) to pay the expenses of the Plan and Trust as provided hereinafter; and (iv) to pay premiums on insurance contracts to any Insurer designated by the Sponsor on behalf of the Plan to the extent funds are available upon order of the Sponsor, and to hold such contracts in trust.

Section 8.03:   <u>Powers of Trustee</u>.  Neither by way of limitation nor in derogation, but in amplification of any powers granted herein, the Trustee is further authorized but only as directed by the Plan Sponsor:

(a)     To sell, exchange, convey, transfer or dispose of, and also to grant options with respect to any property, whether real or personal, at any time held by it, and to make any sale, private or public; and no person dealing with the Trustee shall be bound to see the application of the purchase money or to inquire into the validity, expediency or propriety of any such sale or other dispositions;

(b)     To hire a Trustee or other qualified investment manager;

(c)     To borrow or raise money for the purposes of the Plan from others in such amounts and upon such terms and conditions as, in the Plan Sponsor's sole discretion, it may deem advisable; and for any sums so borrowed to issue its promissory note as Trustee and to secure the repayment thereof by mortgaging or pledging all or any part of the Fund; and no person lending money to the Trustee shall be bound to see to the application of money loaned or to inquire into the validity, expediency or propriety of any such borrowing;

(d)     To compromise or settle a debt or obligation due from third persons to it or to third persons from it, as Trustee hereunder, and to reduce the rate of interest on, to extend or otherwise modify, or to foreclose upon default or to otherwise enforce, any such obligation;

(e)     To make, execute, acknowledge and deliver any and all deeds, leases, mortgages, assignments, documents of transfer and conveyances and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted;

(f)     To enforce any right, obligation or claim, in its absolute discretion, and in general to protect, in any way, the interest of the Fund, either before or after default with respect to any such right, obligation or claim; and in case it shall consider such action to be in the best interests of the Fund, in its absolute discretion, to abstain

16

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

from the enforcement of any right, obligation or claim and to abandon any property, whether real or personal, which at any time may be held by it;

(g)     To exercise any right or options appurtenant to any securities or other property held by it for the conversion thereof into other securities or property, or to exercise any rights or options held by it, to subscribe for or purchase additional securities or other property, or to exercise any rights or options held by it, to subscribe for any purchase additional securities or other property, and to make any and all necessary payments with respect to any such conversion or exercise;

(h)     To retain, as directed by the Plan Sponsor, any insurance policies, securities or property at any time received by the Trustee as a part of the Trust Fund;

(i)     To join in, dissent from, or oppose the reorganization, recapitalization, consolidation, sale or merger of corporations or properties with respect to which it may be interested, upon such terms and conditions as it may deem prudent; to pay any expenses, assessments or subscriptions in connection therewith and to accept any securities or property (whether or not the Trustee would be authorized to then invest in such securities or property), which may be issued upon any such reorganization recapitalization, consolidation, sale or merger, and thereafter to hold the same;

(j)     To vote in person or by proxy and to give general or special proxies or powers of attorney, with or without power of substitution, with respect to any securities or other property held by it;

(k)     To employ suitable agents and counsel from time to time, with the consent of the Plan Sponsor, and to pay them reasonable expenses and compensations;

(l)     To do all acts which it may deem necessary or proper and to exercise any and all powers of the Named Trustee under such terms and conditions as it may deem to be in the best interests of the Fund.

Section 8.04:  Discretionary Powers.  The Trustee shall have no discretionary powers. The Trustee shall at all times follow the directions of the Plan Sponsor as to how to invest the Fund.  The Trustee shall not be limited to an amount or type of any investment in relation to the amount or type of investments constituting the Fund as a whole.  All such actions and investments shall be at the direction of the Plan Sponsor.

