UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X
UNIVERSITAS EDUCATION, LLC,

        Judgment Creditor,    :

    -against-    :    Case Nos. 11 CV 1590-LTS-HBP and
        11-08726-LTS
NOVA GROUP, INC., as trustee, sponsor and    :
fiduciary of THE CHARTER OAK TRUST
WELFARE BENEFIT PLAN,    :

        Judgment Debtor.
----------------------------------------------------------------X

**JUDGMENT CREDITOR UNIVERSITAS EDUCATION, LLC'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR TURNOVER ORDER PURSUANT TO
FED. R. CIV. P. 69(A) AND N.Y. CPLR § 5225(B)**

Plaintiff/Judgment Creditor Universitas Education, LLC ("Universitas"), by its attorneys Loeb & Loeb LLP, respectfully submits this Memorandum, in support of its motion for a turnover Order, pursuant to Federal Rule of Civil Procedure 69(a)(1) and N.Y. CPLR § 5225(b), to have the Court direct that (a) $253,112.74 of the funds on deposit at Webster Bank in New York (Webster Bank account number XXXXXXX419), representing assets owned by Judgment Debtor Grist Mill Trust Welfare Benefit Plan (the "Grist Mill Plan"), and any additional surplus monies belonging to the Grist Mill Plan remaining in the account above this amount and not earmarked by the Grist Mill Plan for its premium payments, be turned over to Universitas; and (b) the funds on deposit at Webster Bank (Webster Bank account number XXXXXXX426), which holds an account for Hanover Benefit Plans, LLC ("Hanover"), Judgment Debtor Grist Mill Plan's Plan Sponsor, with a balance of $149,412.20 as of February 29, 2016, be turned over to Universitas. Accompanying this motion is the supporting declaration of Paula K. Colbath, Esq., dated April 21, 2016 ("Colbath Decl.").

Universitas delayed making the motion in the hope that the Grist Mill Plan would voluntarily satisfy its Judgment in the amount of $4,487,007.81, but it has failed do so, thus necessitating the present motion.

I.   **RELEVANT FACTS**

On August 12, 2014, the Court entered a Judgment in favor of Universitas and against Judgment Debtor "Grist Mill Trust Welfare Benefit Plan, and any trustees and plan sponsors thereto insofar as they hold Grist Mill Trust assets, in the amount of $4,487,007.81." (Dkt. 475, copy attached as Colbath Decl., **Exh. A**.) Hanover is, and has been, at least since April 15, 2014, the Plan Sponsor for the Grist Mill Plan. (*See* Colbath Decl. **Exh. B**.) Thus, Hanover, as Plan Sponsor of the Grist Mill Plan "hold[ing] Grist Mill Trust assets," is also a Judgment Debtor. The Judgment against the Grist Mill Plan remains uncollected to date. (*See* Colbath Decl., at ¶ 4.)

Both the Grist Mill Plan and Hanover have bank accounts at Webster Bank. Webster Bank has banking branches in New York and is currently subject to Universitas' Restraining Notice, which expires on November 30, 2016, without prejudice to applications for further extensions (Dkt. 588).

The most recent document production shows that as of February 29, 2016, Hanover's bank account at Webster Bank (Account number XXXXXXX426) has an ending balance of $149,412.20. (*See* Colbath Decl., **Exh. C**.) According to Webster Bank, this account has been dormant since November 2015. (*See* Colbath Decl., at ¶ 6.)

The most recent document production shows that as of February 29, 2016, Grist Mill Plan's bank account at Webster Bank (Account number XXXXXXX419) has an ending balance of $343,286.85. (*See* Colbath Decl., **Exh. D**.)

The Grist Mill Plan's bank account at Webster Bank is subject to the Court's Order of December 13, 2014 (Dkt. 544, copy attached as Colbath Decl. **Exh. E**), which permitted a modification to Universitas' existing Restraining Notice, permitting the Grist Mill Plan to use the Webster Bank account to deposit contributions received from employers who participate in the Grist Mill welfare benefit plan and to pay from the account insurance premiums due in the regular course of the Grist Mill Plan's business on policies owned solely by the Grist Mill Plan. (*See id.* at ¶¶1-2.) On or before the first day of each month, the Grist Mill Plan was required to email counsel for Universitas and Webster with a complete list of the insurance premiums that will be due for that month, with copies of premium notices or similar documents. (*See id*. at ¶ 3.) Moreover, all administrative and other fees paid to Hanover by the Grist Mill Plan were to be segregated in a separate bank account in the name of the Grist Mill Plan's Plan Sponsor, Hanover. By agreement among counsel, on February 2, 2016, the provisions of the Restraining Notice were extended until July 29, 2016. (*See* Colbath Decl., at ¶ 9.)

However, the Grist Mill Plan has been recalcitrant in providing Universitas with its monthly emails listing the insurance premiums that will be due each month. The emails from Grist Mill Plan's counsel to the undersigned have been sporadic, at best. (*See* Colbath Decl. at ¶ 10.) Moreover, there was a large deposit made by the Grist Mill Plan's Trustee, Kathy Kehoe, into the Grist Mill Plan Account on December 17, 2015 in the amount of $253,112.74 (*see* Colbath Decl. **Exh. F**.), which Ms. Kehoe could not explain at her recent deposition on April 6, 2016 in another matter, even though she recently made that large deposit into the account (*see* Colbath Decl., ¶ 11). Upon review of the Grist Mill Plan's General Ledger, the $253,112.74 deposit appears to be in connection with some type of forfeiture to the Grist Mill Plan (*see* Colbath Decl. **Exh. G**). This amount is an asset of the Grist Mill Plan and should be turned over to Universitas, along with any additional surplus above that amount in Grist Mill Plan's bank account at Webster Bank, as part of Universitas' Judgment collection.

