COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    SUPREME JUDICIAL COURT
                                                No. SJC-10041


GAIL A. CAHALY

vs.

BENISTAR PROPERTY EXCHANGE TRUST COMPANY, INC. & others[1]
(and six companion cases[2]).


AMENDED ORDER AND MEMORANDUM

In Cahaly v. Benistar Property Exchange Trust Company (and six companion cases), 451 Mass. 343 (2008), (Cahaly) we affirmed a judgment against the defendants Benistar Properties Exchange Trust (Benistar Trust); Benistar Ltd.; Benistar Employer Services Trust Corporation (BESTCO); Benistar Admin. Services, Inc. (BASI); Carpenter Financial Group, LLC (CFG); Molly Carpenter; Daniel E. Carpenter; and U.S. Property Exchange (collectively the Benistar defendants).

---

[1] Benistar Ltd.; Benistar Employer Services Trust Corporation (BESTCO); Benistar Admin. Services, Inc. (BASI); Carpenter Financial Group, LLC (CFG); Molly Carpenter; Daniel E. Carpenter; Merrill Lynch, Pierce, Fenner & Smith, Inc.; and U.S. Property Exchange.

[2] Jeffrey M. Johnston vs. Benistar Property Exchange Trust Company, Inc., & others. Massachusetts Lumber Company, Inc. vs. Benistar Property Exchange Trust Company, Inc., & others. Bellemore Associates, LLC vs. Benistar Property Exchange Trust Company, Inc., & others. Joseph Iantosca & others vs. Benistar Property Exchange Trust Company, Inc., & others. R & B Enterprises, Inc. vs. Benistar Property Exchange Trust Company, Inc., & others. Byron Darling vs. Benistar Property Exchange Trust Company, Inc., & others.

The Benistar defendants have filed a petition for rehearing in which they argue, inter alia, that the assertion of personal jurisdiction over certain of them[3] meets neither the requirements of the Massachusetts long-arm statute, G. L. c. 223A, § 3, nor the requirements of the Due Process clause of the Fourteenth Amendment of the United States Constitution.

The petition is denied in all respects. This amended order and memorandum addresses the issue of jurisdiction only.

In Cahaly, supra, we affirmed that it was appropriate to pierce the corporate veil (disregard the corporate form) of Benistar Trust. In their petition the Benistar defendants do not challenge that Massachusetts courts have jurisdiction over Benistar Trust. Contrary to their claim, under both the Massachusetts long-arm statute and Federal law, the doctrine of piercing the corporate veil (appropriately disregarding the corporate form) may properly play a role in determining whether a defendant is subject to personal jurisdiction. This case is one in which piercing the corporate veil was so obviously appropriate that imputing the conduct of Benistar Trust to the other Benistar defendants is well within the range of what the law of personal jurisdiction permits.

---

[3] The defendants who claim that there is no jurisdiction over them are Benistar Ltd.; Benistar Employer Services Trust Corporation (BESTCO); Benistar Admin. Services, Inc. (BASI); Carpenter Financial Group, LLC (CFG); Molly Carpenter; and Daniel E. Carpenter.

The facts found by the trial judge supporting disregarding the corporate form (piercing the corporate veil), all of which are supported by the evidence and none of which are challenged by the Benistar defendants in their petition, include the following: There was common ownership of the various corporate entities where Daniel Carpenter owned Benistar Limited, of which BASI was a wholly owned subsidiary, and also owned CFG; either alone or with Molly Carpenter he owned BESTCO; and either Daniel, Daniel and Molly, or Benistar Ltd. owned Benistar Trust.[4] Daniel Carpenter exercised pervasive control over all of the entities, with participation from Molly Carpenter as to the activities of Benistar Trust and substantial participation by Molly Carpenter as to BASI. There was substantial evidence of a confused intermingling of assets and activities in the form of "a significant number of large fund transfers between and among" all the entities; and "all of these entities had a common principal place or places of business" at two Connecticut addresses. Daniel Carpenter presented the companies "as one group, with a common set of 28 employees and assets of $50 million, and for all of which he, as 'chairman,' was the only person with check-signing authority" for purposes of applying for insurance; the

---

[4] As to U.S. Property, the trial judge found, and the evidence supported, that U.S. Property was "clearly the successor" to Benistar Trust, operating the same business out of the same Newton, Massachusetts office with the same computers and software and the same president, Martin Paley.