17

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

## ARTICLE IX: REMOVAL OF TRUSTEE

Section 9:   <u>Removal of Trustee</u>.  The Trustee (or any one of them) may be removed by the Plan Sponsor at any time upon sixty (60) days' written notice to the Trustee unless such notice is waived by the Trustee.  Upon such removal or resignation of the Trustee, the Plan Sponsor shall, within sixty (60) days (or at once, if necessary to avoid the absence of a qualified Trustee), appoint and designate a successor Trustee.  The successor Trustee shall qualify as such by delivering a written acceptance of the Trust to the Plan Sponsor.  The Trustee shall assign, transfer and pay over to the successor Trustee, after approval by the Plan Sponsor of the Trustee's accounts, all cash, securities, and other property then constituting the Fund, less any amounts constituting charges and expenses payable from the Fund, whether in connection with the settlement of its account or otherwise.  The Trustee may resign upon the same terms.

## ARTICLE X: INSURANCE COMPANIES

Section 10:   <u>Insurance Companies</u>.  No insurance company which may issue any policy, or contract, on the life of a Participant in this Plan shall be considered a party to the Plan or this Agreement for any purpose whatsoever; or be responsible for its validity, or be required to take or permit any action contrary to the provisions of said policies or contracts.  No such insurance company shall be required to determine that any action by the Plan Sponsor, Administrator, or Trustees is properly authorized by this Agreement or otherwise, or be responsible for the failure of any party to do or perform any act or duty imposed upon the party by the terms of this Agreement.

## ARTICLE XI: WRITINGS

Section 11:   <u>Writings</u>.  Any action of the Plan Sponsor pursuant to any of the provisions of this Plan shall be evidenced by an instrument or order in writing and the Trustee shall conclusively rely without independent investigation or verification in acting upon such instrument or order.  All requests, directions, requisitions for monies, certifications and instructions by the Plan Sponsor to the Trustee shall be in writing.  The Trustee shall be fully protected when acting without independent verification in accordance with such requests, requisitions, certifications and instructions.  The Sponsor need not specify the application to be made of any money.  The Trustee shall be fully protected when making payments of money upon requisition of the Sponsor without independent verification, and it shall be charged with no responsibility whatsoever respecting the application of such money or for the administration of the Plan.

18

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

## ARTICLE XII: RELIANCE ON AGREEMENT

Section 12:    Reliance on Agreement.   Notwithstanding any reference herein to the Plan, it is hereby understood and agreed that the Trustee's duties, obligations and rights shall be limited to the terms and provisions of the Plan; and further, that no Participant or his beneficiary or any other person interested under the provisions of the Plan shall have any claim against the Trustee by virtue of any of the provisions of the Plan or by virtue of any payments made by the Trustee to any Participant or his beneficiary in accordance with the instructions of the Plan Sponsor.

## ARTICLE XIII: SUCCESSORS

Section 13:    Successors.  Any corporation into which the Trustee, if a corporate trustee, may merge or with which it may be consolidated, or any corporation to which all or substantially all of the trust business of the Trustee may be transferred, shall be the successor of the Trustee hereunder, without the exception or filing of any instrument or the performance of any further act.

## ARTICLE XIV: APPLICABLE LAW

Section 14:    Applicable Law.   This Agreement shall be construed, regulated and administered under the laws of the State of Connecticut.   Any and all disputes involving Participant or Employer claims under this Agreement or the Plan will be settled by arbitration by a single arbitrator.  All costs of the prevailing party as well as the costs of arbitration will be paid for by the non-prevailing party.   Any arbitration between the Plan and any Participant or Employer shall be limited to the Participant's or the Employer's individual claims, and no claims arising out of this Agreement shall be asserted or arbitrated on a class-wide basis.  Any litigation brought against the Plan, or threatened against the Plan either on an individual or a class-wide basis will result in the immediate termination from the Plan of the individual Participant(s) or Employer(s) bringing such action or litigation or threatening such action or litigation.

19

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06

IN WITNESS WHEREOF, the Plan Sponsor has caused this instrument, through the execution of multiple originals, to be amended and restated as of the 4th day of January 2010, and effective as of the 2nd day of January 2005.

ATTEST:

PLAN SPONSOR
Hanover Benefit Plans, LLC

_____
Signature

_____
Name

_____
Title

20

Copyright © 2005 BENISTAR 419 Plan Services, Inc.
All Rights Reserved.  Rev. 1/1/06
OT0530