## II.   ARGUMENT

### A.   This Court Has Subject Matter Jurisdiction

Universitas seeks by this motion to enforce the Judgment entered by this Court against the Grist Mill Plan and its Plan Sponsor, Hanover. Post-judgment proceedings, like this one, to enforce federal court judgment pursuant to N.Y. CPLR § 5225, are properly pursued in federal court under the Court's ancillary jurisdiction. *See, e.g., Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001) ("Where the post-judgment proceeding is an effort to collect a federal court judgment, the courts have permitted judgment creditors to pursue, under the ancillary enforcement jurisdiction of the court, the assets of the judgment debtor even though the assets are found in the hands of a third party."); *City of New York v. Venkataram*, No. 06 Civ. 6578, 2011 U.S. Dist. LEXIS 77480, at *23 (S.D.N.Y. July 13, 2011) ("as an initial matter, a district court retains jurisdiction to enforce the judgments it enters.") (internal quotation marks and citations omitted); *Cordius Trust v. Kummerfeld*, No. 99 Civ. 3200, 2009 U.S. Dist. LEXIS

98889, at *19 (S.D.N.Y. Oct. 23, 2009) ("federal district court possesses inherent authority to effectuate enforcement of its judgments … [a] federal district court retains jurisdiction over supplementary proceedings to effectuate enforcement of its judgments.); *Aaron v. Mattikow*, 225 F.R.D. 407, 415 (E.D.N.Y. 2004) (recognizing ancillary enforcement jurisdiction to collect judgment debtor's assets in the hands of a third party).

### B. A Turnover Order Against Webster Bank Is Properly Pursued by This Motion, Pursuant to N.Y. CPLR § 5225(b), and Universitas Is Entitled to a Turnover Order

It is well-established that a judgment creditor with a federal judgment, levying on property alleged to belong to the judgment debtor may bring a proceeding in federal court under N.Y. CPLR § 5225(b) by motion and need not institute a separate plenary action. The Federal Rules of Civil Procedure provide that "[t]he procedure on execution -- and in proceedings supplementary to and in aid of judgment or execution -- must accord with the procedure of the state where the court is located…." Fed. R. Civ. P. 69(a)(1). Section 5225(b) of the N.Y. CPLR in pertinent part provides:

> Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest…the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor….

A special proceeding in New York state court is akin to a motion in federal court. *JW Oilfield Equip., LLC v. Commerzbank, AG*, 764 F. Supp. 2d 587, 591 (S.D.N.Y. 2011) ("A special proceeding is a civil judicial proceeding in which a right can be established or an obligation enforced in summary fashion. Like an action, it ends in a judgment, but the procedure is similar to that on a motion. Speed, economy and efficiency are the hallmark of this procedure.") (quotation omitted).

In federal court, a motion brought pursuant to Fed. R. Civ. P. 69 is a proper means by which to seek a turnover order. *See, e.g., SEC v. Colonial Inv. Mgmt. LLC*, No. 07 Civ. 8849,

2010 U.S. Dist. LEXIS 108063, at *6 (S.D.N.Y. Oct. 6, 2010) ("a judgment creditor proceeding under N.Y. CPLR section 5225(b) may proceed by motion, and need not institute a separate action"); *Mitchell v. Lyons Prof'l Servs., Inc.*, 727 F. Supp. 2d 120, 122-23 (E.D.N.Y. 2010) (after examining New York law and the Second Circuit's approach under Fed. R. Civ. P. 69(a), the court held that a judgment creditor proceeding in federal court under N.Y. CPLR § 5225(b) need not institute a separate action and may proceed by motion."). Accordingly, a turnover order against Webster Bank is properly pursued by the instant application.

Further, N.Y. CPLR § 5232(a) provides for levy by service of execution, by which any person in possession or custody of property in which a judgment debtor is known or believed to have an interest is ordered to transfer the property to the judgment creditor and is restrained from otherwise transferring such property. N.Y. CPLR § 5232(a). As with a turnover order, a judgment creditor may properly seek those remedies before this Court pursuant to Rule 69. *See, e.g., Commerzbank*, 764 F. Supp. 2d at 591 ("Rule 69(a) does no more than establish a system of procedure for federal district courts") (quotation marks and citation omitted).

## CONCLUSION

For the reasons set forth above, Universitas respectfully requests that (a) $253,112.74 of the funds on deposit at Webster Bank, representing assets owned by Judgment Debtor Grist Mill Plan in Webster account number XXXXXXX419, and any additional surplus monies belonging to the Grist Mill Plan remaining in the account above this amount and not earmarked by the Grist Mill Plan for its premium payments, be turned over to Universitas; (b) the funds on deposit at Webster Bank, which holds an account for Hanover Benefit Plans, LLC, Judgment Debtor Grist Mill Plan's Plan Sponsor in Webster Bank account number XXXXXXX426, with a balance of $149,412.20 as of February 29, 2016, be turned over to Universitas; and (c) granting such other

5

and further relief as the Court deems just and proper.

Dated: April 22, 2016

                              LOEB & LOEB LLP

                By: _/s/ Paula K. Colbath_____
                     Paula K. Colbath (PC-9895)
                     345 Park Avenue
                     New York, New York 10154
                     (212) 407-4000

                     *Attorneys for Judgment Creditor*
                     *Universitas Education, LLC*

7400323