Case 1:11-cv-08726-LTS-HBP  Document 400-1  Filed 03/23/20  Page 4 of 9
Case 1:08-cv-11785-NMG  Document 40  Filed 11/16/08  Page 4 of 9

companies' services were advertised together on the Benistar website; and clients of Benistar Trust "were specifically assured that their money was safe with that company because it was part of Benistar." As to capitalization, "none of the defendant companies was adequately capitalized for the conduct of legitimate business." There was a near-total lack of observance of corporate formalities: While each of the entities was organized as a Delaware corporation, and some appeared to have (form) bylaws, there was no evidence of stockholder or director meetings, the keeping of corporate minutes or other corporate records. Corporate records were entirely absent. There was no evidence of payment of dividends.

Benistar Trust was insolvent as of January 2001. The judge found that "[t]he only officers or directors of any of these corporations, Benistar [Trust] included, who functioned as such, were Daniel and Molly." Benistar Trust was used as "a source of funds to support Daniel's personal penchant for risky option trading on the stock market," and that Benistar Trust was used to promote fraud. In light of these factual findings, all supported by the evidence, the conclusion to pierce the corporate veil was more than amply supported.[5]

---

[5] The petition does not press various additional arguments asserted in the defendants' briefs as to the exercise of personal jurisdiction over Molly Carpenter, and we need not address them here. We note, however, the trial judge properly drew adverse inferences from Molly Carpenter's decision to invoke her Fifth Amendment privilege against self-incrimination in response to

4

The efforts of the Benistar defendants to insulate themselves from liability on grounds of corporate form, when all the corporate forms were created and controlled by Daniel Carpenter with assistance from Molly Carpenter, are unavailing under Massachusetts law,[6] a conclusion strengthened by the

---

questions regarding her own contacts with Massachusetts and her involvement with trading, and converting, the plaintiffs' funds. In addition there was affirmative evidence that Molly Carpenter, a director and officer of Benistar Trust, was involved with the scheme at issue in this case to the extent that she "gave directions to Merrill Lynch and PaineWebber personnel on a few occasions with respect to the handling or disposition of certain funds that Benistar Property either was sending to, or had previously deposited with, the brokerage firms," and may have also directed brokers to buy or sell stocks or options with the Benistar Trust funds.

[6] The defendants claim that Delaware law should control this issue. Massachusetts and other authority support the decision of the trial judge to apply the law of the jurisdiction where the underlying conduct took place (Massachusetts), rather than the place of incorporation (Delaware). See, e.g., Evans v. Multicon Constr. Corp., 30 Mass. App. Ct. 728, 737 n.7 (1991) (applying Massachusetts law to issue of piercing corporate veil because "the place of contracting, the place of negotiation of the contract, the place of performance of the contract, and the place of the subject matter of the contract were in Massachusetts"). Even were we to agree that Delaware law should govern, it would make no difference because there was more than ample justification for disregarding the corporate form under either Massachusetts or Delaware law.
   In Massachusetts, the law of piercing the corporate veil "differs in no material respect from the description in United States v. Bestfoods, 524 U.S. 51, 62-63 (1998)," Scott v. NG US 1, 450 Mass. 760, 768 (2008). Delaware law similarly permits a court to pierce the corporate veil of an entity "where there is fraud or where [the entity] is in fact a mere instrumentality or alter ego of its owner." Geyer v. Ingersoll Publications Co., 621 A.2d 784, 793 (Del. Ch. 1992). "A subsidiary corporation may be deemed the alter ego of its corporate parent where there is a lack of attention to corporate formalities, such as where the assets of two entities are commingled, and their operations intertwined. . . [or] where a corporate parent exercises complete domination and control over its subsidiary." Mobil Oil Corp. v.

adverse inferences correctly drawn from these defendants' assertion of their Fifth Amendment privileges and refusal to submit to questioning on issues relevant to personal jurisdiction.

The fundamental argument of the Benistar defendants in their petition is that the determination of personal jurisdiction should be made before and not in light of the trial judge's findings on piercing the corporate veil. This is not the law under either the Massachusetts long-arm statue[7] or the Due Process clause. Under Massachusetts law, ownership of a Massachusetts subsidiary does not, of course, automatically confer jurisdiction over a parent corporation, Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 905 (1st Cir. 1980), nor does jurisdiction over a corporation automatically secure jurisdiction over its officers. Kleinerman v. Morse, 26 Mass. App. Ct. 819, 824 (1989). However, the combination of intermingling of officers and directors, and controlling the operations of a Massachusetts subsidiary, is sufficient to

---

Linear Films, Inc., 718 F. Supp. 260, 266 (D. Del. 1989); see also Fletcher v. Atex, Inc., 68 F.3d 1451, 1457 (2d Cir. 1995). As the facts in this case well illustrate, under either Massachusetts or Delaware law, this case is almost a paradigm for piercing the corporate veil.

[7] For purposes of this inquiry we apply Massachusetts, not Delaware, law, regardless of what law applied to the veil-piercing question. See, e.g., Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979) (explaining Massachusetts law of personal jurisdiction).

satisfy the long-arm statute. As the Appeals Court held in Kleinerman v. Morse, supra at 823:

> "Significant exercise of control by an out-of-State parent corporation over a subsidiary and significant intermingling of officers and directors between parent and subsidiary have served to establish jurisdiction in the State where the subsidiary is conducting its business operations. Willis v. American Permac, Inc., 541 F. Supp. 118, 122 (D. Mass. 1982). Cf. My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 618-619 (1968). Running the operations of a subsidiary in Massachusetts constitutes a breadth of business activity that necessarily involves exercise of the privilege of conducting business here. Hanson v. Denckla, 357 U.S. 235, 253 (1958). Compare Good Hope Indus. v. Ryder Scott Co., 378 Mass. 1, 6-12 (1979); Balloon Bouquets, Inc. v. Balloon Telegram Delivery, Inc., 18 Mass. App. Ct. 935, 935-936 (1984); Gunner v. Elmwood Dodge, Inc., 24 Mass. App. Ct. 96, 100-101 (1987). By contrast, ownership alone of the controlling stock of a subsidiary does not confer jurisdiction over an out-of-State parent corporation if the parent does not exercise control over the activities of the subsidiary. Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 905 (1st Cir.1980)."[8]

Despite the efforts of the Benistar defendants to argue otherwise, Federal due process requirements, which form the second prong of the personal jurisdiction inquiry, are not to the contrary. Here too jurisdiction over a parent corporation does not "automatically establish jurisdiction over a wholly owned subsidiary." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984). However, where the corporate form may be disregarded, as it was appropriately done in this case, imputing the contacts of the subsidiary with the forum state to the parent

---

[8] Although Kleinerman v. Morse, 26 Mass. App. Ct. 819 (1989), does not state its holding in terms of piercing the corporate veil, piercing the corporate veil requires, if anything, a higher degree of control and elements of fraudulent conduct, than does the test in Kleinerman.

comports with due process.  See Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 648-649 (8th Cir. 2003); Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgt., Inc., 519 F.2d 634,637 (8th Cir. 1975).

> "Although [the parent], in its own right, lacked sufficient minimum contacts with Massachusetts to permit the assertion of jurisdiction over its corporate person, [the subsidiary] was unarguably subject to the jurisdiction of the Massachusetts courts.  Hence, if [the subsidiary]'s contacts can be attributed to [the parent], then the jurisdictional hurdle can be vaulted."

United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1091 (1st Cir. 1992).

Not every case dealing with the question of personal jurisdiction over nonresident parent corporations invokes the doctrine of piercing the corporate veil by name.  The underlying principle, however, is clear.  "Since the essence of personal jurisdiction is to bring responsible parties before the court, a corporation which is actually responsible for its subsidiary's decision to undertake instate activities should, in all fairness, be within the state courts' jurisdictional reach."  Donatelli v. National Hockey League, 893 F.2d 459, 466 (1st Cir. 1990).  The defendants' attempt to circumvent this authority through an analogy to the purportedly "similar" theory that was rejected in Rush v. Savchuk, 444 U.S. 320 (1980), is unavailing.  That case did not involve in any respect piercing the corporate veil, parent corporations, or subsidiaries.

The relief granted in this case was appropriate where Massachusetts had personal jurisdiction over corporate entities and individuals to whom actions establishing personal jurisdiction in Massachusetts have been attributed.

The petition for rehearing is denied.

By the Court
(Cowin, Botsford, JJ., recused),

Susan Mellen, Clerk

ENTERED: June 26, 2008

9